USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/8/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
:
CARSON D. GILBERT, *Individually and On Behalf* :
*of All Others Similarly Situated*, :
:
Plaintiff, :
:     1:22-cv-7432-GHW
-against- :
:     MEMORANDUM OPINION
AZURE POWER GLOBAL LIMITED, RANJIT :    AND ORDER
GUPTA, ALAN ROSLING, HARSH SHAH, *and* :
PAWAN KUMAR AGRAWAL, :
:
Defendants. :
:
-----------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

## I. INTRODUCTION

On October 31, 2022, members of the putative class in this case filed motions to serve as lead plaintiffs and for approval of their respective choices of counsel (the "Motions"). *See* Dkt. Nos. 11, 14, 18, 21. The Court ordered that any oppositions to the Motions be filed no later than November 18, 2022, and that any replies be filed no later than November 29, 2022. Dkt. No. 25. On November 14, 2022, Yannick Sabourin stated his non-opposition to the other motions for appointment of lead plaintiff and lead counsel. Dkt. No. 26. In light of Mr. Sabourin's non-opposition to the competing motions, the Court denied Mr. Sabourin's motion to serve as lead plaintiff on December 2, 2022. Dkt. No. 35. The three remaining motions were fully briefed as of November 29, 2022, and two members of the putative class filed letters supplementing the briefing on December 2, 2022. Dkt. Nos. 27-34, 36-37. The Court has reviewed the parties' briefing with respect to these three motions, including the supplemental letters. For the reasons stated below, the motion filed by Serap Lokman is GRANTED, Serap Lokman is appointed as Lead Plaintiff, and Levi & Korsinsky, LLP is appointed as Lead Counsel.

## II.     LEGAL STANDARD AND DISCUSSION

The Private Securities Litigation Reform Act ("PSLRA") requires that a plaintiff who files a putative class action publish, in a widely circulated business-orientned publication or wire service, a notice advising members of the purported class of "the pendency of the action, the claims asserted therein, and the purported class period"; and permits "not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff[.]" 15 U.S.C. § 78u-4(a)(3)(A)(i).

The notice published here met the standards set forth in the PSLRA. On August 30, 2022, Glancy Prongay & Murray LLP, counsel for Plaintiff Carson D. Gilbert published a press release, which announced the filing of this securities class action, in *Business Wire*. *See* Declaration of Adam M. Apton, Dkt. No. 16 ( the "Apton Decl."), Ex. C. The publication in which the notice was published was satisfactory. "*Business Wire* is a suitable vehicle for meeting the statutory requirement that notice be published." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 403 (S.D.N.Y. 2004). No party has challenged the adequacy of the notice.

The 60-day period in which any member of the proposed class may apply for lead plaintiff status elapsed on Monday, October 31, 2022.[1] The motions filed by Ms. Lokman, Eric Webb, and Brendin James on October 31, 2022 were all timely. 15 U.S.C. § 78u–4(a)(3)(A)(i)(II).

A. <u>Lead Plaintiff</u>

The PSLRA requires the Court to appoint as "lead plaintiff" the member of the class that the Court determines to be "most adequate plaintiff," *i.e.* the member the court determines to be "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The Court must "adopt a presumption that the most adequate plaintiff" "is the person

---

[1] 60 days from the date on which the notice was published, August 30, 2022, was October 29, 2022. Because October 29, 2022 was Saturday, the operative deadline was Monday, October 31, 2022. *See* Fed. R. Civ. P. 6(a)(1)(C).

2

or group of persons" that:

> (1) "has either filed the complaint or made a [timely] motion" to be appointed as lead plaintiff(s);
>
> (2) "in the determination of the court, has the largest financial interest in the relief sought by the class"; and
>
> (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  This presumption may be rebutted "only" by proof that the presumptively adequate plaintiff either "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As discussed, Ms. Lokman, Mr. Webb, and Mr. James each made a timely motion to be appointed lead plaintiff.  Thus, these parties satisfy the first requirement set forth in the PSLRA.  The Court therefore turns to the two remaining elements of the presumption.

### i.   *Largest Financial Interest*

In assessing the financial interests of parties competing for lead plaintiff status, a court will generally consider "(1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period); (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate losses suffered." *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 112 (E.D.N.Y. 2012).  The fourth factor, the approximate losses suffered, is considered to be the most important.  *See Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 530 (S.D.N.Y. 2015); *Baughman v. Pall Corp.*, 250 F.R.D. 121, 125 (E.D.N.Y. 2008).

Based on the above criteria, Ms. Lokman has the largest demonstrated financial interest.  Ms.

3

Lokman is alleged to have suffered $18,638.13 in losses during the class period. *See* Dkt. No. 15 (the "Lokman Mem.") at 5; Apton Decl., Ex. B. Ms. Lokman purchased 4,741 shares total, expended a net amount of $27,166.47, and purchased 1,798 net shares during the class period. *See* Apton Decl., Ex. B.

The financial interest of Mr. James does not compare to that of Ms. Lokman. Mr. James suffered losses of approximately $2,393.61 [2] and purchased 175 net shares, expending a net amount of $3,311.48 during the class period. Dkt. No. 20, Ex. C. Mr. Webb likewise has not demonstrated that he has the largest financial interest. Mr. Webb states that his losses amount to approximately $11,232.53. Dkt. No. 13, Ex. 3. Mr. Webb purchased 887 net shares and expended a net amount of $15,889.28. *Id.* Although Mr. Webb emphasizes that Ms. Lokman's losses were "merely $7,405 greater" than his losses, he ignores that this difference in amount is significant when considering the scale of losses alleged here. *See* Dkt. No. 29 (the "Webb Response") at 2. For example, Ms. Lokman's losses of $18,638.13 are nearly 66% greater than Mr. Webb's losses of $11,232.53. Ms. Lokman has also purchased the greatest number of net shares and expended the most in net funds during the class period. Thus, Ms. Lokman has sufficiently shown that she has the largest demonstrated financial interest.

        ii.       *Rule 23*

The next step in identifying which plaintiff is entitled to the presumption is to "ensure that the person (or persons) with the largest financial interest 'otherwise satisfies the requirements of Rule 23.'" *Maliarov v. Eros Int'l PLC*, No. 15-cv-8956, 2016 WL 1367246, at *5 (S.D.N.Y. Apr. 5, 2016) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc)). In a PSLRA motion to appoint lead plaintiff,

---

[2] The memorandum of law filed by Mr. James in support of his motion to be appointed lead plaintiff states that Mr. James "suffered substantial financial losses of approximately $2,394.85." Dkt. No. 19 at 5. However, the declaration that Mr. James cites to for this fact shows losses of $2,393.61, as do his other filings. Dkt. No. 20, Ex. C; Dkt. No. 28 at 6; Dkt. No. 33 at 3. Based on the repeated use of the $2,393.61 figure, the Court understands Mr. James to have suffered losses amounting to $2,393.61.

the Court considers only whether the proposed plaintiff has made a "preliminary showing" that two of Rule 23's requirements–typicality and adequacy–are satisfied. *See Ford v. Voxx Int'l Corp.*, No. 14-cv-4183, 2015 WL 4393798, at *3 (E.D.N.Y. July 16, 2015) (collecting cases); *see also Martingano v. Am. Int'l Grp., Inc.*, No. 06-cv-1625, 2006 WL 1912724, at *4 (E.D.N.Y. July 11, 2006) (quotations and citations omitted) ("[A]t this stage in the litigation, one need only make a preliminary showing that the Rule's typicality and adequacy requirements have been satisfied.").

Typicality is satisfied "where the claims arise from the same course of events and each class member makes similar legal arguments to prove defendant's liability." *In re Symbol Techs., Inc. Secs. Litig.*, 2006 WL 1120619, at *3 (citing *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001), *abrogated on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)).

The adequacy requirement is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the class has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *In re Symbol Techs., Inc. Secs.*, 2006 WL 1120619, at *3 (citing *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005)); *see also In re Initial Public Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002).

Ms. Lokman has made a preliminary showing that she has met the typicality requirement. Ms. Lokman's claims arise out of the same course of events—the various statements and omissions concerning Azure's business, operations, and prospects—and Ms. Lokman will make similar legal arguments (under the various provisions of the Exchange Act and Rule 10b-5 thereunder). *See* Lokman Mem. at 6 (Ms. Lokman, "like all members of the Class, purchased or otherwise acquired Azure securities during the Class Period" and "alleges that Defendants' material misstatements and omissions concerning Azure's business, operations and prospects violated the federal securities laws."); Dkt. No. 27 (the "Lokman Response") at 5 (Ms. Lokman "acquired Azure securities at

5

prices that were artificially inflated by Defendants' misconduct and suffered losses when the truth was revealed."); Dkt. No. 31 (the "Lokman Reply") at 5 ("Like all class members, Ms. Lokman relied on Azure's misrepresentations, lost money as a result, and now seeks to recover it.").

Ms. Lokman has also made a preliminary showing that she would be an adequate class representative.  Nothing before the Court suggests that Ms. Lokman's interests are antagonistic to the interests of the other class members.  Ms. Lokman's choice of counsel, Levi & Korsinsky, LLP, is qualified, experienced, and generally able to conduct the litigation, as discussed in further detail below.  Finally, as noted above, Ms. Lokman has suffered alleged losses greater than $18,600 and thus has a sufficient financial interest in the case's outcome to suggest that she will pursue the case with vigor.  Thus, Ms. Lokman is presumptively the most adequate plaintiff.[3]

Mr. Webb and Mr. James (the "Opposing Movants") have not rebutted the presumption that Ms. Lokman is an adequate lead plaintiff.  To do so, the Opposing Movements must present proof that Ms. Lokman "will not fairly and adequately protect the interests of the class" or that Ms. Lokman "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  The Opposing Movants must offer more than "mere speculation" to rebut the presumption of adequacy.  *See In re Turquoise Hill Res. Ltd. Sec. Litig.*, No. 20-cv-8585, 2021 WL 148752, at *5 (S.D.N.Y. Jan. 15, 2021) (citing *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 133 (S.D.N.Y. 2011)).  Courts in this Circuit have required "exacting proof" to

---

[3] Mr. Webb argues that Ms. Lokman does not qualify as the presumptive lead plaintiff because she does not meet the typicality and adequacy requirements of Rule 23.  Dkt. No. 29 at 2.  At this stage, the Court considers whether Ms. Lokman has made the preliminary showings required.  As discussed, the Court concludes that she has.  The Court will evaluate Mr. Webb's arguments when considering whether the presumption that Ms. Lokman should serve as lead plaintiff has been rebutted.  *See In re Hebron Tech. Co., Ltd. Sec. Litig.*, No. 20-cv-4420, 2020 WL 5548856, at *6 (S.D.N.Y. Sept. 16, 2020) (declining to address argument that plaintiff was atypical because of unique defenses which were "considered more appropriately as rebutting [movant's] status as presumptive lead plaintiff not in the preliminary assessment of the Rule 23 factors") (internal quotation marks omitted); *Batter v. Hecla Mining Co.*, No. 19-cv-05719, 2020 WL 1444934, at *4 (S.D.N.Y. Mar. 25, 2020), *reconsideration denied*, No. 19-cv-4883, 2021 WL 516546 (S.D.N.Y. Feb. 11, 2021) ("[T]he Rule 23 adequacy showing is only preliminary at this stage. In fact, a wide ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification.") (internal quotation marks omitted).

disqualify the presumptive lead plaintiff. *See, e.g., In re Facebook, Inc., IPO Sec. & Derivative Litig. ("Facebook")*, 288 F.R.D. 26, 40 (S.D.N.Y. 2012); *Rasella v. Musk*, 342 F.R.D. 74, 81 (S.D.N.Y. 2022) (citing *Facebook*); *Murphy v. JBS S.A.*, No. 17-cv-3084, 2017 WL 4480751, at *6 (E.D.N.Y. Oct. 6, 2017) (citing *Facebook*).

The Opposing Movants fall short of their burden of rebutting the presumption of adequacy. First, the Opposing Movants argue that Ms. Lokman should be disqualified because she resides in Turkey. Dkt. No. 28 (the "James Response") at 4-5; Webb Response at 4. However, the fact that Ms. Lokman resides abroad is by itself insufficient to disqualify her. "Courts in this District and others have routinely appointed foreign investors as lead plaintiff." *See Foley*, 272 F.R.D. at 133–34 (citing *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 347 (S.D.N.Y.2009) (collecting cases)). Moreover, "[t]o exclude a foreign investor from lead plaintiff status on nationality grounds would defy the realities and complexities of today's increasingly global economy." *See Sgalambo v. McKenzie*, 268 F.R.D. 170, 177 (S.D.N.Y. 2010) (internal quotation marks omitted).

The Opposing Movants cite to two cases outside of this District in support of their argument that as a foreign investor, Ms. Lokman should not be appointed lead plaintiff. *See* James Response at 5; Webb Response at 4. In the first, the Northern District of Texas held that it was "implausible" that presumptive lead plaintiff's $580 interest in the litigation would "motivate him to travel from Europe to the Northern District of Texas." *Haghebaert v. Tandy Leather Factory, Inc.*, No. 19-cv-1000, 2020 WL 4680193, at *3 (N.D. Tex. Apr. 8, 2020). Here, Ms. Lokman's alleged losses of more than $18,638 are significantly higher than the $580 interest in the *Haghebaert* case. And, as discussed below, Ms. Lokman has submitted evidence demonstrating her commitment to serving as lead plaintiff. In the second case, decided in 1999, the Northern District of California disqualified foreign investors from serving as lead plaintiff in part because of the distance involved and "some differences in business culture," and in part because the investors were under investigation for

7

criminal fraud in Belgium and had not acquired most of their shares on open market. *See In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1029-30 (N.D. Cal. 1999). Even then, the Northern District of California stressed that it "certainly [did] not say that a foreign investor could never qualify." *Id.* at 1030.

The Court is unpersuaded that it should disqualify Ms. Lokman based on mere speculation by the Opposing Movants regarding the potential risks of appointing Ms. Lokman as lead plaintiff. The Opposing Movants put forward multiple theories as to why Ms. Lokman would not be an adequate plaintiff, but fail to present "proof," as required. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). They posit a number of reasons why Ms. Lokman's residency in Turkey would make her an inadequate lead plaintiff. *See, e.g.*, James Response at 4-5 (arguing that the Court "may have difficulty binding [Ms.] Lokman to the Court's rulings" and that there is "no assurance" that Ms. Lokman will comply with orders to appear for deposition, settlement, or trial); Webb Response at 4 (stating that it was "not clear" that Ms. Lokman would travel to the United States for deposition, trial, or mediation); James Response at 5 (arguing there is a "real risk" that Ms. Lokman would decide that complying with orders to appear in the United States is "not worth the effort" and choose to relinquish her role as lead plaintiff); Webb Response at 4 (asserting that the distance and "differences in business culture" might present challenges in managing the litigation); James Response at 4 (arguing that there was "no guarantee" that Ms. Lokman would be able to get a visa to travel to the United States); Webb Response at 4 (arguing that appointing a foreign investor like Ms. Lokman would lead to higher costs for the class). These arguments amount to conjecture, and thus are insufficient to rebut the presumption of adequacy. *See Foley v. Transocean Ltd.*, 272 F.R.D. 126, 133 (S.D.N.Y. 2011) (declining to disqualify foreign lead plaintiff based on "conjecture" as to the additional costs that would be incurred).

On the record before it, the Court is satisfied that Ms. Lokman would be an adequate lead

plaintiff. Ms. Lokman's counsel submitted a declaration, signed under penalty of perjury, that itself attached a PSLRA certification in which Ms. Lokman "certif[ied] under penalty of perjury under the laws of the United States of America" that she is "willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary." Apton Decl. at 2; Apton Decl., Ex. A. Ms. Lokman also submitted two declarations under the penalty of perjury regarding her ability to serve as lead plaintiff. Apton Decl., Ex. D (the "Lokman Decl.") [4]; Dkt. No. 32 (the "Lokman Suppl. Decl."). In the first declaration, Ms. Lokman confirmed that she understood the responsibilities of serving as lead plaintiff and stated that she had previously hired and overseen attorneys in another matter. Lokman Decl. ¶¶ 2, 4, 6. In the second declaration, Ms. Lokman stated that she has a visa that will permits her to travel to the United States frequently and for as long as six months, and that her visa will not expire for another nine years. *See* Lokman Suppl. Decl. ¶ 2. Ms. Lokman stated she was "committed to serving as the Lead Plaintiff in this action" and that she "will do [her] best to ensure the greatest possible recovery for myself and the other shareholders." *Id.* ¶ 4. In light of this evidence, and based on the Opposing Movants' failure to offer more than conjecture to rebut the presumption of adequacy, the Court declines to disqualify Ms. Lokman based on her residency in Turkey.

Next, the Opposing Movants argue that Ms. Lokman will be subject to a unique defense, making her an atypical and inadequate lead plaintiff. According to the Opposing Movants, Ms. Lokman is a day trader who rapidly bought and sold Azure shares based on "technical price

---

[4] The Court rejects Mr. Webb's argument that Ms. Lokman's first declaration is a "nullity" because the declaration does not state that it was made "under penalty of perjury under the laws of the United States of America." *See* Webb Response at 4 n.1. Pursuant to 28 U.S.C. § 1746, such language in "substantially" the same form should be included if the declaration is "executed without the United States." First, the location in which the declaration was signed has not been provided. *See* Lokman Decl. Second, assuming it was signed outside of the United States, the declaration states that it was signed under penalty of perjury "[p]ursuant to 28 U.S.C. § 1746." *Id.* Such language has been approved by other courts. *See, e.g., Denny v. Canaan, Inc.*, No. 21-cv-3299, 2021 WL 5847647, at *4 (S.D.N.Y. Dec. 9, 2021) (collecting cases in which courts approved identical or substantially similar language). Because Ms. Lokman's declaration substantially complies with Section 1746, the Court considers that declaration.

movements" rather than the integrity of the stock price. *See* James Response at 3; Webb Response at 3-4. Thus, they argue, Ms. Lokman would be subject to the unique defense that she would have purchased Azure shares regardless of any misstatements or omissions by the defendants. *See id.*

The Opposing Movants have not met their burden of showing that Ms. Lokman is atypical or otherwise incapable of adequately representing the class. The Opposing Movants have put forward no more than mere speculation and far short of "exacting proof" that Ms. Lokman is inadequate. In support of their assertion that Ms. Lokman is a day trader who is subject to a unique defense, the Opposing Movants point to a series of Ms. Lokman's transactions buying and selling Azure stock. James Response at 3 ("Lokman bought and sold hundreds of Azure shares within the same day, and rapidly entered and exited her position multiple times."); Webb Response at 3 ("Ms. Lokman appears to have day traded Azure stock"). The Opposing Movants flag Lokman's transactions on October 6, 2021, a day on which Ms. Lokman purchased 495 shares, purchased 5 shares, purchased 495 shares, and sold 495 shares in four separate transactions. *Id.*; Apton Decl., Ex. B. However, none of Ms. Lokman's remaining transactions buying and selling Azure stock occurred on the same day. Apton Decl., Ex. B. Ms. Lokman denies that she is a day trader and emphasizes that she bought and sold Azure stock on the same day only once, on October 6, 2021, throughout the 437-day class period. Lokman Reply at 9. Her declaration also stated that she invested long-term in Azure and that she continued to purchase Azure shares as its price declined as part of an investment strategy designed to lower her average costs. *See* Lokman Suppl. Decl. ¶ 4.[5]

The Opposing Movements correctly note that Ms. Lokman engaged in multiple transactions

---

[5] Ms. Lokman described this investment strategy in a supplemental declaration filed on November 29, 2022, the deadline for submitting reply briefs in connection with the Motions. The parties have not addressed whether such an investment strategy would render Ms. Lokman atypical. The Court observes that Mr. Webb has filed supplemental letters regarding Ms. Lokman's ability to travel to the United States based on Ms. Lokman's reply, but did not mention Ms. Lokman's investment strategy. Given the lack of briefing on this issue, and the burden that Opposing Movants have to rebut the presumption that Ms. Lokman is an adequate plaintiff, the Court does not take up the issue here.

10

buying and selling Azure stock throughout the class period—including a few transactions that occurred days apart—but that alone does not suffice to prove that Ms. Lokman did not rely on the integrity of Azure's stock price. *See Chauhan v. Intercept Pharms.*, No. 21-cv-00036, 2021 WL 235890, at *6 (S.D.N.Y. Jan. 25, 2021) (declining to disqualify presumptive lead plaintiff who bought and sold multiple sets of shares in a day or over a series of days "absent evidence that [he] did not rely on the integrity of the market price").

Even if Ms. Lokman qualified as a day trader based on the single day that she engaged in four transactions in Azure stock, courts in this Circuit have permitted day traders to serve as lead plaintiffs.[6] *See Stoopler v. Direxion Shares ETF Tr.*, No. 09-cv-8011, 2010 WL 3199679, at *4 (S.D.N.Y. Aug. 12, 2010), *as corrected* (Aug. 16, 2010) (declining to disqualify presumptive lead plaintiff despite his admission that he engaged in day trading early in the class period because even if any unique defense based on his day trading were applicable, it would not apply in the later part of the class period); *Perez v. HEXO Corp.*, No. 19-cv-10965, 2020 WL 905753, at *4 (S.D.N.Y. Feb. 25, 2020), *reconsideration denied sub nom. In re HEXO Corp. Sec. Litig.*, No. 19-cv-10965, 2020 WL 5503634 (S.D.N.Y. Sept. 11, 2020) (holding that dispute over whether presumptive lead plaintiff was immaterial given "prevailing view in this Circuit that 'day and momentum traders have the same incentives to prove defendants' liability as all other class members, and their presence in a securities class does not create intra-class conflicts'") (quoting *Prefontaine v. Rsch. in Motion Ltd.*, No. 11-cv-4068, 2012 WL 104770, at *4 (S.D.N.Y. Jan. 5, 2012)). The Opposing Movants cite to out-of-circuit cases in arguing that Ms. Lokman should be disqualified due to her alleged status as a day trader. One of those cases, cited by both Mr. James and Mr. Webb, explicitly states that "a day trader is not ipso facto disqualified from the lead plaintiff role." *See Tsirekidze v. Syntax-Brillian Corp.*

---

[6] The Opposing Movants offer no definition of the term "day trader." Ms. Lokman asserts that she does not meet the definition of a "day-trader" established by the Financial Industry Regulatory Authority ("FINRA") and adopted by the U.S. Securities and Exchange Commission. Lokman Reply at 9.

("*Tsirekidze*"), Nos. CV-07-2204, CV-07-2454, CV-07-2524, CV-07-2525, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008); Webb Response at 3-4 (citing *Tsirekidze*); James Response at 3-4 (same).

On the record before it, Opposing Movants have not shown that Ms. Lokman will not fairly and adequately protect the interests of the class or is subject to unique defenses that would render her incapable of adequately representing the class. Accordingly, the Court appoints Ms. Lokman as lead plaintiff.

### B. Lead Counsel

Under the PSLRA, "the most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Sequans*, 289 F. Supp. 3d at 426. "There is a 'strong presumption in favor of approving a properly selected lead plaintiff's decisions as to counsel selection.'" *Francisco v. Abengoa, S.A.*, Nos. 15-cv-6279, 15-cv-6971, 2016 WL 3004664, at *7 (S.D.N.Y. May 24, 2016) (quoting *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 278 (S.D.N.Y. 2015)). Ms. Lokman is represented by Levi & Korsinsky, LLP. Levi & Korskinsky is experienced in securities class action litigation, *see* Apton Decl., Ex. E (Resume of Levi & Korsinsky), and has been appointed by judges in this District to serve as lead counsel or co-lead counsel in other matters, *see, e.g.*, *Carpenter v. Oscar Health, Inc.*, No. 22-cv-3885, 2022 WL 4485276, at *3 (S.D.N.Y. Sept. 27, 2022); *Winter v. Stronghold Digital Mining, Inc., et al.*, 1:22-cv-03088-RA, Dkt. No. 41, (S.D.N.Y. August 4, 2022); *Bevinal v. Avon Prod., Inc.*, No. 19-cv-1420, 2019 WL 2497739, at *2 (S.D.N.Y. June 3, 2019); *In Re Helios and Matheson Analytics, Inc. Sec. Litig.*, No. 18-cv-6965, Dkt. No. 54 (S.D.N.Y. Nov. 16, 2018). On this record, the Court sees no reason not to adhere to Ms. Lokman's choice: Levi & Korsinsky, LLP is appointed Lead Class Counsel.

### III. CONCLUSION

For the reasons stated above, Ms. Lokman's motion is GRANTED and the motions filed by Mr. Webb and Mr. James are DENIED. Serap Lokman is appointed as Lead Plaintiff, and Levi &

Korsinsky, LLP is appointed as Lead Counsel.

The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 11, 14, and 18.

SO ORDERED.

Dated: December 8, 2022
       New York, New York

                                                   GREGORY H. WOODS
                                                 United States District Judge