UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SERAP LOKMAN, individually and on behalf of all other similarly situated,<br><br>          Plaintiff,<br><br>    v.<br><br>AZURE POWER GLOBAL LIMITED, RANJIT GUPTA, MURALI SUBRAMANIAN, and PAWAN KUMAR AGRAWAL,<br><br>          Defendants. | Case No. 1:22-cv-7432-GHW<br><br>**ORAL ARGUMENT REQUESTED** |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT PAWAN KUMAR AGRAWAL'S MOTION TO DISMISS

COVINGTON & BURLING LLP
Mark P. Gimbel
Jordan S. Joachim
The New York Times Building
620 Eighth Avenue
New York, New York 10018
212-841-1000
mgimbel@cov.com
jjoachim@cov.com

*Attorneys for Defendant Pawan Agrawal*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND ...................................................................................................... 3

    A.    Azure and the Individual Defendants. .................................................. 3

    B.    Azure Receives Whistleblower Complaints and Adjusts Certain
Megawatts Operating Numbers. ........................................................... 3

    C.    Plaintiff Attempts to Convert Azure's Investigation Into Securities Fraud............ 4

ARGUMENT ........................................................................................................... 7

I.    Plaintiff Fails to Plead Scienter Against Mr. Agrawal. ....................................... 7

    A.    Plaintiff Does Not Plead Motive and Opportunity to Commit Fraud. .................... 8

    B.    Plaintiff Does Not Plead Conscious Misbehavior or Recklessness. ...................... 8

        1.    Plaintiff Relies on Impermissible Group Pleading. ................................... 9

        2.    The Allegations Specific to Mr. Agrawal Cannot Establish
Scienter. ........................................................................... 9

        3.    Plaintiff's Other Theories of Scienter Also Fail. ..................................... 11

II.    Plaintiff Fails to Plead an Actionable Misrepresentation or Omission........................... 14

III.    Plaintiff's Section 20(a) Claim Also Fails. ...................................................... 15

CONCLUSION........................................................................................................ 15

## TABLE OF AUTHORITIES

**Cases**

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
529 F. Supp. 3d 111 (S.D.N.Y. 2021)........................................................................9

*Anschutz Corp. v. Merrill Lynch & Co.*,
690 F.3d 98 (2d Cir. 2012).......................................................................................7

*In re AppHarvest Sec. Litig.*,
2023 WL 4866233 (S.D.N.Y. July 31, 2023) ........................................................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................................7

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007).....................................................................................3, 7

*In re Banco Bradesco S.A. Sec. Litig.*,
277 F. Supp. 3d 600 (S.D.N.Y. 2017) (Woods, J.)...............................................2, 14

*In re Barrick Gold Corp. Sec. Litig.*,
341 F. Supp. 3d 358 (S.D.N.Y. 2018).....................................................................13

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
752 F.3d 173 (2d Cir. 2014)....................................................................................14

*Cooper v. Templeton*,
629 F. Supp. 3d 223 (S.D.N.Y. 2022)........................................................................7

*Das v. Rio Tinto PLC*,
332 F. Supp. 3d 786 (S.D.N.Y. 2018)......................................................................10

*In re Dell Inc., Sec. Litig.*,
591 F. Supp. 2d 877 (W.D. Tex. 2008).....................................................................10

*Dobina v. Weatherford Int'l Ltd.*,
909 F. Supp. 2d 228 (S.D.N.Y. 2012).....................................................................13

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009)..................................................................................7, 8

*Francisco v. Abengoa, S.A.*,
481 F. Supp. 3d 179 (S.D.N.Y. 2020).....................................................................12

*In re Gen. Elec. Sec. Litig.*,
2020 WL 2306434 (S.D.N.Y. May 7, 2020) ..........................................................10

*Glaser v. The9, Ltd.*,
    772 F. Supp. 2d 573 (S.D.N.Y. 2011)......................................................................................11

*In re HEXO Corp. Sec. Litig.*,
    524 F. Supp. 3d 283 (S.D.N.Y. 2021)......................................................................................12

*Janbay v. Canadian Solar, Inc.*,
    2013 WL 1287326 (S.D.N.Y. Mar. 28, 2013) .........................................................................13

*In re Lottery.com, Inc.*,
    --- F.Supp.3d ---, 2024 WL 454298 (S.D.N.Y. 2024) ............................................................11

*Pa. Pub. Sch. Employees' Ret. Sys. v. Bank of Am. Corp.*,
    874 F. Supp. 2d 341 (S.D.N.Y. 2012).....................................................................................13

*In re Rockwell Med., Inc. Sec. Litig.*,
    2018 WL 1725553 (S.D.N.Y. Mar. 30, 2018) .........................................................................12

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004).............................................................................................14, 15

*Rotunno v. Wood*,
    2022 WL 14997930 (2d Cir. Oct. 27, 2022)............................................................................10

*Saraf v. Ebix, Inc.*,
    632 F. Supp. 3d 389 (S.D.N.Y. 2022).....................................................................................12

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
    33 F. Supp. 3d 401 (S.D.N.Y. 2014).......................................................................................15

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*,
    531 F.3d 190 (2d Cir. 2008)....................................................................................................13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..............................................................................................................1, 7

*In re Veon Ltd. Sec. Litig.*,
    2018 WL 4168958 (S.D.N.Y. Aug. 30, 2018) .........................................................................12

*Woodley v. Wood*,
    2022 WL 103563 (S.D.N.Y. Jan. 11, 2022) ............................................................................13

*In re Yukos Oil Co. Sec. Litig.*,
    2006 WL 3026024 (S.D.N.Y. Oct. 25, 2006)............................................................................9

**Statutes**

15 U.S.C. § 78u–4.......................................................................................................................1, 14

Defendant Pawan Kumar Agrawal, the former Chief Financial Officer ("CFO") of Azure Power Global Limited ("Azure" or the "Company"), respectfully submits this memorandum of law in support of his motion to dismiss the Second Amended Complaint (the "Complaint").

## PRELIMINARY STATEMENT

Plaintiff's 108-page Complaint is sprawling, but the allegations about Mr. Agrawal are sparse. Plaintiff challenges two categories of statements allegedly attributable to Mr. Agrawal: risk disclosures that appeared in Azure's 2021 Form 20-F and statements about the Company's operating megawatts made on quarterly earnings calls. But the Complaint neither adequately pleads that any of these statements were false nor alleges any facts showing that they were made with a fraudulent intent.

The Private Securities Litigation Reform Act ("PSLRA") was enacted as "a check against abusive litigation." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). Among the statute's most important provisions is a requirement that a complaint "state with particularity facts giving rise to a strong inference" that the defendant acted with scienter—i.e., an intent to deceive or defraud. 15 U.S.C. § 78u-4(b)(2)(A). To satisfy this stringent standard, a plaintiff must plead individualized facts giving rise to a "cogent" and "compelling" inference that a particular defendant acted with the required state of mind. *Tellabs*, 551 U.S. at 314. Group pleading does not suffice. The principle is a simple one: before you accuse a defendant of securities fraud, you should have a compelling and individualized factual basis for claiming that the defendant intended to deceive investors.

Plaintiff's Complaint thumbs its nose at this requirement. Not one of its over 300 paragraphs of allegations identifies any information known to Mr. Agrawal that contradicted any of his public statements. Instead, Plaintiff relies primarily on group pleading about unspecified data that was allegedly available to the "Defendants" as a whole, but this hopelessly vague group

1

pleading is insufficient as a matter of law.  Moreover, the only two allegations specific to Mr. Agrawal in the entirety of Plaintiff's bloated Complaint—that he was charged (but not convicted) under an anti-money laundering statute based on conduct that preceded his employment at Azure and that he was "quietly replaced" as Azure's CFO and "demoted" to working at a subsidiary for unspecified reasons—do not raise any reasonable inference of scienter, let alone the "strong inference" required by the PSLRA.

The Complaint also fails to adequately plead a single false or misleading statement attributable to Mr. Agrawal.  Plaintiff's theory that the risk disclosures in the Company's Form 20-F were misleading because they allegedly failed to disclose allegations made in whistleblower complaints is contrary to decisions by the Second Circuit and this Court, which establish that there is no duty to disclose uncharged, unadjudicated allegations of wrongdoing.  *See, e.g., In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 651 (S.D.N.Y. 2017) (Woods, J.).

Similarly, the Complaint does not plead facts establishing that the megawatt operating figures stated by Mr. Agrawal on quarterly earnings calls were false or misleading.  Plaintiff points to the fact that the Company's megawatts operating *as of different and later periods in time* were adjusted for inconsistencies following an investigation.  But Plaintiff alleges no facts demonstrating that the figures for previous periods stated by Mr. Agrawal—which repeated the same figures stated by the Company in its quarterly financial results—were materially false or misleading.  In fact, the Company's disclosures indicate the opposite: that the megawatts operating numbers stated by Mr. Agrawal remained accurate even after the Company conducted an investigation and made adjustments to later periods.

Plaintiff's claims against Mr. Agrawal should be dismissed with prejudice.

2

## BACKGROUND[1]

### A.    Azure and the Individual Defendants.

Azure is an Indian renewable energy company.  Compl. ¶¶ 17, 28.  It generates revenue by developing renewable energy projects across India and then entering into agreements with customers to sell the power generated from those projects.  *Id.* ¶¶ 34–35.  Defendant Pawan Kumar Agrawal was CFO of Azure from February 1, 2019 to May 1, 2023.  *Id.* ¶ 22.  The other individual defendants are Ranjit Gupta, Azure's former Chief Executive Officer, and Murali Subramanian, Azure's former President and Chief Operational Officer.  *Id.* ¶¶ 18–19.

### B.    Azure Receives Whistleblower Complaints and Adjusts Certain Megawatts Operating Numbers.

On August 29, 2022, Azure issued a press release stating that the Company had "received a whistleblower complaint in May 2022 alleging potential procedural irregularities and misconduct by certain employees at a plant belonging to one of its subsidiaries."  *Id.* ¶ 162.  The press release further stated that, in reviewing the whistleblower complaint, "Azure's Audit Committee, with the assistance of legal counsel and forensic accounting support, … identified evidence of manipulation of project data and information by certain employees" and that the Company was "implementing immediate remedial measures" and "initiating disclosure of the findings to the appropriate authorities."  *Id.*

On January 25, 2023, Azure issued a press release reporting that the Company had received an additional whistleblower complaint.  *Id.* ¶ 87.  The press release explained that "[a]s part of its investigations, the [Company] also widened its review to include a review of all

---

[1] The facts recited here are drawn from the Complaint and documents incorporated into the Complaint by reference, which may be considered by the Court in deciding a motion to dismiss. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  Mr. Agrawal assumes the truth of Plaintiff's allegations only for purposes of this motion.

projects commissioned in Fiscal 2022 and Fiscal 2023" and that "[a]s part of this review, the Group identified inconsistencies in project data in three other projects." *Id.* ¶ 92. The January 25 press release reported that the Company had adjusted its megawatts operating to 2,666 as of March 31, 2022, and 2,907 as of September 30, 2022. *Id.* ¶¶ 95–96. A footnote stated that the adjustments were based on "inconsistencies in [megawatts] reported as identified by the [Company] through its review of 2022 whistle-blower allegations." *Id.*; Ex. 1, Jan. 25, 2023 Press Release.

The January 25 press release also stated that the Company had conducted a review of certain "anti-corruption and related compliance issues," including "an investigation into a corruption allegation against certain former executives." Compl. ¶ 93. In the Company's 2022 Form 20-F filed on October 12, 2023, Azure stated it had "identified potential misrepresentation made by former executives to the Board" and identified evidence that "former executives were involved in an apparent scheme." *Id.* ¶¶ 195, 197. At the time of the January 25 press release and October 12 Form 20-F, Mr. Agrawal was a <u>current</u> Azure executive, *see* Ex. 2, 2022 20-F, at 75, and thus could not have been one of the "former executives" referred to in those disclosures.

### C.       Plaintiff Attempts to Convert Azure's Investigation Into Securities Fraud.

In the wake of the whistleblower allegations, Plaintiff filed the operative Complaint on November 9, 2023, asserting claims against the Company, Mr. Agrawal, and Messrs. Gupta and Subramanian under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. ECF No. 80. The bulk of Plaintiff's allegations are aimed at the "Defendants" collectively. *See, e.g.*, Compl. ¶¶ 107, 110–11, 127, 155, 206–20, 228–31. These allegations are addressed in the motion filed by the Company and Messrs. Subramanian and Gupta.

As to Mr. Agrawal, the Complaint alleges only two categories of misstatements. The first are certain risk disclosures in Azure's 2021 Form 20-F, which was filed with the SEC on

4

July 28, 2021 together with a Sarbanes-Oxley certification signed by Mr. Agrawal. *See id.*

¶ 108. The 20-F identified a number of risk factors that "could materially and adversely affect"

Azure's "business, financial condition, results of operations and cash flows," and thereby cause a

"decline" in "the trading price of [Azure's] equity shares," stating, *inter alia*:

- "Any damages caused by fraud or other misconduct by our employees could adversely affect our business, results of operations and financial condition";

- "Our existing operations, personnel, systems, and internal controls may not be adequate to support our growth and expansion and may require us to make additional unanticipated investments in our infrastructure"; and

- "We have developed and implemented formal controls and procedures to ensure that we are in compliance with the FCPA as well as anti-corruption, anti-bribery and anti-facilitation payment laws…. Any historic or future violations of these laws, regulations and procedures … could be costly and time-consuming to investigate and expose us to administrative, civil or criminal penalties or fines (including under U.S. and Indian laws and regulations as well as foreign laws)." *Id.* ¶¶ 108, 110–11; Ex. 3, 2021 Form 20-F, at 14, 32-34.

Plaintiff alleges that these risk factors were false or misleading because they warned of the risk

of misconduct, without disclosing that this risk had materialized in the form of the conduct

alleged in the whistleblower complaints. Compl. ¶¶ 109, 112.

Second, the Complaint challenges three statements made by Mr. Agrawal on quarterly

earnings calls about the Company's "megawatts operating"—i.e., the aggregate cumulative

megawatt rated capacity of Azure's power plants that are commissioned and operational as of the

reporting date. *Id.* ¶ 4. Specifically, Plaintiff alleges that Mr. Agrawal repeated on earnings calls

the megawatts operating figures stated by the Company in its quarterly results as follows:

- During an August 31, 2021 earnings call, Mr. Agrawal stated that as of June 30, 2021 (the end of Azure's first quarter for fiscal year 2022), Azure was "operating 2,052 megawatts on a PP[A] [Power Purchase Agreement] or AC [alternating current] basis, which is 23% higher than what we were operating a year before." *Id.* ¶ 119.

- During a December 13, 2021 earnings call, Mr. Agrawal stated that as of September 30, 2021 (the end of Azure's second quarter for fiscal year 2022), Azure was

5

"operating 2,210 megawatts on a PPA or AC basis, which is 31% higher than what we were operating a year before." *Id.* ¶ 135.

- During a February 28, 2022 earnings call, Mr. Agrawal stated that as of December 31, 2021 (the end of Azure's third quarter for fiscal year 2022), Azure was "operating 2,523 megawatts on a PPA or AC basis, which is 37% higher than what we were operating a year before." *Id.* ¶ 149.

Although the Complaint claims that these statements about the Company's quarterly megawatts operating as of June 30, 2021 (Q1 of FY 2022), September 30, 2021 (Q2 of FY 2022), and December 31, 2021 (Q3 of FY 2022) were false or misleading, it nowhere explains why that is so. Instead, it points out (irrelevantly) that, on January 25, 2023, the Company made adjustments to its megawatts operating numbers as of two *later* quarterly periods: the quarter ending March 31, 2022 (Q4 of FY 2022) and the quarter ending September 30, 2022 (Q2 of FY 2023). *Id.* ¶¶ 120(a), 136(a), 150(a). The press release disclosing these adjustments did not adjust any of the quarterly megawatts operating figures for prior periods stated by Mr. Agrawal. Instead, it reiterated that the Company had 2,210 megawatts operating as of September 30, 2021—the very same megawatts operating amount stated by Mr. Agrawal on the December 31, 2021 earnings call. *See* Ex. 1, Jan. 25, 2023 Press Release, at 7.

As to scienter, the Complaint makes virtually no allegations specific to Mr. Agrawal. It claims only that he was charged (but not convicted) under an anti-money laundering statute for conduct at a prior employer, Compl. ¶ 69, and that he was "replaced" as CFO of Azure and asked to work at a subsidiary after Azure hired a new CFO, *id.* ¶ 188. The press release announcing this change explains that, as "a further step to strengthen the Company's overall governance and control," the Company decided to appoint Sugata Sircar—an independent director and member of the Company's Audit & Risk Committee—as "Group CFO" and that Mr. Agrawal would "continue as CFO of Azure Power India Private Limited"—the Company's main operating entity—"and its group of subsidiaries, reporting to Sugata." Ex. 5, May 3, 2023 Press Release.

**ARGUMENT**

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court generally must accept the truth of a plaintiff's well-pleaded allegations, the Court "need not credit conclusory statements unsupported by assertions of facts or legal conclusions and characterizations presented as factual allegations." *Cooper v. Templeton*, 629 F. Supp. 3d 223, 229 (S.D.N.Y. 2022) (internal quotation marks omitted).

Securities fraud claims are subject to "heightened pleading requirements." *ATSI*, 493 F.3d at 99. Rule 9(b) requires that "the circumstances constituting fraud … shall be stated with particularity." *Id.* (alteration in original). To meet this test, a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 108 (2d Cir. 2012). Plaintiffs must also satisfy the PSLRA's "[e]xacting pleading requirements," which serve "[a]s a check against abusive litigation." *Tellabs, Inc.* 551 U.S. at 313. Under the PSLRA, a plaintiff must (1) "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading" and (2) "state with particularity facts giving rise to a strong inference that [each] defendant acted with the required state of mind." *Id.* at 321 (alterations in original).

As explained below and in the Motions to Dismiss filed by Defendants Azure, Gupta, and Subramanian, which Mr. Agrawal joins in and incorporates by reference to the extent applicable to him, the Complaint falls far short of these exacting standards.

**I.    Plaintiff Fails to Plead Scienter Against Mr. Agrawal.**

To plead scienter under the PSLRA, a plaintiff must allege "with particularly facts giving rise to a *strong* inference that the defendant acted with the required state of mind." *ECA, Local*

7

*134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) (emphasis in original).  A "strong" inference is one that is "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* (quoting *Tellabs*, 551 U.S. at 324).  A plaintiff may plead scienter by alleging facts showing either (1) that a defendant had "the motive and opportunity to commit fraud," or (2) "strong circumstantial evidence of conscious misbehavior or recklessness." *Id*. Neither theory is adequately pleaded here.

> **A.      Plaintiff Does Not Plead Motive and Opportunity to Commit Fraud.**

To raise a strong inference of scienter through allegations "motive and opportunity," a plaintiff must allege that the defendant "benefitted in some concrete and personal way from the purported fraud." *Id.* "Motives that are common to most corporate officers, such as the desire for the corporation to appear profitable and the desire to keep stock prices high to increase officer compensation, do not constitute 'motive' for purposes of this inquiry." *Id.*  Here, the only motive-related allegation in the Complaint is that "Defendants" wanted to "make Azure's financial position appear more favorable," Compl. ¶ 60, a generalized motive shared by all executives that is insufficient as a matter of law, *see ECA*, 553 F.3d at 198 (holding that such generalized motive allegations are insufficient).

> **B.      Plaintiff Does Not Plead Conscious Misbehavior or Recklessness.**

Because the Complaint fails to allege motive or opportunity to commit fraud, it must instead plead "strong circumstantial evidence of conscious misbehavior or recklessness" in order to demonstrate scienter, *see ECA*, 553 F.3d at 198.  In the absence of an adequately pleaded motive, however, "the strength of the[se] circumstantial allegations" must be "correspondingly greater" in order to meet Plaintiff's pleading burden. *Id.* at 198–99.  The Complaint does not come close to meeting his high bar.

### 1.    Plaintiff Relies on Impermissible Group Pleading.

As an initial matter, nearly all of Plaintiff's scienter allegations are facially deficient because they consist of generalized claims about what "Defendants" knew or must have known as a group.  Such allegations fail as a matter of law because scienter must be "separately pled and individually supportable as to each defendant"; it is "not amenable to group pleading."  *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 161 (S.D.N.Y. 2021) (citation and internal quotation marks omitted).  The bulk of Plaintiff's scienter allegations may be discounted on this basis alone, including the allegations that "Defendants" received whistleblower complaints making allegations about unspecified "Key Managerial Personnel" and "executives"; that "Defendants" "touted" the Company's monitoring capabilities; that "Defendants" visited Azure plants; and that "Defendants" acted contrary to internal policies.  *See, e.g.*, Compl. ¶¶ 211–13, 232–39, 245–49.  Because these vague allegations "fail to differentiate in any way between" Defendants, they are "insufficient as a matter of law to establish … conscious misbehavior or recklessness."  *In re Yukos Oil Co. Sec. Litig.*, 2006 WL 3026024, at *20 (S.D.N.Y. Oct. 25, 2006).

### 2.    The Allegations Specific to Mr. Agrawal Cannot Establish Scienter.

Plaintiff asserts only two individualized allegations about Mr. Agrawal that could conceivably relate to scienter: (1) that Mr. Agrawal was charged with offenses under India's Prevention of Money Laundering Act for unspecified conduct relating to his prior employment; and (2) that, in May 2023, Mr. Agrawal was "quietly replaced" as CFO and "demoted" to working at a subsidiary.  Compl. ¶¶ 69, 188, 224.  Even taken together, these allegations cannot demonstrate a "strong inference" of fraudulent intent.

First, the charges against Mr. Agrawal relating to his prior employment are irrelevant.  As Azure explained in its disclosures, "[t]he relevant transactions that are the subject of the

9

complaint predated Mr. Agrawal's tenure as an employee and as Chief Financial Officer of the Company, and the criminal charges are not directed at, and do not concern, the Company or its subsidiaries." Ex. 4, Dec. 27, 2021 Press Release, at 1. The Complaint lacks any allegations connecting these charges to Mr. Agrawal's work at Azure or to any of the challenged statements. As a result, the allegations do not demonstrate scienter. *See, e.g.*, *Rotunno v. Wood*, 2022 WL 14997930, at *3 (2d Cir. Oct. 27, 2022) (investigation concerning "unrelated conduct that occurred prior to the Class Period" did not support finding of scienter); *In re Gen. Elec. Sec. Litig.*, 2020 WL 2306434, at *15 (S.D.N.Y. May 7, 2020) (that the defendant allegedly "engaged in a pattern of unrelated accounting misconduct" was insufficient to demonstrate scienter); *In re Dell Inc., Sec. Litig.*, 591 F. Supp. 2d 877, 905 (W.D. Tex. 2008) (alleged fraud committed at other companies "with no connection to the present case" is "not probative" of scienter).

Second, Plaintiff's allegation that Mr. Agrawal was "replaced" as CFO and "demoted" to CFO of the Company's subsidiary also cannot demonstrate scienter. It is well-settled that even a *termination* is not enough to demonstrate scienter, much less a demotion. *In re AppHarvest Sec. Litig.*, 2023 WL 4866233, at *22 (S.D.N.Y. July 31, 2023) ("reject[ing] Plaintiff's attempt to establish scienter … from allegations concerning the timing of [the defendant executive's] demotion" because changes in employment "are 'not themselves sufficient'" to prove scienter); *Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 815 (S.D.N.Y. 2018) (that a defendant was fired "says nothing of his state of mind"); *In re Adient plc Sec. Litig.*, 2020 WL 1644018, at *29 (S.D.N.Y. Apr. 2, 2020) ("Terminations or resignations of corporate executives are insufficient alone to establish an inference of scienter.").

Further, Plaintiff makes no attempt to connect Mr. Agrawal's alleged demotion to the fraud alleged in this case. As courts have recognized, "[w]hen corporate misconduct is

10

disclosed, members of management resign or are terminated for all sorts of reasons, including …

simply because the optics of changing management are better for investors and regulators." *In re*

*Lottery.com, Inc.*, --- F.Supp.3d ---, 2024 WL 454298, at *34 (S.D.N.Y. 2024).  Plaintiff fails to

allege any facts suggesting that Mr. Agrawal's purported "demotion" was caused by an

involvement in a scheme to defraud, as opposed to an innocuous reason.  *See Glaser v. The9,*

*Ltd.*, 772 F. Supp. 2d 573, 598 (S.D.N.Y. 2011) (resignations must be "highly unusual and

suspicious").  To the contrary, the Company's disclosures (undisputed by Plaintiff) indicate that

Mr. Sircar took over for Mr. Agrawal as the Company's CFO in order to "strengthen the

Company's overall governance and control," not because of any fraud or wrongdoing by Mr.

Agrawal.  Compl. ¶ 188.

Plaintiff's theory that the Company "demoted" Mr. Agrawal because of his participation

in a fraud is not cogent and compelling, as the law requires; it is <u>ridiculous</u>.  It defies common

sense to posit that a public company would discover that its CFO engaged in fraud and react to

that news by asking him to serve as the CFO of the Company's main operating entity.  Nor does

the timing of Mr. Agrawal's purported "demotion" support any inference of scienter.  Plaintiff

does not and cannot draw any connection between the whistleblower complaints and Mr.

Agarwal's replacement.  Mr. Agrawal did not step aside as Azure's CFO until May 2023—a year

after the May 2022 whistleblower complaint was received.  *Id.* ¶¶ 89, 224.

### 3.    Plaintiff's Other Theories of Scienter Also Fail.

Plaintiff's remaining scienter theories consist of defective group pleading that may be

dismissed out of hand for the reasons discussed above.  But even ignoring this defect, the

allegations fail to raise the requisite strong inference of scienter.

<u>Auditor Resignations</u>.  Plaintiff argues that Mr. Agrawal's scienter can be inferred from

the resignations of the Company's auditors simply because, as CFO, he was purportedly

"responsible for Azure's financial reporting." ECF No. 96 at 3.  The theory fails for several reasons.  First, Mr. Agrawal was not even CFO at the time of one of the auditor resignations.[2]  *See* Compl. ¶ 22.  Second, even if he had been CFO during both, "it is practically hornbook law that 'accusations' ... which are 'founded on nothing more than a defendant's corporate position are entitled to no weight."  *In re Rockwell Med., Inc. Sec. Litig.*, 2018 WL 1725553, at *14 (S.D.N.Y. Mar. 30, 2018).  Plaintiff thus cannot draw nefarious inferences about Mr. Agrawal's intent simply because he served as CFO at the time of an auditor's resignation.  Third, an auditor's "resignation alone does not support an inference of scienter," *Saraf v. Ebix, Inc.*, 632 F. Supp. 3d 389, 401 (S.D.N.Y. 2022), especially where there are no allegations "non-speculatively linking the resignations … to the company's alleged fraud," *In re HEXO Corp. Sec. Litig.*, 524 F. Supp. 3d 283, 315 (S.D.N.Y. 2021).  Here, Plaintiff fails to plead any such facts.[3]

Access to Raw Data.  Plaintiff advances a number of scienter theories based on allegations that Defendants as a group had access to unspecified information contradicting the statements challenged in the Complaint, including that "Defendants" allegedly received the whistleblower complaints, discussed Azure's monitoring capabilities, visited Company plants, and had "access to site-level data and plant employees."  Compl. ¶ 239.  Even putting aside Plaintiff's use of defective group pleading, these theories fall short for several reasons.

First, they again rely on assumptions about what the Defendants' must have known in their roles as "executive[s]" and "management," *id.* ¶ 233, rather than specific allegations

---

[2] Mr. Agrawal had already stepped aside as of July 10, 2023, when SR Batliboi resigned.

[3] Plaintiff's assertion, based on unnamed "confidential local sources," that E&Y raised unspecified "concerns regarding corrupt payments to vendors and project cost allocation," Compl. ¶ 66, is too vague to support an inference of scienter, particularly as there is no allegation that Mr. Agrawal was made aware of these concerns, *see, e.g.*, *Francisco v. Abengoa, S.A.*, 481 F. Supp. 3d 179, 208 (S.D.N.Y. 2020) (refusing to consider "general and second-hand" allegations from confidential witness).

showing that a particular defendant received particular data. *See, e.g., In re Veon Ltd. Sec. Litig.*, 2018 WL 4168958, at *18 (S.D.N.Y. Aug. 30, 2018) ("Courts in this Circuit have rejected similar attempts to hold senior officers liable based on their position and complaints to 'senior management' in the absence of specific allegations that the named defendant actually received information about the fraud."). Second, it is well established that "access" to raw data alone cannot establish scienter. *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 196 (2d Cir. 2008); *see Dobina v. Weatherford Int'l Ltd.*, 909 F. Supp. 2d 228, 249 (S.D.N.Y. 2012) (plaintiff failed to allege scienter where allegations did not "go beyond a 'broad reference to raw data' that the [Second] Circuit has concluded is insufficient to allege access to information as a basis for *scienter*"). Instead, a plaintiff "must identify specific contradictory information that was available to [defendants] at the time they made their [allegedly] misleading statements." *Pa. Pub. Sch. Employees' Ret. Sys. v. Bank of Am. Corp.*, 874 F. Supp. 2d 341, 358 (S.D.N.Y. 2012). Here, the Complaint fails to identify any specific data contradicting Mr. Agrawal's public statements at the time they were made. *See In re Barrick Gold Corp. Sec. Litig.*, 341 F. Supp. 3d 358, 373 (S.D.N.Y. 2018) ("Plaintiffs' broad allegations regarding expense and capital cost data are insufficient, as plaintiffs do not identify what specific facts these data would have contained that contradicts [the defendant's] statement.").

Internal Policies. Plaintiff asserts that the alleged violation of ethics and internal controls policies supports scienter, Compl. ¶¶ 245–49, but "weak internal controls are not evidence of scienter where there is no allegation that the weakness was brought to the defendants' attention prior to making the purportedly false and misleading statements," *Woodley v. Wood*, 2022 WL 103563, at *8 (S.D.N.Y. Jan. 11, 2022), *aff'd*, 2022 WL 14997930 (2d Cir. Oct. 27, 2022); *Janbay v. Canadian Solar, Inc.*, 2013 WL 1287326, at *13 (S.D.N.Y. Mar. 28, 2013) ("To the

13

extent that Plaintiffs have alleged that the disclosure of inadequate internal controls is itself indicative of scienter, courts have consistently rejected such allegations as insufficient."), *aff'd* 549 Fed. Appx. 24 (2d Cir. 2013).  Plaintiff nowhere alleges that Mr. Agrawal knew Azure's controls were inadequate or had been violated at the time of any challenged statement.

## II.    Plaintiff Fails to Plead an Actionable Misrepresentation or Omission.

Plaintiff's Section 10(b) claim against Mr. Agrawal should be dismissed for the independent reason that the Complaint fails to allege a materially false or misleading statement or omission by Mr. Agrawal.  To state a claim, plaintiffs "must do more than say that the statements … were false and misleading; they must demonstrate with specificity why and how that is so."  *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004); *see* 15 U.S.C. § 78u–4(b)(1).  Plaintiff identifies only two categories of challenged statements attributed to Mr. Agrawal and fails to adequately allege that either category was false or misleading.

First, Plaintiff challenges risk disclosures in Azure's 2021 Form 20-F about the risks of damage from fraud or other misconduct, inadequate internal controls, and non-compliance with anti-corruption and other laws.  Compl. ¶¶ 108, 110–11.  Plaintiff asserts that these disclosures were false or misleading because they failed to disclose that the risks at issue had already materialized in the form of whistleblower complaints alleging misconduct.  *Id.* ¶¶ 109, 112.

Plaintiff's theory fails because "disclosure is not a rite of confession and companies do not have a duty to disclose uncharged, unadjudicated wrongdoing."  *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014) (internal alterations and quotation marks omitted).  "That well-established principle would be entirely meaningless if every reporting company were required to disclose uncharged, unadjudicated conduct in the risk-factors sections of its filings."  *Banco Bradesco*, 277 F. Supp. 3d at 651 (Woods, J.).

14

Second, Plaintiff challenges Mr. Agrawal's statements of the Company's operating megawatts as of the first three quarters of fiscal year 2022.  Compl. ¶¶ 119, 135, 149.  Plaintiff claims that these statements were false or misleading because Azure later stated that its megawatts operating *as of the end* of fiscal year 2022 had been "[a]djusted for inconsistencies in [megawatts] reported as identified by the [Company] through its review of 2022 whistleblower allegations."  Compl. ¶¶ 95, 120, 136, 150.  Crucially, however, Plaintiff fails to allege any facts showing that the particular megawatts operating numbers stated by Mr. Agrawal—which related to earlier periods in time—were inaccurate, let alone materially so.  To the contrary, the very same disclosure Plaintiff relies on to assert that Azure's megawatts operating for the end of fiscal year 2022 had been "adjusted for inconsistencies" does *not* restate any of the megawatts operating numbers stated by Mr. Agrawal, and instead *reiterates* the same exact megawatts operating number stated by Mr. Agrawal for the second quarter of fiscal year 2022 without adjustment.  *See id.* ¶¶ 95–96; Ex. 1, Jan. 25, 2023 Press Release, at 7.  As a result, Plaintiff fails to "demonstrate with specificity why and how" Mr. Agrawal's statements about megawatts operating were in any way false or misleading.  *Rombach*, 355 F.3d at 174.

## III.    Plaintiff's Section 20(a) Claim Also Fails.

Section 20(a) liability is "predicated on a primary violation of securities law."  *Id.* at 177–78.  Because the Complaint fails to state a primary violation under Section 10(b), the Section 20(a) claim must be dismissed.  *Id*.  The claim also fails because Plaintiff nowhere alleges facts showing that Mr. Agrawal "culpably participated" in the alleged fraud—a requirement that "must be pleaded with the same particularity as scienter."  *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 438 (S.D.N.Y. 2014).

## CONCLUSION

For the foregoing reasons, Plaintiff's claims against Mr. Agrawal should be dismissed.

Respectfully submitted,

New York, New York
Dated: March 22, 2024

COVINGTON & BURLING LLP

*/s/ Mark P. Gimbel*
Mark P. Gimbel
Jordan S. Joachim
The New York Times Building
620 Eighth Avenue
New York, NY 10018
212-841-1000
mgimbel@cov.com
jjoachim@cov.com

*Attorneys for Defendant Pawan Kumar
Agrawal*

16