UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SERAP LOKMAN, individually and on behalf of all other similarly situated,

    Plaintiff,

v.

AZURE POWER GLOBAL LIMITED, RANJIT GUPTA, MURALI SUBRAMANIAN, and PAWAN KUMAR AGRAWAL,

    Defendants.

Case No. 1:22-cv-7432-GHW

**ORAL ARGUMENT REQUESTED**

# REPLY IN SUPPORT OF DEFENDANT PAWAN KUMAR AGRAWAL'S MOTION TO DISMISS

COVINGTON & BURLING LLP
Mark P. Gimbel
Jordan S. Joachim
The New York Times Building
620 Eighth Avenue
New York, New York 10018
212-841-1000
mgimbel@cov.com
jjoachim@cov.com

*Attorneys for Defendant Pawan Agrawal*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

I.     Plaintiff Fails to Plead a Strong Inference of Scienter Against Mr. Agrawal ..................... 2

        A.     Neither Mr. Agrawal's Alleged Demotion Nor the Unrelated Money Laundering Charges Demonstrate Scienter. ........................................................... 2

        B.     Plaintiff's Opposition Fails to Identify Any Other Viable Scienter Theory. ........... 4

II.    Plaintiff Fails to Plead an Actionable Misrepresentation or Omission. .............................. 6

CONCLUSION ............................................................................................................................... 6

## TABLE OF AUTHORITIES

**Cases**

*In re Bemis Co. Sec. Litig.*,
   512 F. Supp. 3d 518 (S.D.N.Y. 2021)......................................................................................2

*City of N. Miami Beach Police Officers' & Firefighters' Ret. Plan v. Nat'l Gen.*
   *Holdings Corp.*, 2021 WL 212337 (S.D.N.Y. Jan. 21, 2021).....................................................5

*In re Eletrobras Sec. Litig.*,
   245 F. Supp. 3d 450 (S.D.N.Y. 2017)..................................................................................3, 5

*In re FBR Inc. Sec. Litig.*,
   544 F. Supp. 2d 346 (S.D.N.Y. 2008)......................................................................................6

*In re Pareteum Sec. Litig.*,
   2021 WL 3540779 (S.D.N.Y. Aug. 11, 2021).........................................................................4

*In re Philip Morris Int'l Inc. Sec. Litig.*,
   437 F. Supp. 3d 329 (S.D.N.Y. 2020)......................................................................................5

*In re Salix Pharms., Ltd.*,
   2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016).........................................................................4

*In re Vale S.A. Sec. Litig.*,
   2017 WL 1102666 (S.D.N.Y. Mar. 23, 2017) .....................................................................4, 5

**PRELIMINARY STATEMENT**

Like the Complaint, Plaintiff's opposition says little about Mr. Agrawal—and nothing that comes close to raising the strong inference of scienter required to plead a securities fraud claim against him. As explained in Mr. Agrawal's opening brief, the Complaint includes only two allegations about Mr. Agrawal that are even potentially relevant to scienter: that he was replaced as Azure's CFO and asked instead to serve as CFO of its main operating subsidiary, and that he was charged with (but not convicted of) Indian money laundering offenses in relation to his prior employment. Neither allegation raises the requisite strong inference of scienter.

Recognizing the insufficiency of these allegations, Plaintiff embellishes them, suggesting a link between Mr. Agrawal's replacement as CFO and the resignation of the Company's auditor two months later. But there is nothing pleaded in the Complaint to support this theory, and the Complaint states that the auditor resigned because it could not complete its audit "within the timeline expected by the company"—not because Azure or Mr. Agrawal withheld information. Plaintiff also exaggerates the Complaint's allegation about the money laundering charges, asserting for the first time that Mr. Agrawal was also charged with "corruption" and "obstruction of justice," and that he in fact engaged in "illegal misconduct." Again, there is nothing in the Complaint to support these false assertions, and they have nothing to do with Azure in any event.

Plaintiff's opposition also fails to remedy the Complaint's heavy and improper reliance on group pleading. For example, Plaintiff argues that Defendants knew or should have known of material weaknesses in internal controls, but fails to plead any specific facts known to Mr. Agrawal at the time of his challenged statements. Plaintiff simply assumes such knowledge because of Mr. Agrawal's role as CFO—a presumption prohibited by Rule 9(b) and the PSLRA.

Plaintiff's attempts to show an actionable misstatement by Mr. Agrawal are similarly unavailing, and largely ignore the arguments in Mr. Agrawal's opening brief.

1

**ARGUMENT**

I.  **Plaintiff Fails to Plead a Strong Inference of Scienter Against Mr. Agrawal.**

  A.  **Neither Mr. Agrawal's Alleged Demotion Nor the Unrelated Money Laundering Charges Demonstrate Scienter.**

As explained in Mr. Agrawal's opening brief, neither Mr. Agrawal's "demotion" nor his unrelated money laundering charges supports scienter. Br. 9-11. Recognizing that those two allegations are insufficient, Plaintiff's opposition improperly introduces new ones.

First, Plaintiff speculates that Mr. Agrawal's replacement as CFO of Azure was connected to the resignation of Azure's auditor, an auditor report finding discrepancies between expert and management estimates of PPE (Property, Plant, and Equipment), and/or the whistleblower complaints. Opp. 54. But there is nothing in the Complaint connecting Mr. Agrawal's replacement to any of these developments, and Plaintiff cannot amend her allegations in an opposition brief. *In re Bemis Co. Sec. Litig.*, 512 F. Supp. 3d 518, 541 (S.D.N.Y. 2021).

As to the resignation of Azure's auditor SR Batliboi in July 2023, Plaintiff does not plead or identify any facts connecting this resignation to Mr. Agrawal's replacement as CFO more than two months earlier. Nor does Plaintiff even explain why any such a connection is plausible. While Plaintiff's opposition asserts that SR Batliboi "resigned because Azure, *and thereby CFO Agrawal*, would not provide them with the information they needed," Opp. 59, the cited portion of the Complaint does not support that assertion. To the contrary, it states that SR Batliboi resigned because "it [wa]s not possible for them to complete the audit of the financial statements within the timeline expected by the company." Compl. ¶ 101. Furthermore, undercutting Plaintiff's theme of auditor obstruction, an accompanying disclosure incorporated in the Complaint makes clear that the Company had no "disagreements with SRB," which if unresolved, would have required reference in its financial statements. *Id.*; ECF No. 104-23.

2

Plaintiff similarly fails to plead or identify any facts showing (i) that Mr. Agrawal knew about the purported discrepancies in expert and management estimates of PPE at the time of his replacement as CFO, or (ii) that there is any connection between this issue and his replacement. Nor is such a connection even plausible. Mr. Agrawal was replaced as CFO more than five months *before* the October 2023 audit report describing these discrepancies, Compl. ¶¶ 192, 202, ECF No. 104-24, undermining any connection between the two. Regardless, Plaintiff does not challenge a single statement about PPE in the Complaint, rendering this argument irrelevant.

Plaintiff's attempt to connect the whistleblower complaints to Mr. Agrawal's replacement fails for similar reasons. Again, the Complaint does not plead any connection. Nor does it allege that the Company's investigation found any evidence that Mr. Agrawal engaged in misconduct.[1] And the timing of the whistleblower complaints also undercuts any plausible connection to Mr. Agrawal's May 2023 replacement, as the complaints were received far earlier (in 2021-2022).

More generally, none of these unpleaded and speculative theories demonstrate that Mr. Agrawal's replacement was "highly unusual and suspicious," as required to make it relevant to scienter. Br. 11. To the contrary, Plaintiff's theory that a public company would punish its CFO for involvement in a fraud by making him the CFO of its main operating entity is nonsensical. Unsurprisingly, Plaintiff fails to point to any case finding that an alleged demotion supported an inference of scienter.[2] And Plaintiff does nothing to rebut the Company's disclosure that it made

---

[1] Neither the Complaint nor opposition assert that Mr. Agrawal was one of the "former executives" described in the findings of the Company's investigation. Nor could they, as Mr. Agrawal was still a *current* executive. Br. 4. The opposition (but not the Complaint) asserts that the reference to "Key Managerial Staff" in the description of the First Whistleblower Complaint includes the Chief Financial Officer, Opp. 2, but it relies on a definition of a different term from an irrelevant agreement appended to the 20-F. ECF 104-1, at 220 (stamped page number). In any event, Plaintiff does not identify Mr. Agrawal as one of the relevant "Key Managerial Staff." Opp. 2.

[2] Plaintiff's cases are also distinguishable because they each involved unusual or suspicious circumstances not present here. *In re Eletrobras Sec. Litig.*, 245 F. Supp. 3d 450, 469 (S.D.N.Y. 2017) (the "clear implication" was that the CEO was "replaced, at least in part, because of the findings of Operation Car Wash and the internal (continued…)

this change to "strengthen the Company's overall governance and control."  Br. 11.

Second, Plaintiff asserts—without support in the Complaint or otherwise—that Mr. Agrawal was charged not only with money laundering but also "corruption" and "obstruction of justice" and that he "engaged in illegal misconduct."  Opp. 48, 54.  These baseless assertions are not pleaded and must therefore be disregarded.  In any event, they suffer from the same defect as the allegations that do appear in the Complaint: Plaintiff fails to demonstrate a connection between the unproven money-laundering charges relating to a prior employer and the fraud alleged here.  Plaintiff cites not one case holding that unrelated charges are probative of scienter.

### B. Plaintiff's Opposition Fails to Identify Any Other Viable Scienter Theory.

As explained in Mr. Agrawal's opening brief, Plaintiff's remaining scienter allegations consist of improper group pleading that should be disregarded.  Plaintiff's opposition fails to show that any of these group allegations are specific to Mr. Agrawal or adequately particularized.  *See* Opp. 42.[3]  Even putting that defect aside, they fail to demonstrate scienter.

Internal Controls.  Plaintiff asserts that Mr. Agrawal knew or should have known internal controls were inadequate, but fails to plead any facts demonstrating such knowledge at the relevant time, and instead relies on fraud by hindsight.  Plaintiff points to the allegation that E&Y supposedly raised concerns about improper payments near the end of 2021 and to 2023 reports noting internal control issues as of March 2022, Compl. ¶¶ 98, 203, 212, but the only internal controls statements attributed to Mr. Agrawal were made in July 2021, *id.* ¶¶ 108, 110.

---

investigation"); *In re Pareteum Sec. Litig.*, 2021 WL 3540779, at *17 (S.D.N.Y. Aug. 11, 2021) (executives terminated or replaced within weeks of "substantial restatement" and after being advised by auditor that internal controls were inadequate); *In re Salix Pharms., Ltd.*, 2016 WL 1629341, at *15 (S.D.N.Y. Apr. 22, 2016) (clawback of millions in compensation pursuant to contracts permitting clawback for intentional misconduct).

[3] Plaintiff cites *In re Vale S.A. Sec. Litig.*, but that case supports Mr. Agrawal's argument: "In a case involving multiple defendants, plaintiffs must plead circumstances providing a factual basis for scienter for each defendant; guilt by association is impermissible."  2017 WL 1102666, at *32 (S.D.N.Y. Mar. 23, 2017) (Woods, J.).

Plaintiff does not plead any facts showing Mr. Agrawal knew of control failures at that time. Plaintiff also argues that Mr. Agrawal must have known about internal control failures all along merely because he was CFO, but "boilerplate allegations that defendants knew or should have known of fraudulent conduct based solely on their … positions are insufficient." *In re Philip Morris Int'l Inc. Sec. Litig.*, 437 F. Supp. 3d 329, 360-61 (S.D.N.Y. 2020).[4]

Whistleblower Complaints. Plaintiff asserts that "numerous whistleblower complaints, alert[ed Mr. Agrawal] fraud was afoot," Opp. 56, but at the time of the challenged statements attributed to Mr. Agrawal, Azure had only received the First Whistleblower Complaint, which the Company found to be unsubstantiated, Compl. ¶ 62. Plaintiff does not plead any facts demonstrating that Mr. Agrawal believed, or had any reason to believe, that this finding was incorrect at the time. Nor does Plaintiff plead any facts suggesting that Mr. Agrawal had knowledge of the allegations in the Second or Third Whistleblower Complaints at the time of challenged statements attributed to him, all of which were made in February 2022 or earlier.

Central Monitoring System. Plaintiff argues there was "a central monitoring system" with which Mr. Agrawal "either monitored Azure's MWO in real time" or "which he was reckless in not using." Opp. 56. But the Complaint alleges no facts showing that Mr. Agrawal actually used this system or had any duty or ability to do so. The allegation that Mr. Agrawal had access to such a system is an "example of [access to] 'raw data' that the Second Circuit [has] held to be insufficient." *City of N. Miami Beach Police Officers' & Firefighters' Ret. Plan v. Nat'l Gen. Holdings Corp.*, 2021 WL 212337, at *10 (S.D.N.Y. Jan. 21, 2021). Further, the

---

[4] In contrast, Plaintiff's cases included particularized allegations of the defendants' knowledge. *Eletrobras*, 245 F. Supp. 3d at 468 (specific "red flags highlighted significant problems with [company's] internal controls" to defendants, including two internal audits); *Vale*, 2017 WL 1102666, at *33 ("Defendants d[id] not make any arguments in opposition" to claim that CFO was aware of "key provision" in contract governing financial liabilities relating to dam before conference call to discuss financial impact of dam collapse).

Complaint alleges—and the Company found—that there was "evidence of manipulation and misrepresentation of project data by some employees *at that project site*," Compl. ¶ 89 (emphasis added), undercutting Plaintiff's theory that alleged shortfalls could have been discovered through the central monitoring system.

## II.     Plaintiff Fails to Plead an Actionable Misrepresentation or Omission.

Plaintiff's efforts to show an actionable misstatement by Mr. Agrawal also fail.  With respect to the risk warnings, Plaintiff cannot escape that there is no duty "to disclose uncharged, unadjudicated conduct in the risk-factors sections of its filings." Br. 14.  The cases she cites (Opp. 23) are inapposite and do not hold otherwise.  And Plaintiff's contention that the risk warnings were vague "boilerplate," Opp. 22, contradicts her argument that they were *materially* misleading, *In re FBR Inc. Sec. Litig.*, 544 F. Supp. 2d 346, 362 (S.D.N.Y. 2008) ("[B]oilerplate description of … regulatory risks could not have been misleading" to reasonable investor).

With respect to the MWO statements, Plaintiff ignores the fact that none of the MWO statements attributed to Mr. Agrawal were ever corrected; instead, the Company actually reiterated one of the numbers, confirming its accuracy.  Br. 15.  Unable to respond to this point, Plaintiff tries to create confusion, by incorrectly asserting that MWO is a "cumulative number," Opp. 30, when it is a measure of capacity "*as of the reporting period.*"  Compl. ¶ 4 (emphasis added).  As a result, Plaintiff's argument that Azure's statement of MWO numbers as of the end of FY 2022 somehow rendered statements of MWO as of earlier quarters false is nonsensical. As to Plaintiff's claim that Azure's "adjusted" MWO number as of the end FY 2022 rendered its earlier FY 2022 guidance range inaccurate, that forward-looking guidance is protected by the PSLRA safe harbor and bespeaks caution doctrine and is not actionable.  *See* ECF No. 103 at 30.

## CONCLUSION

For the foregoing reasons, Plaintiff's claims against Mr. Agrawal should be dismissed.

6

|  |  |
|---|---|
| | Respectfully submitted, |
| New York, New York | |
| Dated: May 28, 2024 | COVINGTON & BURLING LLP |
| | */s/ Mark P. Gimbel* |
| | Mark P. Gimbel |
| | Jordan S. Joachim |
| | The New York Times Building |
| | 620 Eighth Avenue |
| | New York, NY 10018 |
| | 212-841-1000 |
| | mgimbel@cov.com |
| | jjoachim@cov.com |
| | |
| | *Attorneys for Defendant Pawan Kumar Agrawal* |