**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SERAP LOKMAN, Individually and On Behalf of All Others Similarly Situated, | : <br> : Case No. 1:22-cv-7432 <br> : |
| Plaintiff, | : <br> : |
| v. | : Hon. Gregory H. Woods <br> : |
| AZURE POWER GLOBAL LIMITED, RANJIT GUPTA, MURALI SUBRAMANIAN, and PAWAN KUMAR AGRAWAL, | : <br> : <br> : <br> : |
| Defendants. | : |

**DEFENDANTS' REPLY TO LEAD PLAINTIFF'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**
**THE SECOND AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

I. Plaintiff Fails to Plead Statements That Were False When Made. ...................................... 1

    A. Statements About Compliance with Anti-Corruption Laws. ........................................ 1

        1. Azure's Compliance Statements Were Not False When Made. ...................... 1

        2. Azure's Risk Warnings Were Not Misleading. ............................................... 3

    B. Statements About Internal Controls. ........................................................................... 4

    C. Statements About Megawatts Operating. ..................................................................... 6

    D. Statements About kWh. ............................................................................................... 7

    E. Statements About Wind Projects. ................................................................................. 8

    F. Statements About Commissioning Projects. ................................................................ 11

    G. Statements About Safety. ............................................................................................. 12

II. The Opposition Confirms That The SAC Does Not Plead Scienter. ................................... 13

    A. Azure Did Not "Admit" Its Executives Engaged in Fraudulent Scheme. ................... 13

    B. The Whistleblower Complaints Do Not Support a Finding of Scienter. ...................... 15

    C. Azure's Monitoring Capability Does Not Support Scienter. ....................................... 16

    D. Senior Management and Auditor Resignations Were Not "Unusual or Suspicious." ... 18

    E. Plaintiff's Allegations that Azure Knew of Weak Internal Controls and Violations of Internal Ethics and Control Policies Are Insufficient. ............................................... 20

        1. Knowledge of Weak Internal Controls ........................................................... 20

        2. Violations of Ethics Policy and Internal Controls .......................................... 21

    F. Plaintiff's Allegations Do Not Show "Widespread" Data Manipulation. ..................... 22

    G. The Court Should Reject Plaintiff's Allegations Regarding Motive. ........................... 22

    H. The Court Should Reject Plaintiff's Allegation of Corporate Scienter. ....................... 23

III. The Court Should End the Class Period in August 2022. .................................................... 23

IV. The Court Should Dismiss the Section 20(a) Claims. ........................................................ 24

V. Conclusion ......................................................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**                                                                              **Page(s)**

*Akerman v. Arotech Corp.*,
    608 F. Supp. 2d 372 (E.D.N.Y. 2009) ...............................................................................14

*In re Akorn, Inc. Sec. Litig.*,
    240 F. Supp. 3d 802 (N.D. Ill. 2017) ...............................................................................20

*Arora v. HDFC Bank Ltd.*,
    671 F. Supp. 3d 305 (S.D.N.Y. 2023).................................................................................4

*In re Banco Bradesco S.A. Sec. Litig.*,
    277 F. Supp. 3d 600 (S.D.N.Y. 2017).............................................................................2, 3

*In re BHP Billiton Ltd. Securities Litigation*,
    276 F. Supp. 3d 65 (S.D.N.Y. 2017)................................................................................13

*In re BP p.l.c. Sec. Litig.*,
    843 F. Supp. 2d 712 (S.D. Tex. 2012) .............................................................................17

*Bricklayers & Masons Local Union No. 5 Ohio Pension Fund v. Transocean Ltd.*,
    866 F. Supp. 2d 223 (S.D.N.Y. 2012)..............................................................................13

*BYD Co. v. VICE Media LLC*,
    531 F. Supp. 3d 810 (S.D.N.Y. 2021), *aff'd*, 2022 WL 598973 (2d Cir. 2022) ......................15

*Chen v. X Fin.*,
    2021 WL 7449851 (E.D.N.Y. Dec. 9, 2021) ........................................................................16

*In re Chicago Bridge & Iron Co. N.V. Securities Litigation*,
    2018 WL 2382600 (S.D.N.Y. May 24, 2018) .........................................................................11

*In re Citigroup, Inc. Sec. Litig.*,
    330 F. Supp. 2d 367 (S.D.N.Y. 2004), *aff'd sub nom. Albert Fadem Trust v.
    Citigroup, Inc.*, 165 F. App'x 928 (2d Cir. 2006)....................................................................9

*Citiline Holdings, Inc. v. iStar Fin. Inc.*,
    701 F. Supp. 2d 506 (S.D.N.Y. 2010)................................................................................17

*City of Austin Police Retirement System. v. Kinross Gold Corp.*,
    957 F. Supp. 2d 277 (S.D.N.Y. 2013).................................................................................1

*City of Sterling Heights Gen. Emps. Ret. Sys. v. Hospira, Inc.*,
    2013 WL 566805 (N.D. Ill. Feb. 13, 2013) ..........................................................................3

*Cortec Indus., Inc. v. Sum Holding L.P.*,
    949 F.2d 42 (2d Cir. 1991)..............................................................................................1

*In re Didi Glob. Inc. Sec. Litig.*,
2024 WL 1119483 (S.D.N.Y. Mar. 14, 2024) ........................................................................23

*Dobina v. Weatherford Int'l Ltd.*,
909 F. Supp. 2d 228 (S.D.N.Y. 2012)...................................................................................20

*DoubleLine Capital LP v. Construtora Norberto Odebrecht, S.A.*,
413 F. Supp. 3d 187 (S.D.N.Y. 2019)...................................................................................24

*SEC v. Dunn*,
587 F. Supp. 2d 486 (S.D.N.Y. 2008)...................................................................................22

*In re Eastman Kodak Co. Sec. Litig.*,
632 F. Supp. 3d 169 (W.D.N.Y. 2022) ...................................................................................9

*In re Electrobras Sec. Litig.*,
245 F. Supp. 3d 450 (S.D.N.Y. 2017)...................................................................................21

*In re Facebook, Inc IPO Sec. & Derivative Litig.*,
986 F. Supp. 2d 487 (S.D.N.Y. 2013).....................................................................................4

*SEC v. Geon Indus., Inc.*,
531 F.2d 39 (2d Cir. 1976).....................................................................................................13

*In re Goldman Sachs Grp., Inc. Sec. Litig.*,
2014 WL 2815571 (S.D.N.Y. June 23, 2014) .........................................................................3

*In Re Grab Holdings Ltd. Sec. Litig.*,
2024 WL 1076277 (S.D.N.Y. Mar. 12, 2024) .........................................................................7

*In re Grupo Televisa Sec. Litig.*,
368 F. Supp. 3d 711 (S.D.N.Y. 2019)...............................................................................6, 10

*Hall v. The Children's Place Retail Stores, Inc.*,
580 F. Supp. 2d 212 (S.D.N.Y. 2008)...................................................................................20

*Higginbotham v. Baxter Int'l Inc.*,
495 F.3d 753 (7th Cir. 2007) .................................................................................................13

*Ho v. Duoyuan Glob. Water, Inc.*,
887 F. Supp. 2d 547 (S.D.N.Y. 2012)...................................................................................19

*Ind. Pub. Ret. Sys. v. SAIC, Inc.*,
818 F.3d 85 (2d Cir. 2016)......................................................................................................7

*In re Insys Therapeutics, Inc. Sec. Litig.*,
2018 WL 2943746 (S.D.N.Y. June 12, 2018) ...................................................................6, 21

*Krouner v. Am. Heritage Fund., Inc.*,
    899 F. Supp. 142 (S.D.N.Y. 1995) ...............................................................................13

*Kusnier v. Virgin Galactic Holdings, Inc.*,
    639 F. Supp. 3d 350 (E.D.N.Y. 2022) .........................................................................13

*In re Longtop Fin. Techs. Ltd. Sec. Litig.*,
    939 F. Supp. 2d 360 (S.D.N.Y. 2013)...........................................................................13

*In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*,
    2014 WL 285103 (S.D.N.Y. Jan. 27, 2014) ................................................................11

*Menkes v. Stolt-Nielsen S.A.*,
    2005 WL 3050970 (D. Conn. Nov. 10, 2005) ..............................................................10

*In re Merrill Lynch & Co.*,
    273 F. Supp. 2d 351 (S.D.N.Y. 2003)...........................................................................24

*Meyer v. JinkoSolar Holdings Co.*,
    761 F.3d 245 (2d Cir. 2014)......................................................................................3, 10

*In re N. Dynasty Minerals Ltd. Sec. Litig.*,
    2023 WL 9509337 (E.D.N.Y. Jan. 25, 2023) ..............................................................23

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)...................................................................................16, 19

*O'Brien v. Nat'l Prop. Analysts Partners*,
    719 F. Supp. 222 (S.D.N.Y. 1989) ..............................................................................22

*In re OSG Sec. Litig.*,
    12 F. Supp. 3d 622 (S.D.N.Y. 2014).............................................................................18

*Owl Creek I, L.P. v. Ocwen Financial. Corp.*,
    2018 WL 4844019 (S.D. Fla. Oct. 4, 2018)............................................................3, 4, 7

*Panther Partners Inc. v. Jianpu Tech, Inc.*,
    2020 WL 5757628 (S.D.N.Y. Sept. 27, 2020)................................................................3

*In re Par Pharmaceutical, Inc. Securities Litigation*,
    733 F. Supp. 668 (S.D.N.Y. 1990) ..............................................................................10

*Plumbers & Pipefitters Nat'l Pension Fund v. Davis*,
    2020 WL 1877821 (S.D.N.Y. Apr. 14, 2020)................................................................6

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of
    Commerce*,
    694 F. Supp. 2d 287 (S.D.N.Y. 2010)...........................................................................17

*In re Quantumscape Sec. Class Action Litig.*,
    580 F. Supp. 3d 714 (N.D. Cal. 2022) ...................................................................11

*Rapoport v. Asia Elecs. Holding Co.*,
    88 F. Supp. 2d 179 (S.D.N.Y. 2000).......................................................................1

*Ret. Ass'n v. comScore, Inc.*,
    268 F. Supp. 3d 526 (S.D.N.Y. 2017)...........................................................7, 15, 23

*Roth v. Jennings*,
    489 F.3d 499 (2d Cir. 2007)....................................................................................1

*In re Salix Pharms., Ltd.*,
    2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016)..................................................17, 18

*In re Sanofi Sec. Litig.*,
    155 F. Supp. 3d 386 (S.D.N.Y.)..............................................................................16

*In re Sketchers USA, Inc. Sec. Litig.*,
    444 F. Supp. 3d 498 (S.D.N.Y. 2020)....................................................................23

*Skiadas v. Acer Therapeutics Inc.*,
    2020 WL 3268495 (S.D.N.Y. June 16, 2020) ...................................................16, 23

*Stadium Capital, LLC v. Co-Diagnostic, Inc.*,
    2024 WL 456745 (S.D.N.Y. Feb. 5, 2024)...............................................................3

*Steamship. Trade Ass'n of Baltimore-Int'l Longshoreman's Ass'n Pension Fund
    v. Olo Inc.*,
    2023 WL 4744197 (S.D.N.Y. July 25, 2023) .........................................................17

*In re Synchrony Fin. Sec. Litig.*,
    988 F.3d 157 (2d Cir. 2021)...................................................................................11

*In re Tenaris S.A. Sec. Litig.*,
    493 F. Supp. 3d 143 (E.D.N.Y. 2020) .....................................................................3

*In re Teva Securities Litigation*,
    671 F. Supp. 3d 147 (D. Conn. 2023).....................................................................23

*Thorpe v. Walter Inv. Mgmt. Corp.*,
    2014 WL 11961964 (S.D. Fla. Dec. 23, 2014) .........................................................3

*In re Top Tankers, Inc. Sec. Litig.*,
    528 F. Supp. 2d 408 (S.D.N.Y. 2007)....................................................................20

*In re Vale S.A. Securities Litigation*,
    2020 WL 2610979 (E.D.N.Y. May 20, 2020) ............................................... *passim*

*Valentini v. Citigroup, Inc.*,
　837 F. Supp. 2d 304 (S.D.N.Y. 2011)............................................................................14, 15

*In re Van der Moolen Holding N.V. Sec. Litig.*,
　405 F. Supp. 2d 388 (S.D.N.Y. 2005)...............................................................................16

*Varghese v. China Shenguo Pharm. Holdings, Inc.*,
　672 F. Supp. 2d 596 (S.D.N.Y. 2009)...............................................................................19

*In re Veeco Instruments, Inc., Sec. Litig.*,
　235 F.R.D. 220 (S.D.N.Y. 2006) ................................................................................21, 22

*Wang v. Cloopen Grp. Holding Ltd.*,
　661 F. Supp. 3d 208 (S.D.N.Y. 2023)..............................................................................3, 17

*Yannes v. SCWorx Corp.*,
　2021 WL 2555437 (S.D.N.Y. June 21, 2021) ................................................................17, 18

**PRELIMINARY STATEMENT[1]**

Like the SAC, the Opposition tries to cobble together various unrelated whistleblower allegations and Azure disclosures to portray a years-long "fraudulent scheme" by Defendants that was allegedly hidden from investors.[2]  Rather than confront head on the arguments in Defendants' Memorandum explaining why the SAC fails to state a claim, the Opposition resorts to mischaracterizing Azure's disclosures as "admissions," "concessions," or "acknowledgements" of wrongdoing.  But once Plaintiff's mischaracterizations are stripped away, the ***actual*** whistleblower allegations and Company statements show no admissions, much less fraudulent misstatements.[3]  Instead, they show that Azure investigated issues that were brought to its attention and, to the extent Azure found problems (none of which prompted any financial restatements), Azure disclosed them and took appropriate remedial steps.  That is simply not securities fraud.

**I.     Plaintiff Fails to Plead Statements That Were False When Made.**

   **A.     Statements About Compliance with Anti-Corruption Laws.**

      **1.     Azure's Compliance Statements Were Not False When Made.**

Plaintiff argues that the Company's statement that it was making efforts to comply with anti-corruption laws in the 2021 20-F was false and misleading because Defendants Gupta and Subramanian were violating such laws at that time, citing as support Azure's disclosures about the

---

[1] Capitalized terms not defined here have the meanings set forth in Defendants' Memorandum of Law in Support of their Motion to Dismiss (Dkt. No. 103, "Memorandum" or "Mem.").

[2] The substance of Plaintiff's Appendix chart is addressed throughout this Reply rather than in a separate document.

[3] Contrary to Plaintiff's assertion (Opp'n 14 n.6), this Court can consider the actual statements and filings at issue in deciding this Motion.  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("When a complaint alleges ... that a document ... failed to disclose certain facts, it is appropriate for the court, in considering a Rule 12(b)(6) motion, to examine the document to see whether or not those facts were disclosed.").  If the documents contradict the complaint, "the documents control and this Court need not accept as true the allegations in the amended complaint," *Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000), because otherwise plaintiffs could escape the consequences of their own failure to attach documents to a complaint, *see Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).  Plaintiff's citation to *City of Austin Police Retirement System v. Kinross Gold Corp.*, 957 F. Supp. 2d 277, 287 (S.D.N.Y. 2013) omits that courts routinely consider "legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." (citation omitted).  Every document cited or referenced in the Memorandum satisfies *Kinross*.

First Whistleblower Complaints. (Opp'n 14):

- "Azure admitted that it received whistleblower complaints in June and July 2021 against 'Key Managerial Personnel' concerning 'corrupt conduct in acquisition of land, improper use of political connections, ... and payment of kickbacks' in relation to the acquisition and use of land." (*Id*. 15);

- "The Third Whistleblower Complaint confirmed the allegations of the First Whistleblower Complaints." (*Id*. 15, 17, 24);

- "[A] Special Committee convened in August 2022 ... [and] identified evidence that former executives were involved in an apparent scheme with persons outside the Company to make improper payments ... [and] potential misrepresentations made by former executives to the Board in July 2021. (*Id*. 15.)"

But these assertions are belied by Azure's actual filings. As detailed in the Memorandum, the First Whistleblower Complaints were found to be ***unsubstantiated*** in the very document on which Plaintiff relies. (Mem. 11-12.)

Similarly, Plaintiff claims that the Third Whistleblower Complaint—received more than a year later—somehow "confirmed" the First Whistleblower Complaints. (Opp'n 15.) But Plaintiff's support, the 2022 20-F (Ex. W at 35) does not link the First and Third complaints, let alone state that the latter "confirms" the former. Moreover, the 2022 20-F states that ***no actual improper payments*** were identified.[4] Because Plaintiff's allegations are contradicted by the underlying documents (i.e., the 2021 and 2022 20-Fs), they are entitled to no weight.[5]

Plaintiff's reliance on *Banco Bradesco* (Opp'n 16) is misplaced. In that case, the Court held that defendant's statements about its compliance with anti-bribery laws were actionable

---

[4] Plaintiff's reference to Azure's later disclosures that it discovered evidence that executives may have been involved in a scheme to make improper payments and circumvention of "internal policies" regarding two wind projects (Opp'n 15) is irrelevant, because she pleads no facts suggesting that the First Whistleblower Complaints even mentioned any wind projects. Further, Plaintiff ignores that Azure found no "evidence of improper payments related to either" wind project. (SAC ¶ 195; Ex. W at 35.) Plaintiff's other mischaracterizations of the Company's statements fail for similar reasons. (*See* Mem. 12-13.)

[5] *See In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 633 (S.D.N.Y. 2017) ("[C]ourt need not accept as true an allegation that is contradicted by documents on which the complaint relies.") (citation and internal quotation marks omitted).

because the statements were "made in an effort to reassure the investing public about [the defendant's] integrity" while defendant was the subject of a very high-profile and public government investigation of "vast bribery revelations" in Brazil. 277 F. Supp. 3d at 659-60. No such context is alleged here with respect to Defendants' compliance statements.[6] Plaintiff also fails to address Defendants' Second Circuit cases holding that statements nearly identical to those challenged by Plaintiff here are non-actionable puffery. (Mem. 25, 27-28.) Instead, Plaintiff cites distinguishable out-of-circuit cases involving specific and verifiable (and thus vastly different) statements.[7]

### 2.    Azure's Risk Warnings Were Not Misleading.

Plaintiff argues that the legal compliance risk warnings in Azure's 2021 20-F (filed on July 28, 2021) were false and misleading when made because "Defendants had already violated numerous anti-corruption laws and regulations and committed fraudulent acts in obtaining and commissioning projects." (Opp'n 22.) Beyond noting Azure's receipt of the First Whistleblower Complaints (in June and July 2021), Plaintiff alleges no facts showing that Defendants were aware of any existing fraud or misconduct when the challenged statements were made.[8] Plaintiff also

---

[6] Plaintiff's other cases are similarly inapt. *See Meyer v. JinkoSolar Holdings Co.*, 761 F.3d 245, 251 (2d Cir. 2014) (allegations based on detailed report containing specific factual allegations showing that alleged problems were present and substantial at time of offering); *In re Goldman Sachs Grp.*, *Inc. Sec. Litig.*, 2014 WL 2815571, at *5 (S.D.N.Y. June 23, 2014) (representation about conflict avoidance controls was directly at odds with conduct).

[7] For example, in *Owl Creek I, L.P. v. Ocwen Financia. Corp.*, 2018 WL 4844019, at *8 (S.D. Fla. Oct. 4, 2018), the court found that the defendant's assurance that it complied with regulatory requirements in connection with a specific transfer of highly regulated loans was actionable where the statement was made to explain the increased cost of the transaction. *City of Sterling Heights Gen. Emps. Ret. Sys. v. Hospira, Inc.,* 2013 WL 566805, at *24 (N.D. Ill. Feb. 13, 2013), involved a statement touting the company's track record which the court determined was factual and verifiable. *Thorpe v. Walter Inv. Mgmt. Corp.,* 2014 WL 11961964, at *12 (S.D. Fla. Dec. 23, 2014), involved statements about specific steps the company allegedly took to ensure compliance that were factual and verifiable.

[8] For this reason, Plaintiff's cases are inapposite. In each of those cases, the plaintiffs—unlike here—sufficiently pled facts demonstrating that the risk warned of had already occurred. *See, e.g.*, *Stadium Capital, LLC v. Co-Diagnostic, Inc.*, 2024 WL 456745, at *2 (S.D.N.Y. Feb. 5, 2024) (company had specific data showing that sales had already cratered); *Wang v. Cloopen Grp. Holding Ltd.*, 661 F. Supp. 3d 208, 227 (S.D.N.Y. 2023) (risk disclosure regarding strength of customer retention strategy misleading where company was already experiencing "dramatic" decline); *In re Tenaris S.A. Sec. Litig.,* 493 F. Supp. 3d 143, 161 (E.D.N.Y. 2020) (detailed allegations of confession by employee charged with bribery violations for actions taken at the time representations were made); *Panther Partners Inc. v. Jianpu Tech, Inc.*, 2020 WL 5757628, at *16 (S.D.N.Y. Sept. 27, 2020) (warnings about possibility of hypothetical

- 3 -

ignores that Defendants disclosed in the 2021 20-F the allegations made in the First Whistleblower Complaints as well as the findings of its investigation of those allegations. (Ex. A at 34.) Plaintiff repeatedly claims that Defendants belatedly "admitted" that allegations in the First Whistleblower Complaints were true. (Opp'n 24.) Not so. Plaintiff attempts to muddy the record by selectively tying the findings related to the Second and Third Whistleblower Complaints (none of which were "admissions" either) to the First; but those later complaints were received over a year after the First, and Plaintiff alleges no facts showing that they relate to the same alleged misconduct. Even if Defendants did later substantiate the First Whistleblower Complaints (which they did not), Plaintiff is alleging impermissible fraud-by-hindsight. (Mem. 24.)

### B.      Statements About Internal Controls.

Plaintiff claims that risk factors in Azure's 2021 20-F about internal controls (SAC ¶¶ 108-110) were false and misleading as of July 2021 because Azure disclosed weaknesses in financial internal controls *over a year* later. (Opp'n 25). Plaintiff points to a January 2023 press release and an October 2023 audit opinion that identified financial internal control weaknesses as of March 31, 2022. (*Id.*; SAC ¶¶ 98, 202-203.) Plaintiff's argument fails. *First*, unlike the January and October 2023 Disclosures, the July 2021 risk warning in no way relates to *financial* internal controls. *Second*, the disclosures in 2023 of internal control weaknesses *as of March 2022* do not support an inference that Azure's internal controls were inadequate in July 2021. *See Arora v. HDFC Bank Ltd.*, 671 F. Supp. 3d 305, 314 (S.D.N.Y. 2023) ("Conclusory allegations that a company made false or misleading statements that its controls were effective because a later-revealed instance of impropriety indicates otherwise—absent specific allegations about how or

---

cap misleading where 36% cap was already in place); *In re Facebook, Inc IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487 (S.D.N.Y. 2013) (facts alleged showing defendants knew of material negative impact on revenues that was not disclosed in company's filings).

why those controls were ineffective—do not state a claim for securities fraud."); *see also* Mem. 22-23.

None of Plaintiff's other hindsight allegations show that Azure's July 2021 statements about internal controls were false or misleading.[9]  For example, Plaintiff claims that the challenged statements were false because Azure was unable to file its 2022 20-F due to "ongoing review of its internal control and compliance framework."  (Opp'n 25.)  But this argument is based on an August 16, 2022 filing (a year after the alleged misrepresentation) that cannot support Plaintiff's claim.    Plaintiff also points to "whistleblower complaints identifying corruption and data manipulation and improper payments by executives" (*id.*) but fails to allege facts linking the Company's January 2023 findings of data manipulation at a single plant and inconsistencies at three other plants ***commissioned in 2022 and 2023*** to Azure's July 2021 statements about its internal controls.  Plaintiff also claims that "Azure's internal controls were in such shambles that its auditor [SRB] resigned because it could not get information it had long requested from Azure for its audit" (*id.*) but does not explain how SRB's July 2023 resignation demonstrates that statements in July 2021 were false.  Plaintiff's cases are distinguishable because they relate to

---

[9] Plaintiff's random speculation confirms the SAC's kitchen sink approach.  For example, Plaintiff asserts that Azure entered into agreements with land aggregators which "may have" or "likely" involved improper payments as a "development fee" to obtain government orders for a wind project.  (Opp'n 27 (citing SAC ¶ 202).)  The SAC paragraph related to this allegation (SAC ¶ 85) references a Form 6-K filing stating that a project manager mismanaged funds for the project and had inaccurate record keeping, but makes no reference to multiple land aggregators, development fees or corrupt payments.  Plaintiff also asserts that Azure and its auditors "acknowledged" the "overpayment toward a development fee" (Opp'n 27), but the quoted language comes from a ***summary*** of the whistleblower complaint in the auditors' report, not a statement that it was correct.  (SAC ¶ 202).

misrepresentations that internal controls "were effective" at the time the statements were made.[10]

### C.    Statements About Megawatts Operating.

Plaintiff argues that Defendants' reported MWO data for Fiscal 2022 was overstated.[11]  But the allegedly "overstated" number is not actionable.  As Plaintiff concedes, the number at issue was merely **_guidance_**, not actual results.  (Opp'n 29.)  That guidance is protected by the bespeaks caution doctrine and the PSLRA safe harbor because it was accompanied by meaningful cautionary language making clear that it represents only Azure's "expectations," it is "forward-looking," and "actual results may differ materially."  (Mem. 30.)  Plaintiff attempts to get around this clear bar to liability by proffering a broad "exception" to these doctrines based on the timing of the guidance. (Opp'n 29.)  But Plaintiff fails to cite even a single case supporting this novel legal argument.[12] Plaintiff also repeats her rote list of other misconstrued disclosures.[13]

Plaintiff also claims Defendants "admitted" Azure's Fiscal 2022 guidance was false because it had to be "restated" in October 2023 when Azure reported its **_actual_** Fiscal 2022 MWO results of 2,666 MW.  (Opp'n 28-29.)  Plaintiff cites no support for the assertion that forward-

---

[10] *See*, *e.g.*, *In re Insys Therapeutics, Inc. Sec. Litig.*, 2018 WL 2943746, at *4 (S.D.N.Y. June 12, 2018) (company stated internal controls were effective at same time it was knowingly filing false statements); *Plumbers & Pipefitters Nat'l Pension Fund v. Davis*, 2020 WL 1877821, at *14 (S.D.N.Y. Apr. 14, 2020) (internal controls certified when company knew from its auditor that was not accurate); *In re Grupo Televisa Sec. Litig.*, 368 F. Supp. 3d 711, 720-21 (S.D.N.Y. 2019) (statement that internal controls were adequate made after auditor had communicated weaknesses).

[11] To the extent that Plaintiff argues that Azure's reported MWO data was false because it showed that MWO was growing and at an increased rate (Opp'n 28), Plaintiff fails to allege facts showing that MWO was not, in fact, growing. Nor could she—Azure's actual MWO for Fiscal 2022 represented an increase over the prior quarter (December 31, 2021) and the prior Fiscal Year.  (Ex. F at 1; Ex. A at 83.).  Plaintiff does not challenge these MWO numbers.

[12] Beyond having no legal support, Plaintiff's contention that guidance provided a month before the end of a fiscal year must be accurate is particularly problematic in the context of MWOs, which can be affected by myriad factors.

[13] Most of Plaintiff's claimed "support" is cherry-picked from different disclosures that on their face are unrelated to MWO (Opp'n 27-28) ("corrupt conduct in acquisition of land," "payment of kickbacks," "circumvented internal controls") and which Plaintiff does not even try to explain.  Plaintiff also distorts Company disclosures by asserting, for example, that "'former executives to the Board' admittedly ... made 'misrepresentations' to the Board regarding projects and project data."  (*Id.*)  The Company, however, never made any such statement.  Similarly, Plaintiff's arguments about "manipulation and misrepresentation of project data," "corrupt payments," and "failures to provide accurate information both internally and externally," which she contends occurred in "at least four large projects," resulting in "shortfalls in generation" (Opp'n 29) are not supported by the documents she cites.  (*See* Mem. 35-36.)

looking guidance can serve as the basis of a restatement claim.[14]  Recognizing this fundamental

flaw, Plaintiff also claims that the "restatement" applied to all prior quarterly reported MWO, not

just the Company's guidance.  But Plaintiff does not explain how the actual results for Fiscal Year

2022—even if different from guidance—could have "restated" the previously-reported quarterly

MWO figures.  Nor does Plaintiff cite to any supposedly "corrected" quarterly MWO figures.

Plaintiff's materiality argument also fails.  The Company's adjusted MWO for Fiscal 2022

(2,666 MW) differed from the number disclosed on March 14, 2022 (2,683 MW) by 17 MW or

0.63%, a presumptively immaterial difference.  (Mem. 30-31.)  Even as compared to Azure's

forward-looking guidance, the difference of 6-10% is not, as Plaintiff claims, presumptively

material to a "reasonable investor." (Opp'n 30-31.)  All of Plaintiff's authorities for that assertion

(*id.*) involve restatements of *financial* performance, not *operational* metrics like MWO.[15]  Plaintiff

also claims that percentage decline is material "because it was the result of admitted corruption

that occurred at the highest executive levels and spanned across multiple projects." (*Id.*)  As

demonstrated throughout this Reply, Azure made no such "admission" and Plaintiff's conclusion

is contradicted by the Company's disclosures about the whistleblower findings.[16]

## D.    Statements About kWh.

Plaintiff contends—for the first time—that Defendants misstated kWh numbers because

---

[14] Plaintiff's only case is inapposite.  *See Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 544-45, 549, 551 (S.D.N.Y. 2017) (restatement was related to actual reported financial results).

[15] Plaintiff's other cases are likewise distinguishable.  *Ind. Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 94-96 (2d Cir. 2016), involved a kickback scheme worth $635 million with allegations taken from government investigation and results of an internal investigation regarding fraud.  *In re Grab Holdings Ltd. Sec. Litig.*, 2024 WL 1076277, at *19 (S.D.N.Y. Mar. 12, 2024), involved hundreds of millions of dollars in profit that were alleged to have been misstated.  The remaining cases (Opp'n 31 n.27) are distinguishable because the plaintiffs' allegations of bribery (ranging from hundreds of millions to billions of dollars) were supported by documents and sources such as US and foreign government investigations and findings; statements, arrests, convictions, and pleas from defendants; deferred prosecution agreements; public admissions of inaccurate disclosures; independent investigations disclosing bribery schemes; and fines paid to the DOJ and SEC.

[16] Defendants incorporate herein Mr. Agrawal's Reply in Support of the Motion to Dismiss ("Agrawal Reply"), which further undermines Plaintiff's allegations related to MWO.  *See* Agrawal Reply Point II.

they "restated" MWO data, but failed to update the Plant Load Factor ("PLF").[17]  (Opp'n 32.)  This new argument fails for at least three reasons.  *First*, as discussed above, Plaintiff failed to show that Defendants "restated" any MWO number.  *Second*, Plaintiff's argument rests on a fundamental misunderstanding of the kWh metric, which is distinct from both MWO and PLF and is verified by customers and monitored by government regulators.  kWh reflects the actual amount of power generated by Azure's power plants.  (Ex. A at 4.)  Unlike MWO, kWh is backward looking— representing the amount of electricity that was ***actually*** invoiced to Azure's customers over the reporting period.  It therefore does not change just because a ***new*** plant's commissioning was delayed.[18]  (*See* Mem. 32-33.)  *Third*, Plaintiff does not point to a single factual allegation that any statement about the amount of energy provided to customers was false when made.

## E.    Statements About Wind Projects.

Plaintiff's allegations with respect to the wind projects rest on nothing more than Plaintiff's conclusory and uncorroborated allegations of misconduct.  Specifically, Plaintiff claims that Azure's statements in 2021 about winning auctions and being awarded two LOAs to supply wind and hybrid wind/solar power to SECI (*see* Ex. A at 9, 81; *see also* Exs. C, D, F, I, R, and X) were false and misleading when made because those LOAs were obtained through fraud.  (Opp'n 33.) Plaintiff identifies no well-pleaded allegations that support her assertion.[19]  Instead, Plaintiff relies exclusively on disclosures Azure made in October 2023 relating to "asset purchase" transactions for two wind project developments.  (*Id.*)  However, all Azure stated was that there "may have"

---

[17] The PLF is "the ratio of the actual output of all of [Azure's] power plants, including rooftop portfolio, over the reporting period to their potential output if it were possible for them to operate at full rated capacity." (Ex. W at 38.)
[18] Azure's estimation of a \$5.2 million contingent liability (based on commissioning delays) (Opp'n 32) is irrelevant because that contingent liability relates to contingencies caused by delays in commissioning, not kWh actually received by Azure customers.  (Ex. T at 14-15.)
[19] Unlike here, Plaintiff's cases (Opp'n 33) include specific and corroborated allegations of corruption based on arrests in connection with corruption allegations; deferred prosecution agreements and trial testimony; 6-K disclosures regarding corruption; criminal complaints; congressional investigations and subpoenas; reports to and from government agencies; internal communications; and corroboration from executives.

been misrepresentations and circumvention of internal policies, but no evidence was found of any improper payments, and no adjustments to the Company's books of account were necessary. (SAC ¶ 195.) Plaintiff critiques how Azure was managed, but fails to identify facts showing any misrepresentations or internal control violations amounting to securities fraud.[20]

Plaintiff attempts to bolster her argument that Azure's statements about its wind projects were false by mischaracterizing the Company's disclosures. Specifically, the Opposition strategically combines snippets of unrelated disclosures to allege misstatements not supported by the documents from which they are drawn. One egregious example is Plaintiff's assertion that Azure's auditors "corroborated that Azure secured the wind projects through illegal means." (Opp'n 34.) Nowhere in the auditor's report is that allegation "corroborated." Rather, in a section titled "[c]ritical audit matter description," Azure's auditor merely summarized the allegations from the whistleblower complaints regarding a wind project. (*See* SAC ¶ 202; *see also* Ex. W at F-3.) Moreover, as noted above, the auditor's report makes clear that Azure found no "evidence of improper payments related to either of these [wind] transactions" and no "adjustment that needed to be made to the books of account." (Ex. W at F-59; SAC ¶ 195.)

In addition to completely mischaracterizing the auditor's report, Plaintiff is wrong that Defendants "admitted" that the wind projects were procured through fraud. (Opp'n 35.) Defendants made no such "admission" and Plaintiff cites none. Instead, Plaintiff cites to the auditor's report and the Company's disclosure that there *may* have been a "potential misrepresentation" and circumvention of internal policies (*id.*)—neither of which constitutes an

---

[20] *Compare* Opp'n 33-34 *with In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 375 (S.D.N.Y. 2004), *aff'd sub nom. Albert Fadem Trust v. Citigroup, Inc.*, 165 F. App'x 928 (2d Cir. 2006) (that transactions inconsistent with defendant's stated risk management policies and historical business practices could be considered mismanagement is insufficient to support a Section 10(b) claim) *and In re Eastman Kodak Co. Sec. Litig.*, 632 F. Supp. 3d 169, 190 (W.D.N.Y. 2022) (granting motion to dismiss where plaintiffs failed to explain how alleged conduct violating internal policies constituted a scheme to manipulate the market).

admission.  Additionally, Plaintiff contorts Defendants' disclosures about the allegations in the First Whistleblower Complaints as "admissions" but that argument makes no logical sense, especially because the First Whistleblower Complaints did not allege improper conduct regarding any wind project acquisitions.  (*Id*.)  Plaintiff insists—without support—that the allegations within that whistleblower complaint are true.  But, the plain language of Azure's disclosures, against which the SAC must be evaluated, do not support Plaintiff's allegations.

Plaintiff also argues that because Azure made statements "touting the award of major business, including substantial revenues and benefits therefrom," it was required to disclose that the wind projects were obtained through fraud.  (Opp'n 34.)  But none of Plaintiff's cases support that assertion—those cases involved situations where a company specifically represented that it was awarded a contract or achieved a milestone because of its superior capabilities, pricing, or reputation when the facts alleged show it obtained ***that*** contract or award through fraud.[21]  For example, in *Grupo Televisa*, the court held that the defendant's statements that it held "the rights to the next three soccer World Cup's [sic] that are extremely relevant for Mexico" and that it "in no way knew of, or condoned, any bribe or other improper conduct" triggered a duty to disclose its role in bribing FIFA officials.  368 F. Supp 3d at 721.  Here, however, Plaintiff fails to allege similar statements or facts showing knowledge of any underlying fraud at the time of Azure's statements.

---

[21] In *Menkes v. Stolt-Nielsen S.A.*, 2005 WL 3050970, at *7-8 (D. Conn. Nov. 10, 2005), the issuer's statements that it "competed" with operators in conjunction with touting the award of a new multi-year contract were potentially actionable where plaintiff had pled no such competition actually existed.  In *In re Par Pharmaceutical, Inc. Securities Litigation,* 733 F. Supp. 668, 677-78 (S.D.N.Y. 1990), defendant's statements about its track record of FDA approval and comparison to rivals and projection that it would continue to obtain similar results suggested a particular skill and experience in that area as opposed to obtaining approval through bribery.  Finally, in *JinkoSolar,* the court found statements discussing defendant's pollution abatement equipment misleading because it omitted discussion that the equipment was failing to prevent substantial violations of regulations.  761 F.3d at 250-51.

#### F.      Statements About Commissioning Projects.

Based on Azure's January 2023 disclosure that one of its SECI projects had shortfalls in generation and that it had not been commissioned to its contractual capacity  (SAC ¶ 91), Plaintiff asserts that nearly every statement about the commissioning of projects during the proposed Class Period was false.  But Plaintiff fails to link her speculation to any statement by the Company; she simply identifies statements regarding commissioning and declares them false.   (Opp'n 36). Similarly, Plaintiff alleges, based on an anonymous source in an *Economic Times* article, that Azure obtained a "premature" plant commissioning certificate after submitting inaccurate data. (SAC ¶ 202; Opp'n 36-37.)[22]  Again, Plaintiff does not link this allegation to any public statement made by Azure or identify for which plant she contends the certificate was obtained. (Mem. 40.)

Merely alleging that Azure experienced delays in execution of projects "beyond the extended commission timelines" (SAC ¶ 97; Opp'n 37) is insufficient.  Unlike Plaintiff's cases where a statement that a project is meeting milestones was found to be false and misleading when the project was in fact delayed, Plaintiff does not identify any statement *by Azure* that it was meeting deadlines on any of the projects for which it was aware of delays.[23]  Thus, there is no factual allegation that Rajasthan 6 was not fully commissioned on February 28, 2022 (when Azure announced its completion on an Earnings call) or that Rajasthan 8 was not fully commissioned as

---

[22] The *Economic Times* article, citing an unknown "source in the know," is not a proper basis for pleading a securities fraud claim.  (Mem. 40-41.)  Plaintiff's cases involve much more detailed descriptions of the sources and the substance of their knowledge.  *See In re Quantumscape Sec. Class Action Litig.*, 580 F. Supp. 3d 714, 731, 738 (N.D. Cal. 2022) (plaintiffs provided two publications, one from an expert with a Ph.D. and one that interviewed defendant's former employees and several experts whose claims were also corroborated by nine former employees); *see also In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*, 2014 WL 285103, at *1 (S.D.N.Y. Jan. 27, 2014) (two publications used, one based on video surveillance, interviews with local residents, and photographs that contradicted defendants' statements and the other that used a governmental failed inspection report); *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 163-64 (2d Cir. 2021) (plaintiffs' allegations were corroborated through statements from former employees that also corroborated news articles and use of facts from a parallel suit).

[23] In *In re Chicago Bridge & Iron Co. N.V. Securities Litigation*, 2018 WL 2382600, at *8 (S.D.N.Y. May 24, 2018), the court found that a defendant's repeated statement to investors that it was it was meeting milestones without delay was actionable where, before the statement was made, the government had issued a stop work order.

of March 2022 (when Defendants announced its completion in a press release).  Finally, Plaintiff's reliance on the Company's disclosure that it took a $5.2 million estimated "contingent liability" for potential contractual penalties (none of which Azure is alleged to have actually paid) provides no well-pled factual support that those plants were not properly commissioned.  Contractual delays on generation levels do not equate to fraudulent statements about commissioning deadlines, and Plaintiff has cited nothing to suggest otherwise.

### G.      Statements About Safety.

Plaintiff argues that Defendants' statements in 2021 and early 2022 about Azure's efforts to ensure worker safety were false and misleading because the Company *later* discovered and remediated safety issues at a *single* plant and strengthened its safety protocols across all of its operations.  (Opp'n 38-39.)  But the Opposition cites no facts showing that the Defendants were aware of the safety issues at that single plant when the challenged statements were made.  Nor could they—that safety issue was only discovered *after* an investigation of the Second Whistleblower Complaint, which was not received until May 2022.  (SAC ¶ 78.)  Plaintiff thus cannot allege any known safety issues that needed to be disclosed to render Defendants' statements made prior to receipt of the Second Whistleblower Complaint not misleading.  (Opp'n 41.)

In response to Defendants' argument that the safety issues at just one plant out of 45 cannot reasonably support a claim for falsity (Mem. 27), Plaintiff claims that Defendants "acknowledged" that there were safety issues "across Azure's entire operations."  (Opp'n 41.)  Defendants made no such "acknowledgement" and Plaintiff points to no facts showing that safety issues existed at any other plant.  Instead, Plaintiff solely relies on the fact that Azure strengthened its safety and quality protocols "across [its] other operations."  (*Id.*)  That the Company strengthened its safety and quality protocols across its other operations following an investigation is not an admission of anything.  *Compare* SAC ¶¶ 154, 162, 170, 175 *with* Fed. R. Evid. 407.  Moreover, Plaintiff's

- 12 -

suggestion that Azure's voluntary enhancement of its safety protocols is somehow indicative of liability has been rejected by courts as counter to public policy.[24]

Plaintiff also argues that Azure's safety statements are not inactionable puffery because the statements "did not invoke mere future aspirations." (Opp'n 39.)  But Plaintiff's argument is belied by the statements themselves, which clearly emphasized Azure's "efforts" and "commitments" to safety and a safety culture.  Such vague, broad and non-specific statements are the very definition of puffery.  (*See* Mem. 26-28.)[25]  Plaintiff's assertion that safety is of "critical importance" to Azure does not change the result.  (Opp'n 40.)  Indeed, Plaintiff's own authority makes clear that safety statements can still be puffery even where "it is to be expected that investors will be greatly concerned about [a company's] safety."  *Kusnier v. Virgin Galactic Holdings, Inc.,* 639 F. Supp. 3d 350, 374-75 (E.D.N.Y. 2022) (alteration in original) (citation and internal quotation marks omitted).[26]

## II.     The Opposition Confirms That The SAC Does Not Plead Scienter.

### A.     Azure Did Not "Admit" Its Executives Engaged in Fraudulent Scheme.

Lacking particularized factual allegations, Plaintiff seeks to establish scienter by repeatedly claiming that Azure's public filings "admitted" rampant fraud and corruption was occurring across the Company.  (Opp'n 43-45.)  But Plaintiff's scienter theory is based on cherry-picking and

---

[24] *See, e.g.*,  *Higginbotham v. Baxter Int'l Inc.*, 495 F.3d 753, 760 (7th Cir. 2007) (declining to draw inference from defendant's retention of consultant to improve financial controls because it "would be incompatible with Fed. R. Evid. 407"); *SEC v. Geon Indus., Inc.*, 531 F.2d 39, 52 (2d Cir. 1976) (denying to use a subsequent remedial measure as evidence that prior action was negligent); *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 939 F. Supp. 2d 360, 388 n.213 (S.D.N.Y. 2013); *Krouner v. Am. Heritage Fund., Inc.*, 899 F. Supp. 142, 147 n.2 (S.D.N.Y. 1995).

[25] In contrast, the challenged statements in *In re BHP Billiton Ltd. Securities Litigation,* 276 F. Supp. 3d 65, 79 (S.D.N.Y. 2017) contained "not mere generalities but contain quite specific representations or guarantees of some concrete fact or outcome."

[26] In *Bricklayers & Masons Local Union No. 5 Ohio Pension Fund v. Transocean Ltd.,* 866 F. Supp. 2d 223, 244 (S.D.N.Y. 2012), statements about extensive training and safety programs were contradicted by detailed allegations of employee testimony that training was inadequate or non-existent.  In *In re Vale S.A. Securities Litigation*, 2020 WL 2610979, at \*15 (E.D.N.Y. May 20, 2020), statements that the company had conducted audits on "***the stability conditions of our upstream dams and no anomalies were identified***" were misleading where one of the dams had been ordered shut down due to stability concerns. (emphasis in original).

mischaracterizing the Company's disclosures regarding the investigatory findings. The Memorandum dealt with each of these mischaracterizations—none of which is an admission. (*See* Mem. 11-15, 33-34.)  Plaintiff simply repeats these constructs in the Opposition.

Construction of hypothetical schemes through kitchen-sink pleading is not a substitute for well-pled factual allegations giving rise to a strong inference of scienter.  The Opposition implicitly concedes this by relying on cases where ***specific facts*** were alleged to show scienter.  *See, e.g.*, *Akerman v. Arotech Corp.*, 608 F. Supp. 2d 372, 386-87 (E.D.N.Y. 2009) ("deliberate illegal behavior," which included insider trading and the "knowing sale of a company's stock at an unwarranted discount" was alleged through former employee statements and evidence of meetings held between executives) (citations omitted); *Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304, 315-17, 321 (S.D.N.Y. 2011) (plaintiffs alleged scienter by alleging facts showing violations of federal regulations, not internal policies).

The SAC contains no comparable factual allegations regarding admissions of knowledge. Instead, Plaintiff posits that Defendants have "admitted" fraud because the 2022 20-F shows: Azure's auditor's "corroboration" of unspecified findings; evidence of employee data manipulation at one project site; potential improper payments by land aggregators to acquire land and land use rights, and departures of executives.  But there was no such "corroboration" by Azure's auditors – the cited excerpt from the auditor's opinion merely notes that Azure "received whistle-blower complaints" and paraphrases their contents.  (SAC ¶ 202; *see also* Mem. 45-49.) The auditor's opinion also noted that "no improper transfer of money by the Group was identified." (Ex. W at F-59.)[27]  And Plaintiff assumes the former executives are Gupta and Subramanian while

---

[27] Plaintiff conspicuously fails to rebut Defendants' argument that the $3.4m balance sheet adjustment taken by Azure "as a prudent measure" (SAC ¶ 194) (and not "require[d]" as she suggests, Opp'n 18 n.14) is 1.6% of Azure's 2021 revenues and, thus, immaterial.  (Mem. 42.)

acknowledging that is pure conjecture.[28]  But even if the executives referred to were Gupta and Subramanian, the Company's statements do not demonstrate any specific actions or knowledge tied to any alleged misstatement.  Plaintiff's threadbare and speculative allegations, whether viewed individually or collectively, simply do not support an inference of scienter under the PSLRA's heightened standard.[29]

**B.**      **The Whistleblower Complaints Do Not Support a Finding of Scienter.**

The Memorandum (45-46, collecting cases) explained that the mere existence of whistleblower complaints is insufficient to support scienter and that simply because a company learns about issues that may render prior statements inaccurate does not establish that statements were knowingly false ***when made***. (*See* Mem. 46-48.)  Plaintiff largely ignores these arguments (thus conceding them)[30] and instead proffers a counterargument based on the unsupported assumption that every allegation in every whistleblower complaint was (1) true and (2) known to Defendants at time of the alleged misstatements.  (Opp'n 46-47.)  But the Opposition simply repeats the SAC's conclusory allegations and fails to reference any facts showing that any Defendant knew of specific information concerning the misconduct alleged in any of the whistleblower complaints.  To the extent Plaintiff contends that Mr. Gupta and Mr. Subramanian knew about the misconduct because they were the alleged perpetrators (*id.* 46 n.46), that assertion

---

[28] Plaintiff's conjecture comes from a Master Share Purchase Agreement attached to the 2021 20-F (Ex. A), meaning it is not from an internal Azure definition and is thus irrelevant.  In any event, that document defines "Key Personnel" at a "Group SPV" (***not*** Azure) as "including any of the key managerial personnel of the Group SPVs, i.e., the Managing Director/Chief Executive Officer, the Chief Financial Officer, Chief Operating Officer, Head of Legal and Compliance/Company Secretary, all the direct reportees to the Managing Director/Chief Executive Officer and such other senior level management personnel of the Group SPV," which disproves Plaintiff's conjecture based on that irrelevant defined term.  (Ex. A, Dkt. No. 104-1, at 218, 220 of 436.)

[29] *Cf. comScore, Inc.*, 268 F. Supp. 3d at 537-44 (audit committee conclusions and other publicly reported documents proved executives knew they were making false statements in relation to revenue earnings at the time they were made in an effort to inflate reported revenues and related metrics).  Plaintiff's reliance on *Valentini*, 837 F. Supp. 2d at 316, is misplaced because that case did not involve any allegations of bribery.

[30] *BYD Co. v. VICE Media LLC*, 531 F. Supp. 3d 810, 819 (S.D.N.Y. 2021) ("[F]ailure to oppose Defendants' specific argument in a motion to dismiss is deemed waiver of that issue."), *aff'd*, 2022 WL 598973 (2d Cir. 2022)..

is based on conjecture and conclusions, not facts, as demonstrated in the preceding paragraph.

Likewise, Plaintiff repeatedly claims that Azure "admitted" and "substantiated" the whistleblowers' allegations of "improper payments" (*id*. 46-47), even though the SEC filings she cites make clear that the Company's investigations found *no evidence* of any such payments. (*See* Mem. 14, 16, 26, 33-34, 37-38.) At bottom, the SAC's allegations and the documents on which it relies show that after receiving the unrelated 2021 and 2022 whistleblower complaints, Azure's Ethics Committee investigated the allegations with the assistance of independent outside counsel and forensic professionals. The Company's prompt investigations weigh *against* an inference of recklessness (*id*. 48-49), as highlighted by Plaintiff's own cases.[31]

### C.     Azure's Monitoring Capability Does Not Support Scienter.

Plaintiff's allegations of "real-time" monitoring do not establish scienter. With respect to the monitoring of plant operation metrics, Plaintiff ignores Defendants' demonstration that (1) the theoretical availability of data that might be inconsistent with any statements is not sufficient to infer scienter as to such statements and (2) there are no facts pled that the "centralized monitoring" capabilities identified by Plaintiff were used to actively monitor MWO metrics. (Mem. 55-56.) Indeed, as the Opposition acknowledges (Opp'n 49) the system was intended to provide information for responding to generation anomalies and potential equipment failures.

The Opposition's repeated references to unspecified "data from Azure's centralized monitoring system" (*id*. 49) proves that Plaintiff has failed to "provide specific instances in which Defendants received information that was contrary to their public declarations." *Chen v. X Fin.*,

---

[31] *Compare In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 407 (S.D.N.Y.) (commencing an internal investigation tends to undermine any inference of scienter) *with Skiadas v. Acer Therapeutics Inc.*, 2020 WL 3268495, at *11 (S.D.N.Y. June 16, 2020) (scienter pled because no internal investigation was conducted and the executive defendant had motive to "bet the farm in a reckless gamble"); *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000) (no internal investigation conducted); *In re Van der Moolen Holding N.V. Sec. Litig.*, 405 F. Supp. 2d 388, 406 (S.D.N.Y. 2005) ("red flags" identified were NYSE examination reports suggesting possibility revenue was derived from trades that violated NYSE rules and defendants had access to these reports at the time alleged false statements were made).

2021 WL 7449851, at \*11 (E.D.N.Y. Dec. 9, 2021) (citation and internal quotation omitted); *Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce,* 694 F. Supp. 2d 287, 299-300 (S.D.N.Y. 2010) (rejecting similar monitoring claims because broad reference to "raw data" is not sufficient and plaintiffs did not allege any reports, statements, dates, or time frames in which defendants were put on notice of contradictory information).[32]

Nor does Plaintiff's blanket pronouncement that Defendants' implementation of safety monitoring policies suffice to plead scienter with respect to alleged misstatements about safety. (Opp'n 63-64.)  The Opposition quotes a number of vague and generalized statements from Azure personnel reflecting the importance Azure placed on safety, and then asserts that Azure later "acknowledged" that there had been safety lapses that "existed Company wide, across all of its operations." (*Id*. 64.)  But Azure's disclosures said no such thing.  Azure disclosed that it found safety lapses at *one* plant and addressed them.  (SAC ¶¶ 170, 175.)  The SAC does not identify any specific contrary information that Defendants knew at the time of the alleged misstatements.

Not surprisingly, Plaintiff's cases are distinguishable.  *See In re BP p.l.c. Sec. Litig.*, 843 Supp. 2d 712, 782–88 (S.D. Tex. 2012) (plaintiffs alleged scienter through admissions by defendants, testimony in front of Congress, interviews, and annual reviews);[33] *Vale*, 2020 WL 2610979, at \*16 (scienter properly alleged where defendants touted safety despite having warnings from auditors, low factor of safety assessments, problematic dam behavior, risk curves showing

---

[32] Indeed, Plaintiff's own cases demonstrate why the SAC fails to plead scienter.  *See Wang*, 661 F. Supp. 3d at 236 (defendants were on notice of a 59.2% increase in administrative and general expenses between quarters before making alleged misrepresentation.); *Yannes v. SCWorx Corp.*, 2021 WL 2555437, at \*14 (S.D.N.Y. June 21, 2021) (defendant represented that he spent weeks researching over 30 possible distributers and ultimately chose one distributer incapable of providing adequate distribution services); *Citiline Holdings, Inc. v. iStar Fin. Inc.*, 701 F. Supp. 2d 506, 516 (S.D.N.Y. 2010) (defendants stated monitoring of portfolio in real time while not disclosing hundreds of millions in losses); *Steamship. Trade Ass'n of Baltimore-Int'l Longshoreman's Ass'n Pension Fund v. Olo Inc.*, 2023 WL 4744197 (S.D.N.Y. July 25, 2023) (defendants' real time monitoring of location openings provided evidence that finances were overstated by tens of millions of dollars).  The SAC contains no similar allegations.

[33] Plaintiff's citation (Opp'n 64) to *In re Salix Pharms., Ltd.*, 2016 WL 1629341, at \*14 (S.D.N.Y. Apr. 22, 2016), is actually a quote from *In re BP*, 843 F. Supp. 2d at 782-83.  In any event, *Salix* did not involve safety misstatements.

multiple dams with unacceptable failure probability, and alarming findings as to dam's stability).

The SAC fails to allege that Defendants acted with scienter in connection with any statement made regarding implementation and monitoring of safety policies.

### D.    Senior Management and Auditor Resignations Were Not "Unusual or Suspicious."

Plaintiff's characterization of the resignations of Azure's executives and auditors as unusual and suspicious is based on conjecture.  (Opp'n 51-59.)  The Memorandum explained in detail (*id*. 50-52) why these allegations are not sufficient to establish scienter, and the Opposition does not demonstrate otherwise.  For example, Plaintiff points to the resignation of Arno Harris in June 2022 as "suspicious" given the Company's receipt of the Second Whistleblower Complaint in May 2022 (*id*. 52) but ignores that Mr. Harris's resignation was announced on February 28, 2022, months ***before*** the Second Whistleblower Complaint was received.  (Mem. 52 n.18; Ex. K at 1).

Likewise, Plaintiff ignores the fact that Defendants Gupta and Subramanian resigned ten months after Azure's receipt of the First Whistleblower Complaints (that were found to be unsubstantiated), and that Azure's Chairman thanked them both for their service and wished them well.  (Mem. 50-51.)[34]  There is thus nothing "highly unusual" or "suspicious" about the circumstances surrounding their resignations, especially absent a single well-pled fact showing that they (or any other executive) knew about the substance of the Second Whistleblower Complaint prior to May 2022.[35]  Nor do Plaintiff's allegations regarding departures of other

---

[34] Plaintiff attempts to create the impression of impropriety by suggesting that Defendants Gupta and Subramanian "'relinquished' their positions (as opposed to resigned)" (Opp'n 55) but that wordplay is flatly contradicted by the very press release she cites, which is titled "Azure Power Announces ***Resignation*** of Ranjit Gupta as Chief Executive Officer and Murali Subramanian as Chief Operating Officer"  (SAC ¶ 252; Ex. N (emphasis added).)

[35] Plaintiff's cases highlight the SAC's flaws.  *See Yannes*, 2021 WL 2555437, at *6 (resignations occurred within two weeks of expose report, board member resignation, and COO termination.); *see also Salix*, 2016 WL 1629341, at *15 (resignations were suspicious because the board exercised clawback provisions in the defendant's resignation agreements); *In re OSG Sec. Litig.*, 12 F. Supp. 3d 622, 627-28, 632-33 (S.D.N.Y. 2014) (defendant resigned after

officers and directors in 2022 and 2023 (Opp'n 51-56), including some that occurred ***months after*** the proposed Class Period, support her scienter claims because the SAC does not allege any facts linking those individuals or their resignations to any alleged fraud.[36]

With respect to auditor resignations, Plaintiff simply disagrees with the explanations Azure provided for each change. (Opp'n 57-59.) As demonstrated in the Memorandum, the record shows that the auditor departures were not a result of any disagreements with Azure about accounting matters. (Mem. 53-54.) To counter the undisputed facts supporting the explanations, Plaintiff cites "confidential local sources" without any factual support as who these sources may be or how they allegedly learned what Plaintiff claims they know. (Opp'n 57 n.59.) That is not enough. *Novak*, 216 F.3d at 314 (confidential sources must be "described in the complaint with sufficient particularity to support that probability that a person in the position occupied by the source would possess the information alleged"). After E&Y resigned, SRB (an E&Y Indian affiliate) took over and shortly thereafter, Ernst & Young Mauritius (another E&Y affiliate) was engaged to serve as statutory auditor in Mauritius. (Ex. E at 4.) Plaintiff asserts that this is "suspicious," but pleads no ***factual*** basis for her suspicion or anything to give her suspicions primacy over the contemporaneous statements provided by Azure and the auditors themselves.

---

audit committee findings disclosed 12 years of misrepresented financial data); *Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 575 (S.D.N.Y. 2012) (resignations occurred at the same time accounting difficulties surfaced); *Varghese v. China Shenguo Pharm. Holdings, Inc.*, 672 F. Supp. 2d 596, 608 (S.D.N.Y. 2009) (audit committee member's resignation email showed that defendants were aware of ongoing internal control deficiencies).

[36] Plaintiff asserts that the resignation of Azure's former CEO Harsh Shah, on August 29, 2022, evidences scienter because it was the "same day" Azure announced the Second Whistleblower Complaint. (Opp'n 53.) But that assertion is undermined by Plaintiff's decision to voluntarily dismiss Mr. Shah as a defendant from this action when she filed the Amended Complaint. So too with Azure's former Chairman, Alan Rosling, who Plaintiff alleges suspiciously resigned "without explanation" the "day before Azure published the long overdue 2022 Form 20-F," but whom she voluntarily dismissed from this action in November 2023. (Dkt. No. 79.) Plaintiff's allegations related to Mr. Agrawal's alleged demotion, auditor resignations, whistleblower allegations, and unrelated Indian charges fail to demonstrate any scienter with respect to him. *See* Agrawal Reply Point I. A.

Here again, Plaintiff's own citations highlight the SAC's deficiencies. *See In re Top Tankers, Inc. Sec. Litig.*, 528 F. Supp. 2d 408, 416 (S.D.N.Y. 2007) (auditors provided no reason for resignation and the court stated "there is no reason why it should have done so, because defendants are not in violation of SEC regulations relating to change-of-auditor letters"); *see also Hall v. The Children's Place Retail Stores, Inc.*, 580 F. Supp. 2d 212, 233 (S.D.N.Y. 2008) (misconduct was corroborated by former witnesses at defendant's company); *Vale*, 2020 WL 2610979, at *16 (plaintiffs alleged sufficient warning given by auditors in addition to other "red flags" provided to defendants); *In re Akorn, Inc. Sec. Litig.*, 240 F. Supp. 3d 802, 819 (N.D. Ill. 2017) (three sets of auditors concluded that defendant's internal controls were ineffective and issues were well-known amongst employees). The SAC contains no similar allegations.

### E.    Plaintiff's Allegations that Azure Knew of Weak Internal Controls and Violations of Internal Ethics and Control Policies Are Insufficient.

#### 1.   Knowledge of Weak Internal Controls

The Opposition relies on conflating various disclosures and the 2021 and 2022 investigative findings to argue that, because an investigation occurred in 2022 and Azure "later admitted" material weaknesses in internal controls, Defendants must have had knowledge of weak internal controls in 2021.[37] (Opp'n 59-60.) But, as explained in the Memorandum (at 45-49, 56-57), the SAC fails to plead facts to support this assertion—Plaintiff simply insists that it is "illogical" that Defendants would not have known of internal control issues. Plaintiff's conjecture fails.[38] Further, there are no pleaded facts that the statements in the 2021 20-F related to the "financial" internal controls discussed in the Company's subsequent disclosures. (Ex. A.) Without

---

[37] To the extent Mr. Gupta and Mr. Subramanian's alleged knowledge is based on their alleged "roles in the misconduct" (Opp'n 61), that argument fails for the reasons stated above. *See supra* Points II. A & B.

[38] *See Dobina v. Weatherford Int'l Ltd.*, 909 F. Supp. 2d 228, 249-50 (S.D.N.Y. 2012) ("weak internal controls provide little if any circumstantial support that the statements ... were made with scienter").

any actual factual allegations, Plaintiff parrots her mischaracterizations of what the Company's disclosures say or do not say about any Defendant's knowledge and repeats vague assertions based on information purportedly received from unknown and undescribed "confidential sources." (Opp'n 6, 21, 38, 57.)  That is not enough.

Examining the allegations in Plaintiff's cases show how far off the mark the Opposition is; unlike the SAC, those cases involved extensive evidence from multiple sources to allege actual knowledge of weak internal controls.  *See, e.g., In re Electrobras Sec. Litig.*, 245 F. Supp. 3d 450, 458-59, 468 (S.D.N.Y. 2017) (scienter alleged where published audit report stated "corporate management is a black hole and that the company lacks controls to approve their accounts," media reported that there was a Brazilian criminal money laundering investigation and that documents were found at a money-launderer's house; former officers were sentenced to prison, independent investigation disclosed bribery scheme); *Insys*, 2018 WL 2943746, at \*17-18 (scienter alleged where indicted defendant executives tried to conceal a significant decline in revenue); *In re Veeco Instruments, Inc., Sec. Litig.*, 235 F.R.D. 220, 229 (S.D.N.Y. 2006) (scienter alleged through three former employees who linked defendant's knowledge to alleged misrepresentations regarding financials); *Vale*, 2020 WL 2610979, at \*16 (scienter alleged through auditor warnings, risk curves showing multiple dams with acceptable failure probability, and alarming findings as to dam's stability).

### 2.    Violations of Ethics Policy and Internal Controls

Contrary to Plaintiff's characterization (Opp'n 64-65), Defendants never stated that executives of the Company engaged in a scheme to make improper payments to secure land, mismanaged funds which resulted in the blacklisting of a vendor, and/or admitted that their conduct violated internal policies.  Plaintiff's allegations all proceed from her *ipse dixit* that Gupta and Subramanian engaged in a fraud.  Defendants addressed these allegations in detail in the

- 21 -

Memorandum (at 26) and Plaintiff's Opposition provides nothing to counter those arguments.[39]

### F.    Plaintiff's Allegations Do Not Show "Widespread" Data Manipulation.

Plaintiff's arguments concerning supposed "widespread" data manipulation are not supported by the disclosures she cites, nor has she addressed Defendants' arguments. (Mem. 31, 33-34, 46-47).  Data manipulation and misrepresentations were found to have occurred at *one* project by employees of *that project*, not any Defendants.  (*Id*. 33-34.)[40]  And although there were data inconsistencies found at other projects, no manipulation at these projects was found and Plaintiff does not allege that any Defendant was aware of the inconsistencies.  (Mem. 33-34.)  Plaintiff nonetheless points to a 17 MW, or 0.63%. discrepancy, in one MWO report.  This cannot be considered "widespread."  (*Id*. 47.)  Nor does Plaintiff plead facts showing that the misconduct occurred "over a three year period," only speculation that it must have occurred because the Special Committee undertook a review of all projects over a three year period.  (Opp'n 61-62.)

### G.    The Court Should Reject Plaintiff's Allegations Regarding Motive.

Plaintiff concedes that no Defendant sold stock during the class period.  Rather, she argues motive, for the first time, based on Azure's purported "need to generate cash" to survive.  (*Id*. 67.)  But that allegation appears nowhere in the SAC and should be disregarded.[41]  Nor, in any event, is this new allegation supported by any facts—Plaintiff merely points to the unremarkable fact that the Company took on more debt as it expanded its operations.  (*Id*.)  A company's funding needs are insufficient to show motive where, as here, the complaint does not allege that it was about to

---

[39] Plaintiff's citations are inapposite.  *See SEC v. Dunn*, 587 F. Supp. 2d 486, 506 (S.D.N.Y. 2008) (PSLRA does not apply to SEC enforcement actions.); *Veeco*, 235 F.R.D. 220 at 231-32 (plaintiff alleged violations of specific internal policies which involved accounting manipulations regarding premature revenue recognition in violation of GAAP policies); *Vale*, 2020 WL 2610979, at *16 (plaintiffs alleged defendant's specific disregard of auditor's warnings in addition to disregard of other documented warnings).

[40] Nor does Plaintiff dispute that the manipulation did not cause "any overstating of past income."  (SAC ¶ 172.)

[41] *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) ("[I]t is axiomatic that the complaint cannot be amended by the briefs in opposition to a motion to dismiss.").

"go belly up." *Skiadas*, 2020 WL 3268495, at *11. Stated differently, a desire to raise funds and appear attractive to lenders is too generic to show motive. (Mem. 44.)

Finally, the assertion that Defendants' alleged involvement in "data manipulation" or "improper payments" supplies the requisite motive to conceal the misconduct (Opp'n 65-66) is also without merit because it simply recycles accusations against Defendants that, as shown above, are baseless. And again, it highlights the stark differences between Plaintiff's cases and the SAC.[42]

### H.    The Court Should Reject Plaintiff's Allegation of Corporate Scienter.

Allegations of corporate scienter should be rejected when plaintiffs fail to plead a strong inference of scienter on the part of the individual Defendants. *In re Sketchers USA, Inc. Sec. Litig.*, 444 F. Supp. 3d 498, 529 (S.D.N.Y. 2020). For the reasons stated above, stripped of Plaintiff's distortions of what Azure's filings actually said (and when), the SAC fails to plead a strong inference of scienter as to any Individual Defendant. (*See supra* Points II. F, II. B; Mem. 42-58.)

### III.    The Court Should End the Class Period in August 2022.

Plaintiff alleges that the market learned of the auditor's resignation and NYSE trading suspension through a "corrective disclosure" on July 13, 2023 (Opp'n 71-72). And in arguing scienter based on executive resignations, the Opposition describes Azure's August 29, 2022 press release as containing "disclosures of [its] true operating conditions." (Opp'n 53 (citing *Salix*, 2016 WL 1629341).) Because Plaintiff affirmatively alleges that everything the Defendants supposedly failed to disclose was disclosed by August 29, 2022, that is when the proposed Class Period should thus end. Nor has Plaintiff established loss causation based on a "materialization of risk" theory.

---

[42] *See In re N. Dynasty Minerals Ltd. Sec. Litig.*, 2023 WL 9509337, at *5 (E.D.N.Y. Jan. 25, 2023) (motive proved by using congressional testimony by former executive regarding improper scheme coupled with secretly recorded tapes in which another former executive discussed the scheme); *see also comScore, Inc.*, 268 F. Supp. 3d at 537-44 (audit committee conclusions and other public documents showed executives knew they were making false statements); *In re Didi Glob. Inc. Sec. Litig.*, 2024 WL 1119483, at *16-17 (S.D.N.Y. Mar. 14, 2024) (executives' motive to commit fraud alleged because they would have individually profited by billions of dollars).

(*Id*. 72.)  Nothing in the July 2023 press release (announcing the auditor's resignation, possible de-listing and 20-F delay) is a "materialization" of the allegedly concealed "risk" that corruption and other misconduct could subject the Company to regulatory action and penalties.[43]  Plaintiff claims those "risks had already materialized" in July 2021.  (*See id*. 21-22.)

## IV.    The Court Should Dismiss the Section 20(a) Claims.

Because Plaintiff has failed to allege a primary violation under Section 10(b), her Section 20(a) claim necessarily fails.  (Mem. 58.)

## V.    Conclusion

For all the foregoing reasons, and those set forth in the Memorandum, the SAC should be dismissed in its entirety with prejudice.  Plaintiff's throwaway request for leave to amend for a *third* time (Opp'n 73) should be denied.  *See In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 391-92 (S.D.N.Y. 2003) (denying similar request).

---

[43]*See DoubleLine Capital LP v. Construtora Norberto Odebrecht, S.A.*, 413 F. Supp. 3d 187, 212 (S.D.N.Y. 2019) ("Pleading a materialization of the risk requires identifying a particular risk that was allegedly concealed by the defendant's actions and which then materialized to cause a market loss.").

Dated: May 28, 2024                    Respectfully submitted,

                                       DENTONS US LLP


                                       By: */s/ Douglas W. Henkin*
                                       Douglas W. Henkin
                                       Brian E. Cohen
                                       1221 Avenue of the Americas
                                       New York, NY 10020
                                       Tel:  212-768-6700
                                       douglas.henkin@dentons.com
                                       brian.cohen@dentons.com

                                       *Attorneys for Defendant Azure Power Global Ltd*


                                       WILLKIE FARR & GALLAGHER LLP

                                       By: */s/* Sameer Advani
                                       Sameer Advani
                                       Amanda M. Payne
                                       787 Seventh Avenue
                                       New York, NY 10019
                                       Tel: (212) 728-8000
                                       sadvani@willkie.com
                                       apayne@willkie.com

                                       *Attorneys for Defendants*
                                       *Ranjit Gupta and Murali Subramanian*

- 25 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 28, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

DENTONS US LLP

By: */s/ Douglas W. Henkin*
Douglas W. Henkin
Brian E. Cohen
1221 Avenue of the Americas
New York, NY 10020
Tel:  212-768-6700
douglas.henkin@dentons.com
brian.cohen@dentons.com

*Attorneys for Defendant Azure Power Global Ltd*

WILLKIE FARR & GALLAGHER LLP

By: /s/ Sameer Advani
Sameer Advani
Amanda M. Payne
787 Seventh Avenue
New York, NY 10019
Tel: (212) 728-8000
sadvani@willkie.com
apayne@willkie.com

*Attorneys for Defendants*
*Ranjit Gupta and Murali Subramanian*