

1111 Summer St., Suite 403
Stamford, CT 06905
T: 203-992-4523
F: 212-363-7171
www.zlk.com

Shannon L. Hopkins
shopkins@zlk.com

August 12, 2024

**VIA ECF**

The Honorable Gregory H. Woods
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St., Room 2260
New York, NY 10007

        Re:    *Lokman v. Azure Power Global Limited et al.*, Case No. 1:22-cv-07432-GHW (the "Action")

Dear Judge Woods:

We write on behalf of lead plaintiff Serap Lokman ("Plaintiff") to submit the United States District Court for the Central District of California's decision in *Butala v. Owlet, Inc.*, 2024 WL 3648141 (C.D. Cal. Aug. 5, 2024) ("*Owlet*") as supplemental authority in further opposition to Defendants' pending motions to dismiss. *See* ECF Nos. 102, 105. *Owlet* decided a Rule 12(b)(6) motion in a securities class action and contains holdings relevant to Plaintiff's scienter arguments in this Action. [1]

In *Owlet*, plaintiff alleged that the defendants made false and misleading statements misrepresenting that, *inter alia*, "all products marketed and sold by Owlet have been, and are being ... marketed ... and sold in compliance ... with applicable FDA Laws[,]" and that Owlet held "all material ... clearances ... required by applicable FDA Laws[,]" and "had not 'received any written or notice or communication from any [g]overnmental [e]ntity,' regarding 'material noncompliance with any applicable FDA law[.]'" *Id*. at *3. Plaintiff also alleged, in support of scienter, that defendants marketed its Smart Sock product as a wellness device, despite having received a warning letter from the FDA in 2016 indicating that the product was a medical device requiring FDA approval and not a wellness device, because the company needed "'to secure tens of millions of dollars in new funding from interested investors' to obtain FDA clearance[]" and had only then raised $1.85 million. *Id*. at *3, *6. Plaintiff further alleged that Owlet "could not secure the level of funding necessary to obtain FDA clearance without launching its flagship product to the public at large." *Id*. at *6.

---

[1] The Owlet decision is attached hereto as Exhibit A.



The *Owlet* court found that plaintiff's allegations gave "rise to a strong inference that the Owlet Defendants knew the Smart Sock with the alarm feature would likely qualify as a medical device, but attempted improperly to market the Smart Sock as a wellness device to avoid incurring costs associated with obtaining FDA clearance and maintain profitability." *Id*. at *6. In reaching this decision, the *Owlet* court rejected, as Plaintiff suggests the Court should do here, the Owlet defendants' argument that "the need to raise capital is 'common ... for any for-profit business,' and 'does not establish scienter.'" *Id*. Instead, contrary to defendants' argument, the *Owlet* court found, "a 'desire to raise company financing, combined with the 'red flags' of a company's financial condition, is sufficient to plead scienter.'" *Id*. The *Owlet* court also rejected defendants' argument that scienter allegations must be supported by confidential witnesses or internal documents. *See id*. at *7 ("it is irrelevant that the 10(b) Complaint 'does not point to any internal company communications showing that Owlet intended to mislead the public' or 'identify any whistleblowers ... who speak to the company's understanding about the Smart Sock's regulatory status,' as such allegations are not required to establish scienter.").

This decision supports Plaintiff's argument that courts routinely find a company's need to generate cash to survive supports scienter. *See* ECF 108 at 67. Here, as in *Owlet*, Plaintiff alleges that as a result of declining cash flows, increasing project costs, and a debt balance that skyrocketed 79% between 2019 and 2022, Azure's long-term viability was in jeopardy unless Defendants could secure new projects and thereby, generate cash. *Id*. Defendants, thus, had motive to and did engage in a concerted effort to, *inter alia*, manipulate data to secure projects, make improper payments to secure land and approvals for those projects, and obtain commissioning certificates after submitting inaccurate data hoping to fully commission to their contractually required capacity in order to secure much needed cash to survive as a company. *Id*. Moreover, though Plaintiff supports her allegations with confidential local sources and whistleblower reports (*see e.g.*, ¶¶61-68, 77-78, 82, 89-97), Defendants' argument suggesting that "Plaintiff points to no documents or confidential witnesses showing that any of the Defendants were aware that any alleged misrepresentation was false when it was made" (ECF 103 at 43) is "irrelevant" as "such allegations are not required to establish scienter." *Owlet*, 2024 WL 3648141 at *7. [2]

Accordingly, Plaintiff respectfully submit that here, as in *Owlet*, Defendants' "'desire to raise company financing, combined with the 'red flags' of a company's financial condition,'" particularly when considered holistically with Plaintiffs' additional scienter allegations (*see* ECF 108 at §III.C.), "'is sufficient to plead scienter.'" *Owlet*, 2024 WL 3648141 at *6.

---

[2] "¶" or "¶¶" refers to paragraphs in Plaintiff's Second Amended Class Action Complaint (ECF No. 80). All emphasis added and internal citations omitted unless otherwise specified.



Respectfully submitted,

Shannon L. Hopkins

LEVI & KORSINSKY LLP

*Attorneys for Plaintiff*

cc:      All counsel of record via ECF