**DENTONS**

**Douglas W. Henkin**

douglas.henkin@dentons.com
D    +1 212-768-6832

Dentons US LLP
1221 Avenue of the Americas
New York, NY  10020-1089
United States

dentons.com

August 19, 2024

**VIA ECF**

The Honorable Gregory H. Woods
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St., Room 2260
New York, NY 10007

Re:    *Lokman v. Azure Power Global Limited et al.*, Case No. 1:22-cv-07432-GHW

Dear Judge Woods,

On behalf of all Defendants (with authorization from the individual defendants' counsel), we respectfully submit this letter in response to Plaintiff's August 12, 2024 submission of *Butala v. Owlet, Inc.*, 2024 WL 3648141 (C.D. Cal. Aug. 5, 2024) (ECF 112), as supplemental authority in further opposition to Defendants' motion to dismiss. Plaintiff claims that *Owlet* supports her "argument that courts routinely find a company's need to generate cash to survive supports scienter." *Id.* at 2. Plaintiff's Second Amended Complaint (ECF 80) does not allege particularized facts suggesting that Azure needed to generate cash to survive; Plaintiff only alleged that Defendants were motivated by a generic desire "[t]o make Azure's financial position appear more favorable" to investors and lenders. *See* ECF 80 ¶ 60. In their Motion to Dismiss (ECF 103), Defendants responded to that argument by citing binding Second Circuit precedent holding that "[m]otives that are common to most corporate officers, such as the desire for the corporation to appear profitable" do not suffice to establish scienter. *See* ECF 103 at 44 (citing *ECA Local 134 IBEW Joint Pension Tr. Of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009); *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001); *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801 (2d Cir. 1996)). Plaintiff has failed to cite any Second Circuit cases to the contrary.

Plaintiff now tries to rely on *Owlet*, a non-binding, out-of-Circuit, unpublished case that involved substantially more particularized scienter allegations than here. In that case, the defendants marketed and sold a device called the "Smart Sock." 2024 WL 3648141 at *1. In 2013, Owlet issued a press release stating that it would be introducing a version of the Smart Sock that includes an alarm feature, but acknowledged that feature would require FDA approval. *Id.* at *2. The plaintiffs alleged that Owlet needed to "'secure tens of millions of dollars in new funding from interested investors' to obtain FDA clearance" for the Smart Sock with the alarm feature, but first needed to sell the product to the public in order to raise capital. *Id.* at *6-7. In 2015, Owlet launched a version of the Smart Sock with an alarm feature, but never obtained the necessary FDA approvals. *Id.* at *2-3. In 2016, Owlet received a letter from the FDA stating that the FDA considered the product a medical device that needed FDA approval prior to sale. *Id.* at *3. In March 2017, Owlet launched another version of the Smart Sock with the alarm feature, again without obtaining FDA approval and again prompting notice from the FDA. *Id.* Despite receiving such notices from the FDA, the defendants certified on a Form S-4 that (a) all products marketed and sold by Owlet were being sold "in compliance in all material respects with applicable FDA laws," (b) "[n]o government entity is considering … changing the market classification of the Company Products in any material respect," (c)

dentons.com

**August 19, 2024**
Page 2

that Owlet had "not received any written notice or communication form any Governmental Entity … alleging or asserting material noncompliance with any applicable FDA Law, any warning or untitled letter… or similar written letter or notice alleging noncompliance;" and (d) "that there are not facts or circumstances reasonably likely to cause … a termination, seizure or suspension of the marketing or distribution … of any such product." *Id.* *3, 6. Thereafter, Owlet received a public warning letter from the FDA stating that "[s]ince 2016, the FDA has corresponded with Owlet that the [ ] Smart Sock [the product in question] meets the definition of a [medical] device[.]" *Id.* at *3.

Based on these particularized allegations, the *Owlet* court found that the plaintiffs had established a strong inference of scienter. *Id.* at *6. Contrary to Plaintiff's assertions, the court's scienter analysis was not primarily based on the allegation that the company needed to generate revenue. Rather, the factual allegations about the defendants' knowledge that FDA approval was required, including specific admissions by Owlet's CEO and co-founder, gave rise to a strong inference of scienter. *Id.* Moreover, the allegations of financial motive in *Owlet*—that the company needed to sell its flagship product to the public prematurely and make misstatements in order to raise the tens of millions in financing necessary for obtaining FDA approval of the product—were specific to the defendants in that case and not generally shared by corporate officers. Here, however, Plaintiff has only alleged a general desire of Azure to improve its financial position and to generate cash—an allegation completely untethered to particularized allegations of knowledge by any Defendant like those in *Owlet*.

Plaintiff also submits *Owlet* in support of her argument that she was not required to cite confidential witnesses or internal documents in the SAC. ECF 112 at 2. This is a red herring. Defendants did not argue that a lack of confidential witnesses or internal documents is dispositive of scienter. Defendants' motion demonstrated that plaintiffs do not enjoy "license to base claims of fraud on speculation and conclusory allegations," *San Leandro*, 75 F.3d 801 at 813, and that in the absence of motive (which the SAC fails to plead), the strength of a plaintiff's circumstantial allegations must be correspondingly greater, *ECA, Local 134*, 553 F.3d at 198–99. The lack of confidential witnesses or internal documents in *Owlet* was not fatal because the plaintiff's scienter theory was supported by, among other things, five years of specific correspondence between the defendants and the FDA, in which the FDA repeatedly stated that the product at issue required approval. As previously demonstrated, nothing similar is alleged here.

Defendants thus respectfully submit that *Owlet* (a) does not change the fact that Plaintiff's allegations do not suffice to establish scienter and (b) *supports* the Defendants' motion to dismiss by highlighting the same weaknesses Defendants' motion highlighted.

Respectfully Submitted,

By: /s/ Douglas W. Henkin
Douglas W. Henkin
Dentons US LLP
*Attorney for Defendant Azure Global Power Limited*

cc: All counsel of record via ECF