# Exhibit 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SERAP LOKMAN, Individually and On Behalf of All Others Similarly Situated, | Case No. 1:22-cv-7432-GHW |
|     Plaintiff, | Hon. Gregory H. Woods |
| v. | |
| AZURE POWER GLOBAL LIMITED, RANJIT GUPTA, MURALI SUBRAMANIAN, and PAWAN KUMAR AGRAWAL, | |
|     Defendants. | |

**STIPULATION AND AGREEMENT OF SETTLEMENT**

This Stipulation and Agreement of Settlement (the "Stipulation") is made and entered into by and between the Court-appointed Lead Plaintiff Serap Lokman ("Lead Plaintiff" or "Plaintiff"), on behalf of herself and all other members of the Settlement Class (defined below), and Defendants Ranjit Gupta ("Gupta"), Murali Subramanian ("Subramanian"), Pawan Kumar Agrawal ("Agrawal" and, collectively with Gupta and Subramanian, the "Individual Defendants"), and Defendant Azure Global Power Limited ("Azure" or the "Company" and, together with the Individual Defendants, "Defendants") (Lead Plaintiff and the Defendants are collectively referred to herein as the "Settling Parties"), and embodies the terms and conditions of the settlement of the above-captioned action (the "Action").

**WHEREAS:**

**I.      THE ACTION**

All words or terms used herein that are capitalized shall have the meanings ascribed to those words or terms herein and in §V.1 hereof entitled "Definitions," *infra*.

On August 30, 2022, a putative securities class action was filed in the United States District Court for the Southern District of New York captioned *Carson D. Gilbert v. Azure Power Global Limited, et al.*, Case No. 1:22-cv-07432 (S.D.N.Y), asserting claims under the federal securities laws on behalf of persons and entities who purchased or otherwise acquired Azure securities between June 15, 2021 and August 26, 2022, inclusive. ECF No. 1 at ¶1.[1]

On December 8, 2022, the Court entered an Order appointing (i) Plaintiff Serap Lokman as Lead Plaintiff and (ii) Levi & Korsinsky, LLP as Lead Counsel in the Action. ECF No. 38.

On February 21, 2023, after extensive further investigation, Lead Plaintiff filed her First Amended Class Action Complaint, alleging claims for: (i) violations of Section 10(b) of the Securities Exchange Act of 1934, as amended ("Exchange Act"), and Rule 10b-5 of the Securities and Exchange Commission ("SEC") promulgated thereunder, against Defendants Azure, Gupta, Subramanian, Alan Rosling ("Rosling") and Agrawal, on behalf of all persons and entities that purchased or otherwise acquired public Azure securities between June 15, 2021 and August 29, 2022, inclusive (the "Class Period"); and (ii) violations of Section 20(a) of the Exchange Act, against Gupta, Subramanian, Rosling and Agrawal. ECF No. 46.

On February 23, 2023, the Court entered an Order granting the stipulated voluntary dismissal of Defendant Harsh Shah, previously named as a defendant in the Action, without prejudice. ECF No. 49.

On April 7, 2023, pursuant to Judge Woods' Rule of Individual Practice 2E, Defendants Azure, Rosling and Agarwal filed and served a letter requesting a pre-motion conference in advance of filing their anticipated motions to dismiss the First Amended Class Action Complaint and setting forth the bases of their anticipated motions (ECF No. 59), and on April 12, 2023, Lead Plaintiff submitted her letter in response thereto (ECF No. 60). The pre-motion conference was held April 17, 2023. At that conference, in light of developments at Azure, including the delayed filing of Azure's annual report on Form 20-F for the fiscal year ended March 31, 2022 ("2022

---

[1] "ECF" herein refers to the electronic court filing docket entries filed in the underlying Action, Case No. 1:22-cv-07432.

Form 20-F"), which Lead Plaintiff represented was pertinent to the allegations of her complaint, the Court directed that the parties file a status report by July 31, 2023, after the anticipated July 15, 2023 filing of Azure's 2022 Form 20-F (ECF No. 61).

On July 31, 2023, Lead Plaintiff filed a status report, noting, *inter alia*, that Azure had been unable to file its 2022 Form 20-F on July 15, 2023 because Azure's external auditor had resigned on July 10, 2023 and that Azure anticipated filing its 2022 Form 20-F in approximately 14 weeks. The status report requested that the Court set a deadline for the filing of a second amended complaint four weeks from the date Azure ultimately filed its 2022 Form 20-F. ECF No. 63.

On August 1, 2023, the Court so ordered Lead Plaintiff's request, and directed that Lead Plaintiff file her Second Amended Class Action Complaint no later than 28 days after Azure filed its 2022 Form 20-F, set a schedule for the briefing of Defendants' motions to dismiss, and directed the filing of a further report as to the status of Azure's 2022 Form 20-F by October 31, 2023, as well as certain other matters regarding international service of process. ECF No. 64. On October 27, 2023, Lead Plaintiff filed a status report on behalf of the parties, notifying the Court that service of process on all Defendants was complete, that Azure had filed its 2022 Form 20-F on October 12, 2023, and proposed that Lead Plaintiff file her Second Amended Class Action Complaint on November 9, 2023. ECF No. 76. The status report further proposed a slightly modified schedule for Defendants' renewed pre-motion conference letter in anticipation of their motion to dismiss, and Lead Plaintiff's opposition thereto. The Court granted said request. ECF No. 77.

In October 2023, Lead Plaintiff submitted requests under the Freedom of Information Act to the U.S. Department of Justice ("DOJ") and the SEC related to the allegations in this Action.

On November 9, 2023, Lead Plaintiff filed her Second Amended Class Action Complaint (the "Complaint"), alleging claims under Section 10(b) of the Exchange Act and SEC Rule 10b-5 against defendants Azure, Gupta, Subramanian and Agrawal, and claims under Section 20(a) against Gupta, Subramanian and Agrawal. ECF No. 80. The same day, Lead Plaintiff filed a

Notice of Voluntary Dismissal Pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) of Alan Rosling (ECF No. 79), which was approved by the Court (ECF No. 82).

On January 5, 2024, Defendants filed pre-motion conference letters in anticipation of their motions to dismiss the Complaint. Lead Plaintiff filed her opposition thereto on January 18, 2024, and on February 6, 2024, the Court held its pre-motion conference at which it permitted Defendants to file their motions to dismiss and set a briefing schedule. ECF Nos. 88-92, 96, 99.

On March 22, 2024, Defendants filed separate motions to dismiss the Complaint and supporting papers, including 75 pages of briefing plus exhibits (ECF Nos. 102-07). On May 6, 2024, Lead Plaintiff filed her 73-page brief in opposition thereto (ECF No. 108). On May 28, 2024, Defendants filed their separate replies (ECF Nos. 109-10).

On August 12, 2024, Lead Plaintiff filed a Notice of Supplemental Authority (ECF No. 112), to which Defendants responded on August 19, 2024 (ECF No. 113).

During September 2024, the parties to this Action began discussing a possible resolution of this Action. In connection therewith, Defendants produced to Lead Plaintiff certain documents, including insurance-related documents.

On November 20, 2024, the U.S. Department of Justice announced proceedings relating to one of the Defendants and certain related parties, which Lead Plaintiff believes concern what Lead Plaintiff alleged in the Action, and unsealed an indictment dated October 24, 2024 in the Eastern District of New York in *U.S. v. Adani et al.*, 24-CR-433 (E.D.N.Y.) (the "Indictment") regarding the same. On the same day, the SEC announced the filing of two related enforcement actions. *See SEC v. Adani, et. al.*, 1:24 Civ. 8080 (E.D.N.Y.); *SEC v. Cyril Sebastien Dominique Cabanes*, 1:24-cv-08081 (E.D.N.Y.).

On November 25, 2024, Lead Plaintiff notified the Court of the Indictment and the SEC actions and that the parties had agreed to mediation which was to take place on December 4, 2024. Lead Plaintiff also requested that the Court defer ruling on the pending motions to dismiss the Complaint until the parties provided a status report on the outcome of the mediation and stated that, if mediation was unsuccessful, Lead Plaintiff intended to seek leave to file a Third Amended

Complaint to include information that had come to light with the recent governmental actions. ECF No. 114.

The December 4, 2024 full-day mediation session, held before Mediator Michelle Yoshida, Esq. of Phillips ADR Enterprises, was unsuccessful in resolving the Action, but the parties continued discussions with the assistance of the Mediator. Lead Plaintiff submitted a status report to the Court on December 13, 2024, notifying the Court that the parties had not resolved the Action but were continuing discussions and requested to update the Court by January 10, 2025 as to whether or not their efforts were successful (ECF No. 115), which the court so-ordered. ECF No. 116.

On January 10, 2025, Lead Plaintiff filed a letter that, *inter alia*, advised the Court that the Settling Parties had, after further discussions with the assistance of the Mediator, reached a settlement. ECF No. 117. On January 13, 2025, the Court entered an order setting an April 17, 2025 deadline for the Settling Parties to file either this Stipulation of Settlement or a joint status update. ECF No. 118.

## II.    THE SETTLEMENT

On December 4, 2024, Lead Counsel and counsel for Defendants engaged in a full-day mediation session before Ms. Yoshida, a well-respected and highly experienced mediator. Lead Plaintiff Lokman, as well as representatives from each of the Defendants also attended the mediation. Prior to the mediation session, the parties submitted to the Mediator their extensive briefing on the pending motions to dismiss, the recent Indictment and SEC complaints, and other relevant documents. The parties did not reach an agreement to resolve the Action during the mediation. However, Lead Plaintiff and Defendants continued to negotiate a possible settlement through Ms. Yoshida over the next several weeks. Ultimately, on January 6, 2025, the Settling Parties agreed in principle to resolve the claims in the Action, and proceeded to negotiate a Term Sheet, which was executed on January 10, 2025.

On January 10, 2025, Lead Plaintiff notified the Court that the Settling Parties had agreed to resolve all issues and claims involved in this Action, and would proceed to document the Settlement. ECF No. 117.

### III.    DEFENDANTS' DENIAL OF WRONGDOING AND LIABILITY

Defendants have denied and continue to deny any wrongdoing or that they have committed any act or omission giving rise to any liability or violation of law, including the U.S. securities laws. Defendants have denied and continue to deny all charges of wrongdoing or liability against them arising out of the conduct, statements, acts or omissions alleged, or that could have been alleged in the Action, including each and every one of the claims alleged by Lead Plaintiff in the Action on behalf of the Settlement Class, including all claims in the Complaint or any prior pleading in this Action. Defendants also have denied, and continue to deny, *inter alia*, the allegations that Lead Plaintiff or Settlement Class Members have suffered damages or were otherwise harmed by the conduct alleged in the Action or that could have been alleged in the Action. Defendants have asserted, and continue to assert, that, at all times, they acted in good faith and in a manner they reasonably believed to be in accordance with all applicable rules, regulations, and laws, and further maintain that they have meritorious defenses. Nonetheless, the Defendants have determined that it is desirable and beneficial to them that the Action be settled in the manner and upon the terms and conditions set forth in this Stipulation solely to avoid the further expense, inconvenience, and burden of this Action, the distraction and diversion of personnel and resources, and to obtain the conclusive and complete dismissal or release of this Action and the Released Claims.

This Stipulation, any proceedings relating to any settlement, or any of the terms of any settlement, whether or not consummated, shall in no event be construed as, or deemed to be evidence of, an admission or concession on the part of the Defendants, or any of them, with respect to any fact or matter alleged in the Action or which could have been alleged in the Action, or any claim of fault or liability or wrongdoing or damage whatsoever, or any infirmity of any claim or defense that has or could have been asserted. Each Defendant reserves all defenses to any claims

that may be filed by anyone, including any individual or entity that has sought, or seeks, exclusion from the Settlement Class.

## IV.    CLAIMS OF LEAD PLAINTIFF AND BENEFITS OF SETTLEMENT

In connection with this Action, Lead Plaintiff, through Lead Counsel, conducted a thorough investigation relating to the claims, defenses, and underlying events and transactions that are the subject of the Action. This process included reviewing and analyzing: (i) Azure's public filings with the SEC; (ii) publicly available information in the United States and abroad, including press releases, news articles, interviews, conference calls, and other public statements issued by or concerning the Company and/or Defendants, and litigation involving Azure in India; (iii) information obtained from interviews with former Azure employees; (iv) internal Company documents produced by Azure; (v) the above-mentioned DOJ Indictment and SEC complaints, and publicly available information concerning those investigations and governmental action; (vi) reports of securities and financial analysts about the Company, and other commentary and analysis concerning Azure and the industry in which it operates; and (vii) the applicable law governing the claims and potential defenses. Lead Plaintiff also consulted with experts on damages and causation, among other issues, and responded to Defendants' motions to dismiss as well as pre-motion conference letters, and participated in extensive mediation preparation and negotiations at which the strengths and weaknesses of Plaintiff's claims and damages were thoroughly discussed.

Lead Plaintiff believes that the claims asserted in the Action have merit and that the information developed to date supports the claims asserted. However, Lead Plaintiff and Lead Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action through discovery, class certification, summary judgment, trial and appeals. They also have considered the uncertain outcome and the risk of any litigation, especially in complex actions such as the Action, as well as the difficulties and delays inherent in such litigation, including in seeking and obtaining discovery primarily from India. Lead Plaintiff and Lead Counsel are also cognizant that Defendants' insurance carriers had denied coverage, making

collectability a significant risk, as well as the risks of enforcing a judgment against the Defendants, who are primarily located in India, after trial. Lead Counsel are also mindful of the inherent problems of proof and the possible defenses to the claims alleged in the Action. Based on their evaluation, Lead Plaintiff and Lead Counsel believe that the Settlement set forth in this Stipulation confers substantial monetary benefits upon, and is in the best interests of, the Settlement Class.

## V.    TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

**NOW THEREFORE**, without any concession by Lead Plaintiff that the Action lacks merit, and without any concession by Defendants of any liability or wrongdoing or lack of merit of their defenses, it is hereby **STIPULATED AND AGREED**, by and among Lead Plaintiff and Defendants, through their respective attorneys, subject to approval by the Court pursuant to Federal Rule of Civil Procedure 23(e), that, in consideration of the benefits flowing to the Settling Parties, all Released Claims, as against all Released Parties, shall be fully, finally, and forever compromised, settled, released, discharged, and dismissed with prejudice, and without costs except as otherwise specified herein, upon and subject to the following terms and conditions:

## 1.   DEFINITIONS

As used in this Stipulation, the following terms shall have the meanings set forth below. In the event of any inconsistency between any definition set forth below and any definition in any other document related to the Settlement, the definition set forth below shall control.

1.1    "Action" means the civil action captioned *Serap Lokman v. Azure Power Global Limited, et al*., Case No. 1:22-cv-07432-GHW, pending in the United States District Court for the Southern District of New York before the Honorable Gregory H. Woods, and any differently-captioned action filed under the same civil action number in the United States District Court for the Southern District of New York.

1.2    "Authorized Claimant" means a Settlement Class Member who submits a valid Proof of Claim and Release form to the Claims Administrator that is accepted for payment.

1.3    "Claim(s)" means a paper claim submitted on a Proof of Claim and Release form or an electronic claim that is submitted to the Claims Administrator.

1.4    "Claims Administrator" means Angeion Group, LLC, the firm to be retained by Lead Counsel, subject to Court approval, to provide all notices approved by the Court to Settlement Class Members, to process proofs of claim, and to administer the Settlement.

1.5    "Complaint" means the Second Amended Class Action Complaint (ECF No. 80) filed in the Action on November 9, 2023.

1.6    "Court" means the United States District Court for the Southern District of New York.

1.7    "Defendants" means Azure Power Global Limited, and Individual Defendants Gupta, Subramanian and Agrawal.

1.8    "Defendants' Counsel" means the law firm of Dentons US LLP as to Defendant Azure Power Global Limited, the law firm of Willkie Farr & Gallagher LLP as to Individual Defendants Gupta and Subramanian, and the law firm of Covington & Burling LLP as to Individual Defendant Agrawal.

1.9    "Effective Date" means the first date by which all events and conditions specified in ¶11.1 of this Stipulation have been met, have occurred, or have been waived.

1.10    "Escrow Account" means the segregated, interest-bearing escrow account established and maintained by the Escrow Agent wherein the Settlement Amount shall be deposited and held for the benefit of the Settlement Class pursuant to ¶3.1 of this Stipulation and subject to the jurisdiction of the Court.

1.11    "Escrow Agent" means Esquire Bank.

1.12    "Fee and Expense Application" means the application or applications that Lead Counsel may submit to the Court for an award from the Settlement Fund of attorneys' fees and payment of expenses incurred in connection with prosecuting the Action, plus interest earned on such attorneys' fees and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid) as may be awarded by the Court.  The Fee and Expense Application may also include an application for a Lead Plaintiff Award pursuant to 15 U.S.C. §78u-4(a)(4) of the Private Securities Litigation Reform Act of 1995 ("PSLRA").

1.13     "Fee and Expense Award" means any attorneys' fees and expenses awarded by the Court, as described in ¶5.1.

1.14     "Final," with respect to a court order, including, without limitation, the Judgment, means that such order or Judgment represents a final and binding determination of all issues within its scope and is not subject to further review on appeal or otherwise. Without limitation, an order or Judgment becomes "Final" when: (i) no appeal has been filed and the prescribed time for filing or noticing any appeal under the Federal Rules of Appellate Procedure, *e.g.*, thirty (30) days after entry of the order or Judgment, has expired; or (ii) an appeal has been filed and either: (a) the appeal has been dismissed and the prescribed time, if any, for commencing any further appeal has expired, or (b) the order or Judgment has been affirmed in all material respects and the prescribed time, if any, for commencing any further appeal has expired. For purposes of this definition of "Final," an "appeal" includes any motion to alter or amend under Rules 52(b) or 59(e) of the Federal Rules of Civil Procedure, any appeal as of right, discretionary appeal, interlocutory appeal, petition for writ of certiorari, or other proceeding involving writs of *certiorari* or mandamus, and any other similar proceedings. Any appeal or proceeding seeking subsequent judicial review pertaining solely to: (a) the Fee and Expense Award, any Lead Plaintiff Award, or any other award of attorneys' fees, costs, or expenses to Lead Counsel or Lead Plaintiff; (b) the Plan of Allocation (as submitted or subsequently modified); or (c) the procedures for determining Authorized Claimants' recognized Claims, shall not in any way delay or affect the time set forth above for the Judgment to become Final or otherwise preclude the Judgment from becoming Final.

1.15     "Individual Defendants" means Ranjit Gupta, Murali Subramanian and Pawan Kumar Agrawal.

1.16     "Judgment" means the proposed final judgment to be entered by the Court approving the Settlement, substantially in the form attached hereto as Exhibit B.

1.17     "Lead Counsel" means the law firm of Levi & Korsinsky, LLP.

1.18     "Lead Plaintiff" means Serap Lokman.

1.19    "Lead Plaintiff Award" means any award by the Court to the Lead Plaintiff for her service on behalf of the Settlement Class including for Lead Plaintiff's reasonable time, costs and expenses directly relating to the representation of the Settlement Class under 15 U.S.C. §78u-4(a)(4).

1.20    "Mediator" means Michelle Yoshida, Esq., of Phillips ADR Enterprises.

1.21    "Net Settlement Fund" means the Settlement Fund less: (i) the Fee and Expense Award, including interest thereon; (ii) any Lead Plaintiff Award; (iii) Notice and Administration Expenses; (iv) Taxes and Tax Expenses; and (v) any other fees, expenses or other deductions approved by the Court.

1.22    "Notice" means the Notice of Pendency of Class Action and Proposed Settlement, Settlement Hearing and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses which, subject to approval of the Court, shall be substantially in the form attached hereto as Exhibit A-1, and shall be disseminated to Members of the Settlement Class and posted on the Claims Administrator's website related to this Settlement.

1.23    "Notice and Administration Expenses" means the costs, fees, and expenses incurred in connection with providing notice to the Settlement Class and the administration of the Settlement, including but not limited to: (i) providing notice of the proposed Settlement by email where practicable, mail, publication, and other means to Settlement Class Members; (ii) locating Settlement Class Members; (iii) communicating with Persons regarding the proposed Settlement and claims administration process and assisting with the submission of Claims; (iv) receiving, reviewing and processing Proof of Claim and Release forms and applying the Plan of Allocation thereto; (v) paying any escrow fees related to the Escrow Account and investment of the Settlement Fund, or Taxes and Tax Expenses; and (vi) distributing the proceeds of the Settlement or otherwise administering the Settlement.

1.24    "Opt-Out Date" is the deadline by which Settlement Class members may seek to exclude themselves from the Settlement Class and from participation in the Settlement. Opt-Out has the meaning set forth in ¶12.4

1.25    "Person(s)" means any individual, corporation (including all divisions and subsidiaries), general or limited partnership, association, joint stock company, joint venture, limited liability company, professional corporation, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any other business or legal entity.

1.26    "Plan of Allocation" means the proposed plan or formula of allocation described in the Notice, or any alternate plan approved by the Court whereby the Net Settlement Fund shall be distributed to Authorized Claimants. Any Plan of Allocation is not part of this Stipulation and the Released Defendants' Parties shall have no responsibility or liability with respect thereto.

1.27    "Postcard Notice" shall mean the postcard form notice which, subject to Court approval, shall be substantially in the form attached hereto as Exhibit A-3, and which shall be emailed where practicable and otherwise mailed first class, postage prepaid, to Settlement Class Members and third-party nominees and custodians that can be identified through reasonable investigation.

1.28    "Preliminary Approval Order" means the proposed order preliminarily approving the Settlement, preliminarily certifying the Settlement Class, and directing dissemination of Notice to the Settlement Class, substantially in the form of Exhibit A attached hereto.

1.29    "Proof of Claim" or "Claim Form" means the Proof of Claim and Release form for submitting a Claim which, subject to Court approval, shall be substantially in the form attached as Exhibit A-2 hereto, and shall be posted on the Claims Administrator's website related to this Settlement, and that a Settlement Class Member must complete and submit should that Settlement Class Member seek to share in a distribution of the Net Settlement Fund.

1.30    "Released Claims" means both Releasing Plaintiffs' Claims and Released Defendants' Claims.

1.31    "Released Defendants' Claims" means all claims and causes of action of every nature and description, whether known or Unknown Claims, as defined in ¶1.49 hereof, against Released Plaintiffs' Parties, whether arising under federal, state, common or foreign law, that

arise out of or relate in any way to the institution, prosecution, or settlement of the claims asserted in the Action against Defendants. Released Defendants' Claims shall not include any claims relating to the enforcement of the Settlement, or any claims, demands, rights, or causes of action and liabilities (a) between or among Defendants; or (b) between Defendants and their insurers. The release shall include a standard provision regarding the waiver of the benefits conferred by California Civil Code § 1542 or any other similar provision of law.

1.32    "Released Defendants' Parties" means (i) each Defendant; (ii) the family members of the Individual Defendants; (iii) direct or indirect parent entities, direct and indirect subsidiaries, related entities, and all shareholders and affiliates of Azure; (iv) any trust of which any Individual Defendant is the settlor or which is for the benefit of any Individual Defendant and/or his or her family members; (v) for any of the Persons or entities listed in parts (i) through (iv), as applicable, their respective past, present, and future general partners, limited partners, principals, shareholders, joint venturers, officers, directors (including board chairs), managers, managing directors, supervisors, employees, contractors, consultants, experts, auditors, accountants, financial advisors, insurers, reinsurers, indemnitors, trustees, trustors, agents, attorneys, predecessors, successors, assigns, heirs, executors, administrators, estates, and any controlling person thereof; and (vi) any entity in which a Defendant has a controlling interest; all in their capacities as such (each of the foregoing, a "Released Defendants' Party").

1.33    "Released Parties" means the Released Defendants' Parties and the Released Plaintiffs' Parties.

1.34    "Released Plaintiffs' Parties" means (i) Lead Plaintiff, all Settlement Class Members, any other plaintiffs in the Action and their counsel, Lead Counsel, and (ii) each of their respective immediate family members, and their respective partners, general partners, limited partners, principals, shareholders, joint venturers, members, officers, directors, managing directors, supervisors, employees, contractors, consultants, experts, auditors, accountants, financial advisors, insurers, trustees, trustors, agents, attorneys, predecessors, successors, assigns, heirs, executors, administrators, and any controlling person thereof, all in their capacities as such

13

(each of the foregoing, a "Released Plaintiffs' Party"). Released Plaintiffs' Parties does not include any Person who timely and validly seeks exclusion from the Settlement Class pursuant to a Request for Exclusion as described in ¶12.4 below.

1.35 "Releasing Plaintiffs' Parties" means Lead Plaintiff and other members of the Settlement Class, together with their successors, assigns, executors, heirs, administrators, representatives, attorneys, and agents, in their capacities as such (each of the foregoing, a "Releasing Plaintiffs' Party"). Releasing Plaintiffs' Parties does not include any Person who timely and validly seeks exclusion from the Settlement Class pursuant to a Request for Exclusion as described in ¶12.4 below.

1.36 "Releasing Plaintiffs' Claims" means all claims, actions, causes of action, demands, losses, rights, duties, obligations, debts, sums of money, suits, contracts, agreements, judgments, matters, issues, promises, damages and liabilities of every nature and description, whether known or Unknown Claims, whether arising under federal, state, common or foreign law, that Lead Plaintiff, any other member of the Settlement Class, or any other Releasing Plaintiffs' Party: (i) asserted in the Complaint or (ii) could have asserted in any forum that arise out of, are based on, or relate in any way to, directly or indirectly, (a) any of the allegations, acts, transactions, facts, events, matters, occurrences, representations or omissions involved, set forth, alleged or referred to, in the Action, or in the Indictment in Case No. 24-CR-433 (E.D.N.Y) or the SEC complaints in Case No. 24-cv-08080 (E.D.N.Y.) and No. 24-cv-08081 (E.D.N.Y.), or (b) the purchase, acquisition or sale of Azure equity shares by any members of the Settlement Class during the Settlement Class Period. Releasing Plaintiffs' Claims shall not include (i) any claims relating to the enforcement of the Settlement; and (ii) any claims of any Person or entity who or which submits a Request for Exclusion from the Settlement Class that is accepted by the Court. The release shall include a standard provision regarding the waiver of the benefits conferred by California Civil Code § 1542 or any other similar provision of law.

1.37 "Settlement" means the resolution of the Action in accordance with the terms and provisions of this Stipulation.

1.38    "Settlement Amount" means the total principal amount of twenty-three million U.S. dollars (U.S.$23,000,000.00) in cash.

1.39    "Settlement Class" or "Settlement Class Member" means all Persons and entities that purchased or otherwise acquired Azure equity shares between January 1, 2020 and November 20, 2024, inclusive, and who were damaged thereby. Excluded from the Settlement Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, any entity in which Defendants have or had a controlling interest, and Azure shareholders Caisse de dépôt et placement du Québec ("CDPQ") and Ontario Municipal Employees Retirement System ("OMERS") and all current and former affiliates, employees, officers, directors, and representatives of CDPQ and OMERS, respectively.  Also excluded from the Settlement Class is any Person who would otherwise be a Member of the Settlement Class, but who validly and timely has submitted, or submits, a Request for Exclusion in accordance with the requirements set by the Court.

1.40    "Settlement Class Period" means the period between January 1, 2020 and November 20, 2024, inclusive.

1.41    "Settlement Fund" means the Settlement Amount and any interest earned thereon.

1.42    "Settlement Hearing" means the hearing to be held by the Court under Rule 23(e) of the Federal Rules of Civil Procedure to determine whether: (i) the Settlement is fair, reasonable, and adequate, and should be finally approved and the Settlement Class should be certified for Settlement purposes; (ii) the Plan of Allocation is fair and reasonable and should be approved; and (iii) the Fee and Expense Application, including any Lead Plaintiff Award, is reasonable and should be approved.

1.43    "Settling Parties" collectively means Defendants and Lead Plaintiff, on behalf of herself and the Settlement Class.

1.44    "Stipulation" means this Stipulation and Agreement of Settlement.

15

1.45    "Summary Notice" means the summary notice of pendency of class action and proposed Settlement, substantially in the form attached as Exhibit A-4 hereto, and which shall be published in a widely-circulated national wire service.

1.46    "Tax" or Taxes" mean any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax, and additional amounts imposed with respect thereto) imposed by any governmental authority, including, but not limited to, any local, state, and federal taxes.

1.47    "Tax Expenses" means expenses and costs incurred in connection with the operation and implementation of ¶4.3 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in ¶4.3, and/or costs incurred in connection with the taxation of the Settlement Fund, distributions, or other payments from the Escrow Account, or the filing of any federal, state, or local returns).

1.48    "Termination Notice" has the meaning set forth in ¶12.1.

1.49    "Unknown Claims" means any and all Released Claims that Lead Plaintiff or any other Settlement Class Member (with respect to Releasing Plaintiffs' Claims) or Defendants (with respect to Released Defendants' Claims) do not know or suspect to exist in his, her or its favor at the time of the release. This includes claims which, if known, might have affected the Settlement or any Party's decision to release Releasing Plaintiffs' Claims or Released Defendants' Claims, and claims the release of which might have prompted a decision to object to the Settlement.  The Settling Parties expressly acknowledge and shall be deemed to have expressly waived and relinquished any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or any other jurisdiction, or principle of common law that is, or is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Lead Plaintiff, other Settlement Class Members, or Defendants may hereafter discover facts, legal theories, or authorities in addition to or different from those which any of them now knows or believes to be true with respect to the subject matter of the Released Claims, but Lead Plaintiff and Defendants shall expressly, fully, finally, and forever settle and release, and each Settlement Class Member shall be deemed to have settled and released, and upon the Effective Date and by operation of the Judgment shall have settled and released, fully, finally, and forever, any and all Released Claims as applicable, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities. Lead Plaintiff and Defendants acknowledge, and other Settlement Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims and was separately bargained for and was a material element of the Settlement.

## 2.  SCOPE AND EFFECT OF SETTLEMENT

2.1     The obligations incurred pursuant to this Stipulation are: (i) subject to Court approval and the Judgment reflecting such approval becoming Final; and (ii) in full and final disposition of the Action with respect to the Released Parties and any and all Released Claims including Released Defendants' Claims and Releasing Plaintiffs' Claims.

2.2     Solely for the purposes of this Settlement and without waiving any rights, Defendants agree not to contest (i) that the Settlement Class satisfies all requirements of Fed. R. of Civ. P. 23(a) and 23(b)(3), such that this Action is properly maintained as a class action, and the appointment of Lead Plaintiff as Class Representative; and (ii) the appointment under Fed. R. Civ. P. 23(g) of Lead Counsel Levi & Korsinsky, LLP as Class Counsel.

2.3     By operation of the Judgment, as of the Effective Date, Releasing Plaintiffs' Parties, on behalf of themselves and each of their respective heirs, executors, trustees, administrators, predecessors, successors, and assigns, in their capacities as such, shall be deemed to have fully, finally, and forever waived, released, relinquished, discharged, and dismissed each and every one of the Releasing Plaintiffs' Claims against each and every one of the Released Defendants' Parties and shall forever be barred and enjoined from commencing, instituting,

prosecuting, or maintaining any and all of the Releasing Plaintiffs' Claims against any and all of the Released Defendants' Parties, whether or not such Settlement Class Member executes and delivers the Proof of Claim and Release form, and whether or not such Settlement Class Member shares or seeks to share in the Settlement Fund.

2.4     By operation of the Judgment, as of the Effective Date, Defendants, on behalf of themselves and each of their respective heirs, executors, trustees, administrators, predecessors, successors, and assigns, in their capacities as such, shall be deemed to have fully, finally, and forever waived, released, relinquished, discharged, and dismissed each and every one of the Released Defendants' Claims against each and every one of the Released Plaintiffs' Parties and shall forever be barred and enjoined from commencing, instituting, prosecuting, or maintaining any and all of the Released Defendants' Claims against any and all of the Released Plaintiffs' Parties.

## 3.   THE SETTLEMENT CONSIDERATION

3.1     In full settlement of the claims asserted in the Action against Defendants and in consideration of the releases specified in ¶¶2.3–2.4, *supra*, all of which the Settling Parties agree are good and valuable consideration, Azure shall pay, or cause to be paid, the Settlement Amount into the Escrow Account within twenty (20) business days after the later of: (1) the Court's entry of an order preliminarily approving the Settlement; (2) Lead Counsel providing to Defendants' counsel a Form W-9, wire transfer or electronic payment (ACH) instructions and/or any requisite electronic payment authorization forms, and the name and telephone number of an individual who can verbally confirm wire instructions; and (3) March 31, 2025.

3.2     Neither Defendants nor their counsel shall have any responsibility for, interest in, or liability whatsoever with respect to: (i) any act, omission, or determination by Lead Counsel or the Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the Plan of Allocation; (iv) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (v) any loss suffered

18

by, or fluctuation in value of, the Settlement Fund; or (vi) the payment or withholding of any Taxes or Tax Expenses.

3.3    Other than the obligation of Azure to cause the payment of the Settlement Amount pursuant to ¶3.1, Defendants shall have no obligation to make any other payments into the Escrow Account or to any Settlement Class Member or Lead Counsel in settlement of this Action or pursuant to this Stipulation, including, without limitation, any responsibility or liability related to any fees, Taxes or Tax Expenses, Notice and Administration Expenses, investment decisions, maintenance, supervision or distribution of any portion of the Settlement Amount. There will be no responsibility on the part of the Individual Defendants to pay any portion of the Settlement Amount or pay any other amount in connection with the Settlement.

## 4.  USE AND TAX TREATMENT OF SETTLEMENT FUND

4.1    The Settlement Fund shall be used to pay: (i) any Taxes and Tax Expenses; (ii) Notice and Administration Expenses; and (iii) any Fee and Expense Award, including any Lead Plaintiff Award, made by the Court pursuant to the Fee and Expense Application.  The balance of the Settlement Fund shall be the Net Settlement Fund.

4.2    The Net Settlement Fund shall be distributed to Authorized Claimants as provided in ¶¶7.1–8.8 hereof, *infra*. The Net Settlement Fund shall remain in the Escrow Account prior to the Effective Date. All funds held in the Escrow Account, and all interest thereon, shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall have been disbursed or returned, pursuant to the terms of this Stipulation, or further order of the Court. The Escrow Agent shall invest funds in the Escrow Account in instruments backed by the full faith and credit of the United States Government (or a mutual fund invested solely in such instruments), or deposit some or all of the funds in non-interest-bearing transaction account(s) that are fully insured by the Federal Deposit Insurance Corporation ("FDIC") in amounts that are up to the limit of FDIC insurance. Defendants and Defendants' Counsel shall have no responsibility for, interest in, or liability whatsoever with respect to investment decisions executed by the Escrow Agent or the disposition of the Settlement Fund. All

risks related to the investment of the Settlement Fund shall be borne solely by the Settlement Fund.

4.3    After the Settlement Amount has been paid into the Escrow Account, the Settling Parties agree to treat the Settlement Fund as a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1. All provisions of this Stipulation shall be interpreted in a manner that is consistent with the Settlement Amount being a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1. In addition, the Escrow Agent shall timely make, or cause to be made, such elections as necessary or advisable to carry out the provisions of this ¶4.3, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such election shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver, or cause to be prepared and delivered, the necessary documentation for signature by all necessary parties, and thereafter take all such actions as may be necessary or appropriate to cause the appropriate filing(s) to timely occur. Consistent with the foregoing:

(a)    For the purposes of Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. § 1.468B promulgated thereunder, the "administrator" shall be the Escrow Agent or its successors, who shall timely and properly file, or cause to be filed, all federal, state, or local tax returns and information returns (together, "Tax Returns") necessary or advisable with respect to the earnings on the funds deposited in the Escrow Account (including without limitation the returns described in Treas. Reg. § 1.468B-2(k)). Such Tax Returns (as well as the election described above) shall be consistent with this subparagraph and in all events shall reflect that all Taxes (including any estimated taxes, earnings, or penalties) on the income earned on the funds deposited in the Escrow Account shall be paid out of such funds as provided in subparagraph (c) of this paragraph.

(b)    All Taxes and Tax Expenses shall be paid out of the Settlement Fund. In all events, Defendants and Defendants' Counsel shall have no liability or responsibility

20

whatsoever for the Taxes, Tax Expenses or the filing of any Tax Return or other document with the Internal Revenue Service or any other state or local taxing authority. Defendants and Defendants' Counsel shall have no liability or responsibility for the Taxes or Tax Expenses of the Escrow Account with respect to the Settlement Amount nor the filing of any Tax Returns or other documents with the Internal Revenue Service or any other taxing authority. The Escrow Agent shall take reasonable steps to ensure that no Taxes or Tax Expenses are owed by any of the Defendants on any earnings on the funds on deposit in the Escrow Account. In the event any Taxes or Tax Expenses are determined to be owed by any of the Defendants on any earnings on the funds on deposit in the Escrow Account, any such amounts shall be paid out of the Settlement Fund.

     (c)    Taxes or Tax Expenses with respect to the Settlement Amount and the Escrow Account shall be treated as, and considered to be, a cost of administration of the Settlement and shall be timely paid, or caused to be paid, by the Escrow Agent out of the Settlement Fund without prior order from the Court or approval by Defendants. The Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(l)(2)). The Settling Parties agree to cooperate with each other, and their tax attorneys and accountants to the extent reasonably necessary, to carry out the provisions of this paragraph. Defendants and Defendants' Counsel shall have no liability or responsibility whatsoever if it is later determined that the Settlement Fund is a not a "qualified settlement fund".

    4.4    This is not a claims-made Settlement. As of the Effective Date, the Defendants, or any other Person funding the Settlement on a Defendant's behalf, shall not have any right to the return of the Settlement Fund or any portion thereof for any reason except that in the event ¶ 4.3(b) is triggered, nothing in this ¶ 4.4 shall nullify the rights set forth in the last sentence of ¶ 4.3(b).

## 5.  ATTORNEYS' FEES AND EXPENSES

5.1     Lead Counsel may submit a Fee and Expense Application(s) to the Court for a Fee and Expense Award, to be paid from the Settlement Fund. The Fee and Expense Application may include a request for a Lead Plaintiff Award.

5.2     The amount of attorneys' fees and expenses awarded by the Court and amount of awards to Lead Plaintiff is within the sole discretion of the Court. Any Fee and Expense Award, as awarded by the Court, shall be paid from the Settlement Fund to Lead Counsel immediately after entry of the Order awarding such attorneys' fees and expenses, notwithstanding the existence of any timely filed objections thereto or to the Settlement, or potential for appeal therefrom, or collateral attack on the Fee and Expense Application, the Settlement, or any part thereof.

5.3     Any payment of the Fee and Expense Award pursuant to ¶¶5.1–5.2 above shall be subject to Lead Counsel's obligations to make refunds or repayments to the Settlement Fund of any paid amounts, plus accrued interest at the same net rate as is earned by the Settlement Fund, if the Settlement is terminated pursuant to the terms of this Stipulation or fails to become effective for any reason, or if, as a result of any appeal or further proceedings on remand or successful collateral attack, the Fee and Expense Award is reduced or reversed by Final non-appealable court order. Lead Counsel shall make the appropriate refund(s) or repayment(s) in full no later than thirty (30) calendar days after receiving notice of the termination of the Settlement pursuant to this Stipulation, notice from a court of appropriate jurisdiction of the disapproval of the Settlement by Final non-appealable court order, or notice of any reduction or reversal of the Fee and Expense Award by Final non-appealable court order.

5.4     Any Lead Plaintiff Award shall be payable upon the Effective Date.

5.5     Defendants and Defendants' Counsel shall have no responsibility for, and no liability whatsoever with respect to any allocation of any Fee and Expense Award or Lead Plaintiff Award in the Action, including to any other Person who may assert some claim thereto, or any other awards the Court may make in the Action.

5.6    Defendants and Defendants' Counsel shall have no responsibility for, and no liability whatsoever with respect to, any attorneys' fees, costs, or expenses incurred by or on behalf of Settlement Class Members, whether or not paid from the Escrow Account. The Settlement Fund will be the sole source of payment from Defendants for any award of attorneys' fees and expenses.

5.7    The procedure for and the allowance or disallowance by the Court of any Fee and Expense Application are not part of the Settlement set forth in this Stipulation, and any order or proceeding relating to any Fee and Expense Application, including a Fee and Expense Award or Lead Plaintiff Award in an amount less than the amount requested by Lead Counsel, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Stipulation, or affect or delay the finality of the Judgment approving the Stipulation and the Settlement set forth herein. Lead Plaintiff and Lead Counsel may not cancel or terminate the Stipulation or the Settlement in accordance with ¶12.1 or otherwise based on the Court's or any appellate court's ruling with respect to fees and expenses in the Action.

## 6.  NOTICE AND ADMINISTRATION EXPENSES

6.1    Except as otherwise provided herein, the Net Settlement Fund shall be held in the Escrow Account until the Effective Date.

6.2    Prior to the Effective Date, without further approval from Defendants or further order of the Court, Lead Counsel may cause up to $100,000 in Notice and Administration Expenses invoiced by the Claims Administrator to be paid from the Settlement Fund.  Additional sums for this purpose prior to the Effective Date may be paid from the Settlement Fund upon agreement of the Settling Parties or order of the Court. Taxes, Tax Expenses and fees related to the Escrow Account and investment of the Settlement Fund may be paid as incurred, without further approval of Defendants or further order of the Court. After the Effective Date, without approval of Defendants, Notice and Administration Expenses may be paid upon further order of the Court. The Released Defendants' Parties including Defendants' Counsel shall have no

responsibility for or liability whatsoever with respect to the Notice and Administration Expenses, nor shall they have any responsibility or liability whatsoever for any claims with respect thereto.

6.3    Lead Counsel shall cause the Claims Administrator to disseminate (a) the Notice, substantially in the form of Exhibit A-1 attached hereto, (b) the Proof of Claim and Release, substantially in the form of Exhibit A-2 attached hereto, (c) the Postcard Notice, substantially in the form of Exhibit A-3 attached hereto, and (d) the Summary Notice, substantially in the form of Exhibit A-4 attached hereto, to the Settlement Class in accordance with this Stipulation and as ordered by the Court. To the extent there are updates or modifications to the Notice, Proof of Claim and Release, Postcard Notice and Summary Notice provided to the Settlement Class, such updates will be reflected on a settlement website to be maintained by the Claims Administrator for the purpose of providing Settlement Class Members with information relating to this Settlement. It shall be the responsibility of the Claims Administrator to disseminate the Notice and otherwise implement the Notice program contemplated by the Preliminary Approval Order, as approved by the Court.  The Released Defendants' Parties including Defendants' Counsel shall have no responsibility for, or liability whatsoever with respect to, the Notice and Administration Expenses, nor shall they have any responsibility or liability whatsoever for any claims with respect thereto.

6.4    No later than ten (10) calendar days following the filing of this Stipulation with the Court (the "CAFA Notice Date"), Defendant Azure shall serve the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715 *et seq.* ("CAFA"), on behalf of all Defendants and shall confirm with Lead Counsel via email that such service was made. Defendants are solely responsible for the costs of the CAFA notice and administering the CAFA notice. At least seven (7) calendar days before the Settlement Hearing, Defendants' Counsel shall file a letter with the Court providing notice that all requirements of CAFA §1715(b) have been complied with. The Settling Parties will request that the Settlement Hearing not be scheduled until at least ninety (90) days following the CAFA Notice Date.

## 7.  DISTRIBUTION TO AUTHORIZED CLAIMANTS

7.1     The Claims Administrator, subject to such supervision and direction of Lead Counsel or the Court as may be necessary or as circumstances may require, shall administer the Settlement in accordance with the terms of this Stipulation, the Court-approved Plan of Allocation, and subject to the jurisdiction of the Court. Defendants and the Defendants' Counsel shall have no responsibility for (except as stated in ¶¶3.1 and 9.2 hereof), interest in, or liability whatsoever with respect to the administration of the Settlement or the actions or decisions of the Claims Administrator, and shall have no liability to the Settlement Class in connection with such administration.

7.2     The Claims Administrator shall determine each Authorized Claimant's share of the Net Settlement Fund based upon each Authorized Claimant's recognized loss, as defined in the Plan of Allocation included in the Notice, or in such other plan of allocation as the Court may approve.

7.3     Defendants and Defendants' Counsel have no role in the development of, and will take no position with respect to, the Plan of Allocation. Any decision by the Court concerning the Plan of Allocation shall not affect the validity or finality of the proposed Settlement. The Plan of Allocation is not a necessary term of this Stipulation and it is not a condition of this Stipulation that any particular plan of allocation be approved by the Court. Lead Plaintiff and Lead Counsel may not cancel or terminate the Stipulation or the Settlement in accordance with ¶12.1 or otherwise based on the Court's or any appellate court's ruling with respect to the Plan of Allocation or any plan of allocation in the Action. Defendants and Defendants' Counsel shall have no responsibility or liability for reviewing or challenging claims, the allocation of the Net Settlement Fund, or the distribution of the Net Settlement Fund.

7.4     Upon the Effective Date and thereafter, and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants.

7.5    No distributions will be made to Authorized Claimants who would otherwise receive a distribution of less than $10.00.  If there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise) after at least six (6) months from the date of initial distribution of the Net Settlement Fund, the Claims Administrator shall, if feasible and economical after payment of Notice and Administration Expenses, Taxes, and attorneys' fees and expenses and other awards approved by the Court, if any, redistribute such balance among Authorized Claimants who have cashed their checks sent in the initial distribution and who would receive a minimum of $10.00 as part of an additional distribution, in an equitable and economic fashion. Such additional distributions shall be repeated every six months until the balance remaining in the Net Settlement Fund is reduced to a *de minimis* level such that, in the reasonable judgment of Lead Counsel, it no longer makes economic sense, considering costs of distribution, to attempt to make further distributions  Any balance that thereafter still remains in the Net Settlement Fund after such reallocation(s) and payments, which is not feasible or economical to reallocate, and after payment of outstanding Notice and Administration Expenses, Taxes, Tax Expenses, attorneys' fees and expenses and other awards approved by the Court, shall be donated to the City Bar Fund, a 501(c)(3) non-profit charitable corporation benefiting the New York City Bar Justice Center, or another 501(c)(3) organization serving the public interest designated by Lead Counsel that has no affiliation or financial relationship with Lead Counsel, Lead Plaintiff, Defendants, their affiliates, or Defendants' Counsel, and is approved by the Court.

## 8.  ADMINISTRATION OF THE SETTLEMENT

8.1    Any Settlement Class Member who fails to timely submit a valid Proof of Claim (substantially in the form of Exhibit A-2), including appropriate documentation of claimed transactions, will not be entitled to receive any of the proceeds from the Net Settlement Fund, except as otherwise ordered by the Court, but will otherwise be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment to be entered in the Action and all releases provided for herein, and will be barred from bringing any action against the Released Defendants' Parties concerning the Released Claims.

8.2    Lead Counsel shall be responsible for supervising the administration of the Settlement and disbursement of the Net Settlement Fund by the Claims Administrator. Lead Counsel shall have the right, but not the obligation, to advise the Claims Administrator to waive what Lead Counsel deems to be *de minimis* or formal or technical defects in any Proof of Claim submitted.    Defendants and Defendants' Counsel shall have no liability, obligation or responsibility for the administration of the Settlement, the allocation of the Net Settlement Fund, or the reviewing or challenging claims. Lead Counsel shall be solely responsible for designating the Claims Administrator, subject to approval by the Court.

8.3    For purposes of determining the extent, if any, to which a claimant shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

(a)    Each claimant shall be required to submit a Claim Form, substantially in the form attached hereto as Exhibit A-2, supported by such documents as are designated therein, including proof of the claimant's loss, or such other documents or proof as the Claims Administrator or Lead Counsel, in their discretion, may deem acceptable;

(b)    All Claim Forms must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Notice, unless such deadline is extended by Order of the Court. Any Settlement Class Member who fails to submit a Claim Form by such date shall be barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Stipulation (unless, by Order of the Court, late-filed Claim Forms are accepted), but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment and all releases provided for herein, and will be permanently barred and enjoined from bringing any action, claim or other proceeding of any kind against any Released Defendant Party. A Claim Form shall be deemed to be submitted when submitted online to the Claims Administrator; or when mailed, if received (for U.S. mail) with a postmark on the envelope, or when received by the private carrier (FedEx, UPS, etc.), and addressed in accordance with the instructions thereon. In all other cases, the Claim Form shall be

deemed to have been submitted when actually received by the Claims Administrator. Notwithstanding the foregoing or any other provision of this Section 8, Lead Counsel shall have the discretion (but not an obligation) to accept late-submitted but otherwise valid Claims for processing by the Claims Administrator, so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby;

(c)    Each Claim Form shall be submitted to and reviewed by the Claims Administrator, under the supervision of Lead Counsel, which shall determine in accordance with this Stipulation the extent, if any, to which each claim shall be allowed;

(d)    Claim Forms that do not meet the submission requirements may be rejected. Prior to rejecting a Claim Form in whole or in part, the Claims Administrator shall communicate with the claimant in writing to give the claimant the chance to remedy any curable deficiencies in the Claim Form submitted. The Claims Administrator, under supervision of Lead Counsel, shall notify, in a timely fashion and in writing or by email, all claimants whose claims the Claims Administrator proposes to reject in whole or in part for curable deficiencies, setting forth the reasons therefor, and shall indicate in such notice that the claimant whose claim is to be rejected has the right to a review by the Court if the claimant so desires and complies with the requirements of subparagraph (e) below; and

(e)    If any claimant whose timely claim has been rejected in whole or in part for curable deficiency desires to contest such rejection, the claimant must, within twenty (20) calendar days after the date of mailing of the notice required in subparagraph (d) above, or a lesser period of time if the claim was untimely, serve upon the Claims Administrator a notice and statement of reasons indicating the claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court. If a dispute concerning a claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court.

8.4    Each claimant who submits a Claim Form shall be deemed to have submitted to the jurisdiction of the Court with respect to the claimant's claim, including but not limited to, all

28

releases provided for herein and in the Judgment, and the claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to the claimant's status as a Settlement Class Member and the validity and amount of the claimant's claim. In connection with processing the Claim Forms, no discovery shall be allowed to be directed to any of the Released Defendant Parties, and no discovery shall be allowed on the merits of the Action or the Settlement.

8.5    Payment pursuant to the Stipulation and Court-approved Plan of Allocation shall be deemed final and conclusive against any and all claimants. All Settlement Class Members whose claims are not approved shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment to be entered in the Action and the releases provided for herein and therein, and will be barred and enjoined from bringing any action against the Released Defendant Parties concerning the Released Claims.

8.6    All proceedings with respect to the administration, processing and determination of claims described by this Stipulation and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of the Court, but shall not in any event delay or affect the finality of the Judgment.

8.7    No Person shall have any claim of any kind against the Released Defendant Parties or Defendants' Counsel with respect to the matters set forth in this section (*i.e.*, ¶¶8.1–8.8) or any of its subsections, or otherwise related in any way to the administration of the Settlement, including without limitation the processing of claims and distributions.

8.8    No Person shall have any claim against Lead Plaintiff or the Claims Administrator, or other agent designated by Lead Counsel, based on the distributions made substantially in accordance with this Stipulation and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court.

## 9.    TERMS OF THE PRELIMINARY APPROVAL ORDER

9.1    Concurrently with her application for preliminary approval by the Court of the Settlement contemplated by this Stipulation and promptly upon execution of this Stipulation, Lead Plaintiff shall apply to the Court for entry of the Preliminary Approval Order, which shall be substantially in the form annexed hereto as Exhibit A. The Preliminary Approval Order will, *inter alia*, preliminarily approve the Settlement, set the date for the Settlement Hearing, approve the form of notice, and prescribe the method for giving notice of the Settlement to the Settlement Class.

9.2    Azure or its counsel shall provide, or cause to be provided, to Lead Counsel or the Claims Administrator, at no cost to Lead Plaintiff, the Settlement Fund, Lead Counsel, or the Claims Administrator, no later than ten (10) business days after entry of the Preliminary Approval Order, lists of shareholders of record during the Settlement Class Period in electronic format, such as Excel, to the extent such lists are reasonably available from Azure's stock transfer agent. The Defendants' efforts herein shall include, but are not limited to, requesting Azure's transfer agent during the Settlement Class Period (as defined in the Notice) grant Lead Plaintiff, Lead Counsel and the Claims Administrator any necessary authorizations or permissions to access the transfer records described in this Paragraph.

9.3    Any Settlement Class Member who wishes to object to the fairness, reasonableness, or adequacy of the Settlement, or the Plan of Allocation, or to any aspect of the Fee and Expense Application must do so in the manner specified and within the deadlines specified in the Preliminary Approval Order and the Notice. The deadline for submitting such objections is to be set by the Court in the Preliminary Approval Order, but the Settling Parties shall request that the deadline be the same as the Opt-Out Date described herein, *i.e.*, all objections must be postmarked (for U.S. Mail), received by the private carrier (for FedEx, UPS, etc.), emailed, or filed with the Court at least twenty-one (21) calendar days before the Settlement Hearing. An objection is valid only if it is personally signed by the Settlement Class Member, and

otherwise complies with all the requirements set forth in the Preliminary Approval Order and the Notice.

## 10. TERMS OF THE JUDGMENT

10.1    If the Settlement contemplated by this Stipulation is finally approved by the Court, Lead Counsel and Defendants' Counsel shall request that the Court enter a Judgment substantially in the form annexed hereto as Exhibit B.

## 11. EFFECTIVE DATE OF SETTLEMENT

11.1    The Effective Date of this Settlement shall be the first business day on which all of the following shall have occurred or been waived and is conditioned on the occurrence of all of the following events:

(a)    The full execution of the Stipulation of Settlement and such other documents as may be required to obtain final Court approval of the Stipulation of Settlement in a form satisfactory to the Settling Parties;

(b)    The Court's entry of a Preliminary Approval Order directing notice to the Settlement Class;

(c)    The deposit of the Settlement Amount into an escrow account, as set forth in ¶3.1 herein;

(d)    This Stipulation has not been terminated by any Settling Party pursuant to the terms hereof; and

(e)    The Court's entry of a Judgment approving the Stipulation of Settlement, and the Judgment has become Final (as defined in ¶1.14 herein).

## 12. WAIVER OR TERMINATION

12.1    Defendants and Lead Plaintiff shall have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so ("Termination Notice"), through counsel, to all other parties hereto within fourteen (14) calendar days of: (i) the Court's Final refusal to enter the Preliminary Approval Order in any material respect; (ii) the Court's Final refusal to approve this Stipulation or any material part of it; (iii) the Court's Final refusal to enter

the Judgment in any material respect; or (iv) the date upon which the Judgment is modified or reversed in any material respect by a Final order of the Court, the United States Court of Appeals, or the Supreme Court of the United States. Lead Plaintiff shall not have the right to terminate the Settlement due to any decision, ruling, or order respecting the Fee and Expense Application or any Plan of Allocation.

12.2    In addition to the foregoing, Defendants shall also have the right to terminate the Settlement in the event the Opt-Out Threshold (defined below) has been reached.

12.3    Simultaneously herewith, Defendants' Counsel and Lead Counsel are executing a Confidential Supplemental Agreement Regarding Requests for Exclusion ("Supplemental Agreement"). The Supplemental Agreement sets forth certain conditions under which Defendants shall have the sole option to terminate the Settlement and render this Stipulation null and void in the event that requests for exclusion from the Settlement Class exceed certain agreed-upon criteria (the "Opt-Out Threshold"). The Settling Parties agree to maintain the confidentiality of the Supplemental Agreement, which shall not be filed with the Court unless a dispute arises as to its terms, or as otherwise ordered by the Court, nor shall the Supplemental Agreement otherwise be disclosed unless ordered by the Court.

12.4    Any Settlement Class Member who has, or wishes to, request exclusion from the Settlement Class ("Opt-Out") must submit a written request ("Request for Exclusion") within the time and in the manner specified in the Court's Preliminary Approval Order and the Notice. The deadline for submitting a valid Request for Exclusion is the Opt-Out Date. The Opt-Out Date is to be set by the Court in the Preliminary Approval Order, but the Parties shall request that the Opt-Out Date be set so that all Requests for Exclusion are postmarked (for U.S. Mail) or received by the private carrier (for FedEx, UPS, etc.) or emailed at least twenty-one (21) calendar days before the Settlement Hearing. A Request for Exclusion is valid only if it is personally signed by the Settlement Class Member, and otherwise complies with all the requirements set forth in the Preliminary Approval Order and the Notice. Group opt-outs, including "mass" or "class" opt-outs, are not permitted. Any Settlement Class Member who does not submit a timely written

32

Request for Exclusion will be bound by all proceedings, orders, and judgments in the Action, whether or not he, she, or it timely submits a Proof of Claim and Release. Upon receiving any Request for Exclusion, Lead Counsel shall promptly, and in no event no later than seven (7) calendar days after receiving a Request for Exclusion, notify Defendants' Counsel of such request for exclusion and provide copies of such Request for Exclusion and any documentation accompanying it by email.

12.5    In addition to all of the rights and remedies that Lead Plaintiff has under the terms of this Stipulation, Lead Plaintiff shall also have the right to terminate the Settlement in the event that the Settlement Amount has not been paid in the time period provided for in ¶3.1 above, but only if (i) Lead Counsel has notified Defendants' Counsel in writing of Lead Plaintiff's intention to terminate the Settlement, and (ii) the entire Settlement Amount is not transferred to the Escrow Account within fourteen (14) calendar days after Lead Counsel has provided such written notice.

12.6    Defendant Azure warrants as to the payments it makes pursuant to this Stipulation, that, at the time of such payment(s), it will not be insolvent, nor will payment render it insolvent, within the meaning of or for the purposes of the United States Bankruptcy Code, including Sections 101 and 547 thereof, or any similar applicable foreign law.

12.7    If an option to withdraw from and terminate this Stipulation and Settlement arises under any of ¶¶12.1–12.6 above: (i) neither Defendants nor Lead Plaintiff (as the case may be) will be required for any reason or under any circumstance to exercise that option; and (ii) any exercise of that option shall be made in the sole and unfettered discretion of Defendants or Lead Plaintiff, as applicable.

12.8    With the exception of the provisions of ¶¶12.8–12.9 which shall continue to apply, in the event the Settlement is terminated as set forth herein or fails to become effective for any reason, then the Settlement shall be without prejudice, and none of its terms shall be effective or enforceable except as specifically provided herein; the Settling Parties shall be deemed to have reverted to their respective litigation positions in the Action immediately prior to January 10, 2025; and, except as specifically provided herein, the Settling Parties shall proceed in all respects

33

as if this Stipulation and any related order had not been entered. In such event, this Stipulation, and any aspect of the discussions or negotiations leading to this Stipulation shall not be admissible in this Action, or in any other proceeding, and shall not be used against or to the prejudice of Defendants or against or to the prejudice of Lead Plaintiff, in any court filing, deposition, at trial, or otherwise, except to enforce this Section 12.8. Any judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*. Further, any confirmatory discovery shall be promptly returned to Azure.

12.9    In the event the Settlement is terminated, as provided herein, or fails to become effective, any portion of the Settlement Amount previously paid into the Escrow Account, together with any earnings thereon, less any Taxes and Tax Expenses paid or due, and less Notice and Administration Expenses actually incurred and paid or payable from the Settlement Fund, shall be returned to Defendant Azure (or any other Persons or entities that made such payments into the Escrow Account) within the later of thirty (30) calendar days after the date of termination or fifteen (15) business days after written notification of such event in accordance with instructions provided by Defendants' Counsel to Lead Counsel, along with a detailed accounting of any Taxes, Tax Expenses and Notice and Administration Expenses paid. The Escrow Agent or its designees shall apply for any tax refund owed on the amounts in the Escrow Account and pay the proceeds, after any deduction of any fees or expenses incurred in connection with such application(s), of such refund to Defendants or as otherwise directed by Defendants.

## 13. NO ADMISSION

13.1    Except as set forth in ¶13.2 below, this Stipulation, whether or not consummated, and whether or not approved by the Court, and any discussion, negotiation, proceeding, or agreement relating to the Stipulation, the Settlement, and any matter arising in connection with settlement discussions or negotiations, proceedings, or agreements, shall not be offered or received against or to the prejudice of the Settling Parties or their respective counsel, for any purpose other than in an action to enforce the terms hereof, and in particular:

(a)    do not constitute, and shall not be offered or received against or to the prejudice of Defendants as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by Defendants with respect to the truth of any allegation by Lead Plaintiff and the Settlement Class, or the validity of any claim that has been or could have been asserted in the Action or in any litigation, including but not limited to the Releasing Plaintiffs' Claims, or of any liability, damages, negligence, fault or wrongdoing of the Released Defendants' Parties whatsoever;

(b)    do not constitute, and shall not be offered or received against or to the prejudice of Defendants as evidence of a presumption, concession, or admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by Defendants, or against or to the prejudice of Lead Plaintiff, or any other member of the Settlement Class as evidence of any infirmity in the claims of Lead Plaintiff, or the other members of the Settlement Class;

(c)    do not constitute, and shall not be offered or received against or to the prejudice of Defendants, Lead Plaintiff, any other member of the Settlement Class, or their respective counsel, as evidence of a presumption, concession, or admission with respect to any liability, damages, negligence, fault, infirmity, or wrongdoing, or in any way referred to for any other reason against or to the prejudice of any of the Defendants, Lead Plaintiff, other members of the Settlement Class, or their respective counsel, in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

(d)    do not constitute, and shall not be construed against Defendants, Lead Plaintiff, or any other member of the Settlement Class, as an admission or concession that the consideration to be given hereunder represents the amount that could be or would have been recovered after trial; and

(e)    do not constitute, and shall not be construed as or received in evidence as an admission, concession, or presumption against Lead Plaintiff, or any other member of

the Settlement Class that any of their claims are without merit or infirm or that damages recoverable under the Complaint would not have exceeded the Settlement Amount.

13.2    Notwithstanding ¶13.1 above, any of the Settling Parties or their respective counsel may file this Stipulation or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, statute of limitations, statute of repose, good-faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim, or to effectuate any liability protection granted them under any applicable insurance policy. The Settling Parties may file this Stipulation or the Judgment in any action that may be brought to enforce the terms of this Stipulation or the Judgment. All Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement.

## 14. MISCELLANEOUS PROVISIONS

14.1    All exhibits to the Stipulation, except any Plan of Allocation to the extent incorporated in those exhibits, and the Supplemental Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

14.2    The Settling Parties intend the Settlement to be the full, final, and complete resolution of all claims asserted or that could have been asserted by the Settling Parties with respect to the Released Claims and Released Defendants' Claims. Accordingly, the Settling Parties and their respective counsel agree not to assert in any forum that the Action was brought, prosecuted, or defended in bad faith or without a reasonable basis. The Settling Parties and their respective counsel agree that each has complied fully with Federal Rule of Civil Procedure 11 in connection with the maintenance, prosecution, defense, and settlement of the Action and shall not make any application for sanctions, pursuant to Rule 11 or other court rule or statute, with respect to any claim or defense in this Action. The Settling Parties agree that the amount paid and the other terms of the Settlement were negotiated at arm's-length and in good faith by the Settling Parties and their respective counsel and reflect a settlement that was reached voluntarily based

upon adequate information and after consultation with experienced legal counsel and with the assistance of the Mediator.

14.3    This Stipulation, along with its exhibits and the Supplemental Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by counsel for all Settling Parties, or their successors, that are affected by the modification, amendment, or waiver.

14.4    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

14.5    The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and any expenses and implementing and enforcing the terms of this Stipulation.

14.6    The waiver by one Settling Party of any breach of this Stipulation by any other Settling Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

14.7    This Stipulation, its exhibits, and the Supplemental Agreement constitute the entire agreement among the Settling Parties concerning the Settlement and supersedes any and all prior agreements, written or oral, between the Settling Parties.  No representations, warranties or inducements have been made concerning this Stipulation or its exhibits other than the representations, warranties and covenants contained and memorialized in such documents.

14.8    Nothing in the Stipulation, or the negotiations relating thereto, is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, attorney-client privilege, joint defense or common interest privilege, or work product protection.

14.9    Without further order of the Court, the Settling Parties may agree to reasonable extensions of time to carry out any of the provisions of this Stipulation.

14.10  All designations and agreements made, or orders entered during the course of the Action relating to the confidentiality of documents or information shall survive this Stipulation Within 30 days of the final disposition of this Action, all documents produced in this Action and designated as "Confidential," and all copies thereof, shall be promptly returned to the producing person, or, upon permission of the producing person, destroyed.

14.11  This Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Signatures sent by facsimile or via email in pdf format shall be deemed originals.

14.12  This Stipulation shall be binding when signed, but the Settlement shall be effective upon the entry of the Judgment and the payment in full of the Settlement Amount, subject only to the condition that the Effective Date will have occurred.

14.13  This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties.

14.14  The construction, interpretation, operation, effect, and validity of this Stipulation, and all documents necessary to effectuate it, shall be governed by the laws of the State of New York without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

14.15  This Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations among the Settling Parties, and all Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

14.16  All counsel and any other person executing this Stipulation and any of the exhibits hereto, or any related Settlement document, warrant and represent that they have the full authority to do so, and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

14.17    The Settling Parties and their respective counsel agree to cooperate fully with one another in promptly applying for preliminary approval by the Court of the Settlement and for the scheduling of a Settlement Hearing, and to agree promptly upon and execute all such other documentation as reasonably may be required to obtain Final approval by the Court of the Settlement.

14.18    Pending approval of the Court of this Stipulation and its exhibits, all proceedings in the Action shall be stayed and all Members of the Settlement Class shall be barred and enjoined from prosecuting any of the Released Claims against any of the Released Defendant Parties.

14.19    If any disputes arise out of the finalization of the settlement documentation or the Settlement itself prior to the application for preliminary approval of the Settlement as set forth in ¶9.1 above, those disputes will be resolved by the Mediator first by way of expedited telephonic mediation and, if unsuccessful, then by final, binding, non-appealable resolution by the Mediator.

14.20    Except as otherwise provided herein, the Settling Parties shall bear their own costs.

14.21    If any Settling Party is required to give notice to the other parties under this Stipulation, such notice shall be in writing and shall be deemed to have been duly given upon receipt by hand delivery, electronic mail, or facsimile transmission. Notice shall be provided to the counsel indicated on the signature block below. Notice shall be provided as follows:

If to Lead Plaintiff or Lead Counsel:

LEVI & KORSINSKY, LLP
Shannon L. Hopkins
Gregory M. Potrepka
1111 Summer Street, Suite 403
Stamford, CT  06905
shopkins@zlk.com
gpotrepka@zlk.com


If to Defendant Azure Power Global Limited:

DENTONS US LLP
Douglas W. Henkin
1221 Avenue of the Americas
New York, NY  10020

douglas.henkin@dentons.com

If to Defendants Gupta and Subramanian:

WILLKIE FARR & GALLAGHER LLP
Sameer Advani
787 Seventh Avenue
New York, NY 10019
sadvani@willkie.com

If to Defendant Agrawal:

COVINGTON & BURLING LLP
Mark P. Gimbel
The New York Times Building
620 Eighth Avenue
New York, NY 10018
mgimbel@cov.com

**IN WITNESS WHEREOF**, the Lead Plaintiff and Defendants have caused this Stipulation to be executed, by their duly authorized attorneys, as of April 11, 2025.

**LEVI & KORSINSKY, LLP**

*Shannon Hopkins*
4223DF3E2ADD402...

Shannon L. Hopkins
Gregory M. Potrepka
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel: (203) 992-4523
Fax: (212) 363-7171
shopkins@zlk.com
gpotrepka@zlk.com

*Lead Counsel for Lead Plaintiff
and the Settlement Class*

**DENTONS US LLP**

*Douglas.henkin@dentons.com*
A154C48DCCF3447...

Douglas W. Henkin
Drew W. Marrocco
Brian E. Cohen
1221 Avenue of the Americas
New York, NY 10020

40

Tel: (212) 768-6700
Fax:  (212) 768-6800
douglas.henkin@dentons.com
drew.marrocco@dentons.com
brian.cohen@dentons.com

*Attorneys for Defendant Azure Power Global*
*Limited*

**WILLKIE FARR & GALLAGHER LLP**

*Sameer Advani*

Sameer Advani
Amanda M. Payne
787 Seventh Avenue
New York, NY 10019
Tel: (212) 728-8000
Fax: (212) 728-8111
sadvani@willkie.com
apayne@willkie.com

*Attorneys for Defendants*
*Ranjit Gupta and Murali Subramanian*

**COVINGTON & BURLING LLP**

MARK GIMBEL

Mark P. Gimbel
Jordan S. Joachim
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Telephone: (212) 841-1000
Fax: (212) 596-9090
mgimbel@cov.com
jjoachim@cov.com

*Attorneys for Defendant Pawan Kumar*
*Agrawal*

41