**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SERAP LOKMAN, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>AZURE POWER GLOBAL LIMITED, RANJIT GUPTA, MURALI SUBRAMANIAN, and PAWAN KUMAR AGRAWAL,<br><br>    Defendants. | Case No. 1:22-cv-7432<br><br><br>Hon. Gregory H. Woods |

<u>**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**</u>

Dated: April 14, 2025

**LEVI & KORSINSKY, LLP**

Shannon L. Hopkins (SH-1887)
Gregory M. Potrepka (GP-1275)
Andrew E. Lencyk (AL-4329)
David C. Jaynes (admitted *pro hac vice*)
Morgan M. Embleton (admitted *pro hac vice*)
Amanda D. Foley (admitted *pro hac vice*)
1111 Summer Street, Suite 403
Stamford, CT 06905
Telephone: (203) 992-4523
shopkins@zlk.com
gpotrepka@zlk.com
alencyk@zlk.com
djaynes@zlk.com
membleton@zlk.com
afoley@zlk.com

*Counsel for Lead Plaintiff and*
*Lead Counsel for the Class*

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ................................................................................... 1
II.     SUMMARY OF THE LITIGATION AND SETTLEMENT............................................. 2
        A.   Factual Background and Procedural History ........................................................ 2
        B.   The Settlement .................................................................................................... 5
III.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ........................... 7
        A.   Lead Plaintiff and Lead Counsel Adequately Represented the Settlement Class.............. 9
        B.   The Settlement Was Reached After Arm's-Length Negotiations with the Assistance of an Experienced Mediator ........................................................................................ 10
        C.   The Settlement Benefit is Excellent and Provides Adequate Relief................................ 11
             1.   The Costs, Risks and Delay of Trial and Appeal Support Approval ............................ 12
             2.   The Proposed Methods for Distributing Relief Are Effective and Treat Settlement Class Members Equally ................................................................................ 14
        D.   The Remaining Rule 23(e)(2)(C) Factors Support Approval ........................................ 16
        E.   The Remaining *Grinnell* Factors are Neutral or Weigh in Favor of Approval................. 17
IV.     THE SETTLEMENT CLASS SHOULD BE CERTIFIED............................................. 19
        A.   The Settlement Class Satisfies the Requirements of Rule 23(a)...................................... 19
        B.   The Settlement Class Satisfies the Requirements of Rule 23(b)(3)................................. 22
V.      THE PROPOSED PLAN OF ALLOCATION SHOULD BE PRELIMINARILY APPROVED .................................................................................................................... 23
VI.     THE COURT SHOULD APPROVE THE FORM AND METHOD OF NOTICE ......... 24
VII.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS .............................................. 26
VIII.   CONCLUSION................................................................................................................. 27

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc., v. Windsor*,
521 U.S. 591 (1997)...................................................................................... 22, 23

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
568 U.S. 455 (2013).......................................................................................... 9

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000) ............................................................................ 21

*Balestra v. ATBCOIN LLC*,
2022 WL 950953 (S.D.N.Y. Mar. 29, 2022) .................................................. 7

*Becker v. Bank of New York Mellon Trust Co., N.A.*,
2018 WL 6727820 (E.D. Pa. Dec. 21, 2018)................................................. 15

*Burns v. Falconstor Software, Inc.*,
2014 WL 12917621 (E.D.N.Y. Apr. 10, 2014) ............................................ 16

*Cent. States SE & SW Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
504 F.3d 229 (2d Cir. 2007) .......................................................................... 21

*Christine Asia Co. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .................................... 8, 16, 24

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ............................................................................ 10

*Davenport v. Elite Model Mgmt. Corp.*,
2014 WL 12756756 (S.D.N.Y. May 12, 2014) ......................................... 18, 19

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006) .......................................................................... 19

*Fishoff v. Coty Inc.*,
2010 WL 305358 (S.D.N.Y. Jan. 25, 2010) .................................................. 13

*Gordon v. Vanda Pharmaceuticals Inc.*,
2022 WL 4296092 (E.D.N.Y. Sept. 15, 2022) .............................................. 23

*Hacker v. Elec. Last Mile Sols. Inc.*,
2024 WL 5102696 (D.N.J. Nov. 6, 2024) ................................................. 10, 11

*Hawaii Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Entertainment Holdings, Inc.*,
338 F.R.D. 205 (S.D.N.Y. 2021) ................................................................... 21

*In re 3D Sys. Sec. Litig.*,
2023 WL 5018625 (E.D.N.Y. June 5, 2023) ............................................ 12, 26

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014)................................................................... 25

*In re Agent Orange Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984) ...................................................................... 11

*In re Allergan PLC Sec. Litig.*,
2021 WL 4077942 (S.D.N.Y. Sept. 8, 2021).......................................................... 20

*In re Am. Bank Note Holographics*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001) .................................................................. 18

*In re Am. Int'l. Grp. Sec. Litig.*,
689 F.3d 229 (2d Cir. 2012) ................................................................................ 23

*In re Appharvest Sec. Litig.*,
2024 WL 967258 (S.D.N.Y. Mar. 6, 2024) ........................................................... 25

*In re Bear Stearns Cos.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012) ...................................................... 13, 14, 17

*In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*,
2022 WL 3220783 (S.D.N.Y. Aug. 5, 2022).......................................................... 16

*In re China Sunergy Sec. Litig.*,
2011 WL 1899715 (S.D.N.Y. May 13, 2011) ........................................................ 12

*In re Citigroup, Inc. Sec. Litig.*,
965 F. Supp. 2d 369 (S.D.N.Y. 2013) .................................................................. 15

*In re Facebook, Inc. IPO Sec. & Derivative Litig.,*
2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015).......................................................... 14

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
312 F.R.D. 332 (S.D.N.Y. 2015) .................................................................... 10, 22

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.,*
343 F. Supp. 3d 394 (S.D.N.Y. 2018) .................................................................. 12

*In re Gilat Satellite Networks, Ltd.*,
2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007) ........................................................ 13

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................... 12, 13

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019) .................................................................. 23

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) .................................................................... 18, 19

*In re Initial Pub. Offering Sec. Litig.*,
243 F.R.D. 79 (S.D.N.Y. 2007) ............................................................................. 7

*In re Marsh & McLennan Cos., Inc. Sec. Litig.,*
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ....................................................... 22

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) .......................................................................... 15

iv

*In re Merrill Lynch Tyco Research Sec. Litig.*,
   249 F.R.D. 124 (S.D.N.Y. 2008) .................................................................................. 17

*In re Mylan N.V. Sec. Litig.*,
   2023 WL 2711552 (S.D.N.Y. Mar. 30, 2023) ............................................................. 13

*In re N. Dynasty Minerals*,
   2023 WL 5511513 (E.D.N.Y. Aug. 24, 2023) ............................................................. 25

*In re Patriot Nat'l, Inc. Sec. Litig.*,
   828 F. App'x 760 (2d Cir. 2020) ............................................................................... 9, 22

*In re Pfizer Inc. Sec. Litig.*,
   282 F.R.D. 38 (S.D.N.Y. 2012) ................................................................................... 20

*In re PPDAI Grp. Inc. Sec. Litig.*,
   2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) .................................................................. 3

*In re Signet Jewelers Ltd. Sec. Litig.*,
   2019 WL 3001084 (S.D.N.Y. July 10, 2019) .............................................................. 20

*In re Take Two Interactive Sec. Litig.*,
   2010 WL 11613684 (S.D.N.Y. June 29, 2010) ....................................................... 25, 26

*In re Tenaris S.A. Sec. Litig.*,
   2024 WL 1719632 (E.D.N.Y. Apr. 22, 2024) ............................................................. 16

*In re Tesla Inc., Sec. Litig.*,
   2023 WL 4032010 (N.D. Cal. June 14, 2023) ............................................................. 13

*In re Twinlab Corp. Sec. Litig.*,
   187 F. Supp. 2d 80 (E.D.N.Y. 2002) ........................................................................... 21

*In re Veeco Instr., Inc. Sec. Litig.*,
   235 F.R.D. 220 (S.D.N.Y. 2006) ............................................................................ 22, 23

*In re WorldCom, Inc. Sec. Litig.*,
   219 F.R.D. 267 (S.D.N.Y. 2003) ................................................................................. 22

*Lafrano v. Loandepot, Inc.*,
   2023 WL 12023569 (C.D. Cal. Dec. 8, 2023) ............................................................. 15

*Lapin v. Goldman Sachs & Co.*,
   254 F.R.D. 168 (S.D.N.Y. 2008) ................................................................................. 21

*McIntosh v. Katapult Holdings, Inc.*,
   2024 WL 5118192 (S.D.N.Y. Dec. 13, 2024) ............................................................. 10

*Micholle v. Ophthotech Corp.*,
   2022 WL 1158684 (S.D.N.Y. Mar. 14, 2022) ............................................................. 23

*Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
   2021 WL 76328 (S.D.N.Y. Jan. 7, 2021) .................................................................... 11

*P.R. Gov't Judiciary Empls. Ret. Sys. Admin. v. Marcum, LLP*,
   2018 WL 889472 (S.D.N.Y. Feb. 1, 2018) .................................................................. 11

*Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*,
  772 F.3d 111 (2d Cir. 2014) .............................................................................................. 19

*Pearlstein v. BlackBerry Ltd.*,
  2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022)................................................................... 11, 13

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ......................................................................................... 14

*Rodriguez v. CPI Aerostructures, Inc.*,
  2021 WL 9032223 (E.D.N.Y. Nov. 10, 2021)................................................................... 20

*Seijas v. Republic of Argentina*,
  606 F.3d 53 (2d Cir. 2010) ................................................................................................ 22

*Venkataraman v. Kandi Techs. Grp., Inc.*,
  2024 WL 4345571 (S.D.N.Y. Sept. 28, 2024) .................................................................. 19

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) .......................................................................................... 7, 8, 9

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982) ................................................................................................ 19

## Other Authorities

Edward Flores and Svetlana Starykh, Recent Trends in Securities Class Action Litigation, 2024
  Full-Year Review) (NERA Jan. 22, 2025) .......................................................................... 12

## Rules

Fed. R. Civ. P. 23............................................................................................................... passim

Lead Plaintiff Serap Lokman ("Lead Plaintiff" or "Plaintiff") respectfully submits this memorandum in support of her unopposed motion for an order preliminarily approving the proposed Settlement[1] of this Action (the "Preliminary Approval Order"). The Settlement provides a $23 million cash recovery for the benefit of the Settlement Class in exchange for fully resolving all claims that were or could have been alleged herein. The Settlement is an excellent result for the Settlement Class and the result of Lead Plaintiff's and Lead Counsel's vigorous litigation, and extensive mediation efforts. Lead Plaintiff now moves the Court to: (1) preliminarily approve the proposed Settlement as set forth in the Stipulation dated April 11, 2025; (2) certify a Settlement Class for purposes of effectuating this Settlement; (3) approve the form and plan of notice to the Settlement Class; and (4) schedule a final approval hearing at which this Court will, among other things, make a final determination as to whether the Settlement is fair, reasonable, and adequate.

## I.  PRELIMINARY STATEMENT

After litigating this Action for almost two and a half years, Lead Plaintiff negotiated a Settlement that resolves all claims against for $23 million in cash. The Settlement is the result of extensive, informed arm's-length negotiations among the parties by experienced counsel, which included a full-day mediation session before a mediator highly-experienced in securities class actions, Michelle Yoshida, Esq. of Phillips ADR Enterprises (the "Mediator"), and numerous subsequent discussions among the parties and Ms. Yoshida for over a month, ultimately resulting in an agreement in principle to resolve the Action. Lead Plaintiff, who attended the mediation session, and Lead Counsel were well-informed of the strengths and weaknesses of the Action at the time Settlement was reached, having conducted a thorough investigation relating to the claims,

---

[1] Capitalized terms not otherwise defined herein shall have the same meanings a in the Stipulation and Agreement of Settlement ("Stipulation"), filed concurrently herewith. Except where otherwise indicated, references to "¶" are to paragraphs in Plaintiff's Second Amended Class Action Complaint ("SAC") (ECF 80).

defenses, events and transactions that are the subject of the Action, as well as analysis of the maximum potential damages, possible collectability issues, and practical impediments, including litigating this Action with all Defendants located in India.

While Lead Plaintiff believes her claims are meritorious, she recognizes the significant risks of continued litigation, including that the Court has not ruled on Defendants' motions to dismiss the SAC; the class has not yet been certified; discovery would be a complicated, lengthy, and costly process and uncertain to yield satisfactory results as the documents, Defendants and witnesses are mostly located in India, some of the relevant events occurred over six years ago, and there were indications of potential evidence spoliation; and collectability risks because all Defendants are located in India where there could be complications in enforcing any judgment.

The Settlement Amount of $23,000,000 represents a recovery of approximately 16.3% of estimated aggregate damages for Settlement Class Members' claims under Section 10(b) of the Securities Exchange Act ("Exchange Act") of approximately $141.2 million. This compares very favorably to settlements in similar cases and is an excellent recovery for the Settlement Class.

As shown below, the Settlement is fair, reasonable and adequate, certification of a Settlement Class is warranted, and the proposed content and manner of providing notice satisfies the requirement of Fed. R. Civ. P. 23, the Private Securities Litigation Reform Act of 1995 ("PSLRA") and due process. Therefore, the Court should preliminarily approve the Settlement.

## II.     SUMMARY OF THE LITIGATION AND SETTLEMENT

### A.     Factual Background and Procedural History[2]

Azure is a power producer and solar energy provider headquartered in New Delhi, India, whose shares were listed for trading on the N.Y. Stock Exchange ("NYSE"). Azure derives

---

[2] Additional facts relevant to this Motion are attested to in the Declaration of Shannon L. Hopkins in Support of Lead Plaintiff's Unopposed Motion for Preliminary Approval of Class Action, submitted herewith ("Hopkins Decl.").

revenue from the sale of power to customers in several regions in India, including government utilities. In 2019, after Azure's original founder stepped down, Defendants Gupta and Subramanian became Azure's CEO and COO, respectively, and Defendant Agrawal became CFO, to form a new leadership team. ¶¶17-19, 58.

The SAC alleges that, during at least June 15, 2021 to July 13, 2023,[3] Defendants violated Section 10(b) and 20(a) of the Exchange Act by making materially false and misleading statements and failing to disclose material facts in Azure's filings with the U.S. Securities and Exchange Commission ("SEC"), including in annual reports on Form 20-F, and other public statements. In particular, Lead Plaintiff alleges that Defendants made materially false and misleading statements concerning Azure's claimed compliance with anti-corruption and anti-bribery laws, winning of project bids, commissioning of projects, and certain related operating metrics, when certain of these bids and projects were won by, and fraught with, corruption and other infirmities. Lead Plaintiff alleges these improprieties later caused a delay in filing Azure's SEC filings, the departures of Defendants Gupta and Subramanian, resignation of its auditors, delisting of Azure equity shares from trading on the NYSE, and substantial damages to investors who acquired Azure equity shares at artificially inflated prices due to the misrepresentation and omission of these facts. ¶¶107-56.

On August 30, 2022, an initial class action complaint was filed in this Court, asserting claims under the federal securities laws against Azure and certain of its officers and directors. On December 8, 2022, the Court appointed Serap Lokman as Lead Plaintiff. ECF Nos. 1, 38.

---

[3] Recent revelations, discussed *infra*, post-dating the SAC indicate Defendants' statements and omissions before and after this time period may have been materially misleading, thus the Settlement Class Period is broader than stated in the SAC. *See* Hopkins Decl. ¶15 & n.2; *In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at *3 n.5 (E.D.N.Y. Jan. 21, 2022) (different Settlement Class Period "does not alter" fairness analysis).

On February 21, 2023, after extensive further investigation, Lead Plaintiff filed her First Amended Class Action Complaint.  On April 7, 2023, Defendants filed a pre-motion conference letter setting forth the bases of their anticipated motions to dismiss, and on April 12, 2023, Lead Plaintiff submitted her response. At the April 17, 2023 pre-motion conference, in light of recent developments at Azure, including the delayed filing of Azure's 2022 annual report on Form 20-F which Lead Plaintiff asserted was relevant to her allegations, the Court directed that the parties report by July 31, 2023, after the anticipated filing of Azure's 2022 Form 20-F on July 15, 2023 (the NYSE's filing deadline), regarding the parties' proposed schedule for the filing of a contemplated second amended complaint.  ECF Nos. 46, 58, 60-61.

On July 31, 2023, Lead Plaintiff notified the Court that (i) Azure had been unable to file its annual report Form 20-F on July 15, 2023, (ii) Azure's external auditor had resigned on July 10, 2023, and (iii) Azure would be unable to file its Form 20-F for at least an additional 14 weeks. On August 1, 2023, the Court directed that Lead Plaintiff file her SAC within 28 days after Azure filed its 2022 Form 20-F.  Azure ultimately filed its 2022 Form 20-F on October 12, 2023.  ECF Nos. 63-64; Hopkins Decl. ¶8.

In October 2023, Lead Plaintiff submitted requests under the Freedom of Information Act ("FOIA") to the U.S. Department of Justice ("DOJ") and the SEC related to the allegations in this Action.  Hopkins Decl. ¶9.

On November 9, 2023, Lead Plaintiff filed her SAC, alleging claims against defendants Azure, Gupta, Subramanian and Agrawal.  On November 13, 2023, Azure shares were delisted from the NYSE for failure to meet filing deadlines.  On January 5, 2024, Defendants filed pre-motion conference letters in anticipation of their motions to dismiss the SAC, Lead Plaintiff filed her opposition thereto on January 18, 2024, and on February 6, 2024, the Court held a pre-motion

conference at which it permitted Defendants to file their motions to dismiss the SAC.  ECF Nos. 80, 88-91, 96, 99; Hopkins Decl. ¶¶8, 10.

On March 22, 2024, Defendants filed two separate motions to dismiss the SAC and extensive supporting papers. On May 6, 2024, Lead Plaintiff filed her omnibus opposition thereto, and on May 28, 2024, Defendants filed their replies.  ECF Nos. 102-11.

On November 20, 2024, the DOJ announced proceedings relating to one of the Defendants and certain related parties concerning an alleged corruption and bribery scheme, and unsealed an indictment. The indictment, *inter alia*, charged Defendant Gupta, among others, with violations of Conspiracy to Violate the Foreign Corrupt Practices Act (the "Indictment"). Simultaneously, the SEC filed two parallel actions based on similar misconduct, including alleged bribery-related misconduct against an outside Azure director, Cyril Cabanes, who had served on Azure's board as a representative of the Company's largest stockholder, Caisse de dépôt et placement du Québec ("CDPQ").  By letter dated November 25, 2024, Lead Plaintiff notified the Court of, and submitted, the Indictment and the SEC complaints, and indicated that, depending on the outcome of a scheduled mediation, Lead Plaintiff would advise the Court of its intent to amend or supplement the SAC with facts from the Indictment and the SEC complaints.  ECF No. 114.

**B.      The Settlement**

During September 2024, the parties began discussing the possibility of mediation to resolve this Action.  In connection therewith, Defendants produced certain documents to Lead Plaintiff. Lead Plaintiff also consulted with experts on damages and causation.  The parties agreed to hold a mediation before Mediator Michelle Yoshida on December 4, 2024.  Both parties submitted extensive materials to the Mediator, including the Indictment and SEC complaints. Hopkins Decl. ¶¶12-14.

The December 4, 2024 full-day mediation was unsuccessful in resolving the Action (*see* ECF No. 115), but the parties continued discussions with the assistance of the Mediator over the following weeks.  On January 6, 2025, the parties agreed in principle to settle the Action, and on January 10, 2025, executed a Term Sheet memorializing the Settlement Amount and other key terms, and notified the Court of their agreement to settle the Action. The parties then executed the Stipulation which (together with the exhibits thereto) reflects the final and binding agreement between the parties, subject to the Court's approval.  Hopkins Decl. ¶15.

As provided in the Stipulation, Azure, on behalf of Defendants, shall pay or cause to be paid the Settlement Amount of $23,000,000 into the Escrow Account following issuance of the Preliminary Approval Order.  Stipulation, ¶3.1.  The Settlement Fund shall be used to pay Taxes and Tax Expenses, Notice and Administration Expenses, any attorneys' fees and expenses awarded by the Court, and any Lead Plaintiff Award, and the balance (the "Net Settlement Fund") will be distributed to Authorized Claimants on a *pro rata* basis pursuant to the proposed Plan of Allocation contained in the Notice. *Id.* ¶¶4.1-4.2, 7.1-7.5. In exchange, Lead Plaintiff and the Settlement Class will release all Releasing Plaintiffs' Claims against the Released Defendants' Parties. *Id.* ¶¶2.3-3.1.

Under the Settlement, the Parties have agreed to certification of the following Settlement Class for settlement purposes only: all Persons and entities that purchased or otherwise acquired Azure equity shares between January 1, 2020 and November 20, 2024, inclusive, and were damaged thereby.[4] *See* Stipulation ¶1.39.

---

[4] Excluded from the Settlement Class are Defendants, the officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors, or assigns, any entity in which Defendants have or had a controlling interest, Azure shareholders CDPQ and Ontario Municipal Employees Retirement System ("OMERS"), and all current and former affiliates, employees, officers, directors, and representatives of CDPQ and OMERS, respectively. Also excluded is any Person who would otherwise be a Member of the Settlement Class, but

III.   **THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED**

The Second Circuit favors the settlement of disputed claims, particularly in class actions. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("*Visa*") ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'"). A class action settlement should be approved if the court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "Review of a proposed class action settlement generally involves a two-step process: preliminary approval and a subsequent 'fairness hearing.'" *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007). The court first performs a preliminary review to determine whether notice should be sent to the class; and after notice is sent and a hearing is scheduled, the court makes a final determination of whether the settlement is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2); *Balestra v. ATBCOIN LLC*, 2022 WL 950953, at *2 (S.D.N.Y. Mar. 29, 2022). "Preliminary approval is typically granted 'where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval.'" *Id.*

Rule 23(e)(1) provides that preliminary approval should be granted where "the parties[] show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1). As set forth below, this Settlement satisfies both prongs.

Rule 23(e)(2), as amended on December 1, 2018, provides that the Court should determine whether a proposed settlement is "fair, reasonable, and adequate" after considering whether:

(A) the class representatives and class counsel have adequately represented the class; (B)

---

who validly and timely has submitted, or submits, a Request for Exclusion in accordance with the requirements set by the Court. Stipulation ¶1.39. CDPQ and OMERS were excluded as their nominees served on Azure's Board of Directors during the relevant time period. *See* Hopkins Decl. ¶15 & n.2.

the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  All of these factors support Settlement approval here.

Historically, the Second Circuit has held that district courts should consider the following factors set forth in *City of Detroit v. Grinnell Corp.* in evaluating a class-action settlement (the "Grinnell Factors"):

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d 448, 463 (2d Cir. 1974) (internation citations omitted); *see also Visa*, 396 F.3d at 117.

The Advisory Committee Notes to the 2018 amendments indicate that the four factors set forth in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the Court of Appeals, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ P. 23(e)(2) (Advisory Committee Notes, 2018 Amendments).

Accordingly, Lead Plaintiff will discuss the fairness, reasonableness, and adequacy of the Settlement principally in relation to the four factors set forth in Rule 23(e)(2), but will also discuss the application of relevant, non-duplicative *Grinnell* factors. *See Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *9 (S.D.N.Y. Oct. 16, 2019) ("The Court understands the new Rule 23(e) factors to add to, rather than displace, the *Grinne[ll]* factors.").

8

**A.      Lead Plaintiff and Lead Counsel Adequately Represented the Settlement Class**

Lead Plaintiff and Lead Counsel readily satisfy Rule 23(e)(2)(A)'s "adequate representation" requirement, which focuses on the "alignment of interests between class members," and the qualifications of plaintiffs' counsel. *See In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 764-65 (2d Cir. 2020); *Visa*, 396 F.3d at 106-07.

First, there is no conflict between Lead Plaintiff and the proposed Settlement Class. Lead Plaintiff and Settlement Class Members assert the same claims under the same legal theory and were injured by the same alleged misrepresentations and omitted facts over the same Settlement Class Period. The underlying proof necessary for Lead Plaintiff to prevail is the same as that required to prove the claims of the rest of the Settlement Class, and Lead Plaintiff and the Settlement Class share a common goal of maximizing recovery.  *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460 (2013) (the investor class "will prevail or fail in unison" because claims are based on common misrepresentations and omissions); *Patriot*, 828 F. App'x at 764 (finding adequacy where "lead plaintiffs were sufficiently motivated to recover as much as possible for each class member.").

Second, Lead Plaintiff retained counsel highly experienced in securities litigation, with a long and successful track record of representing investors in such cases. *See* Hopkins Decl. ¶¶16-17 & Ex. 1 thereto (firm résumé). As described in the Hopkins Decl., Lead Counsel vigorously prosecuted the Settlement Class's claims for nearly three years, including (i) conducting a thorough investigation of the claims alleged in the Action, encompassing events in India and interviews with former Azure employees; (ii) drafting two detailed amended complaints and preparing a third amended complaint after the DOJ indictment and SEC complaints were publicly released; (iii) effecting service on Defendants based in India, (iv) preparing detailed responsive submissions to Defendants' separate motions to dismiss and premotion letters; (v) propounding

FOIA requests; (vi) reviewing and analyzing Azure's public filings, the DOJ Indictment and SEC complaints and publicly available information concerning those investigations, reports of securities and financial analysts about Azure, and other information concerning Azure and the industry in which it operates; (vii) consulting with experts on damages and causation, and (viii) participating in extensive mediation efforts and negotiations, resulting in a favorable Settlement against skilled opposing counsel.[5]   Hopkins Decl. ¶18. *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 345 (S.D.N.Y. 2015) (counsel "highly qualified" where they "prosecuted this action vigorously, their efforts resulting in surviving a motion to dismiss against some of the finest firms in the nation.").

### B.    The Settlement Was Reached After Arm's-Length Negotiations with the Assistance of an Experienced Mediator

Rule 23(e)(2)(B) evaluates whether the proposed settlement "was negotiated at arm's length." Here, the proposed Settlement was the product of extensive arm's-length negotiations, facilitated by a highly-experienced mediator, between highly-experienced counsel. The proposed Settlement was achieved only after a full-day mediation session followed by negotiations over the following weeks, all overseen by Ms. Yoshida. Hopkins Decl. ¶¶12-15; s*ee D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *McIntosh v. Katapult Holdings, Inc.*, 2024 WL 5118192, at *3, 9 (S.D.N.Y. Dec. 13, 2024) (noting that fact settlement was negotiated "before a neutral and experienced mediator"—Ms. Yoshida— supported presumption of fairness); *Hacker v. Elec. Last Mile Sols. Inc.*, 2024 WL 5102696, at *8

---

[5] Defendants are represented by Dentons US LLP, Willkie Farr & Gallagher LLP and Covington & Burling LLP, some of the most preeminent firms in the country.

(D.N.J. Nov. 6, 2024) (same). This arm's-length process supports a presumption of fairness, free of fraud or collusion.

###### C.    The Settlement Benefit is Excellent and Provides Adequate Relief

The Settlement provides an excellent and immediate recovery for the Class, and is fair, reasonable, and adequate considering "the costs, risks, and delay of trial and appeal" and other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). The Settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984).

Here, the Settlement provides a non-reversionary cash payment of $23.0 million for the benefit of the Settlement Class.  This is an excellent result given the significant risks of continued litigation. Moreover, after consultation with experts on damages and considering Defendants' negative causation defenses, Lead Plaintiff believes that the maximum damages the Settlement Class could recover for the Section 10(b) claims are $141.2 million. *See* Declaration of Kenneth N. Kotz ("Kotz Decl.") (Ex. 2 to Hopkins Decl.), ¶¶17-18. The $23 million Settlement thus represents a recovery of approximately 16.3% of the maximum likely recoverable damages if Plaintiffs prevailed at trial, well above the range of average recovery in shareholder litigation. *See, e.g., Pearlstein v. BlackBerry Ltd.*, 2022 WL 4554858, at *6 (S.D.N.Y. Sept. 29, 2022) (approving recovery of 13.75% of maximum damages as "considerably above the high end of historical averages"); *Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 2021 WL 76328, at *3 (S.D.N.Y. Jan. 7, 2021) (approving recovery of 10% of estimated damages and citing recoveries in this District of between 3% to 11% of estimated damages); *P.R. Gov't Judiciary Empls. Ret. Sys. Admin. v. Marcum, LLP*, 2018 WL 889472, at *3 (S.D.N.Y. Feb. 1, 2018) (approving settlement that was 5.6% to 6.9% of estimated class damages of between $15.94 million and

$19.64 million); *In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) (noting "average settlement amounts" over past decade ranged from "'3% to 7% of the class members' estimated losses.'"). The percentage recovery here also exceeds the 1.2% median settlement value in 2024 for all securities class actions, and the 3.0% median recovery for securities class action settlements in the $100-199 million range between January 2015-December 2024. *See* Hopkins Ex. 3 (Edward Flores and Svetlana Starykh, Recent Trends in Securities Class Action Litigation, 2024 Full-Year Review (NERA Jan. 22, 2025)), at 26-27 (Fig. 23-24).

### 1. The Costs, Risks and Delay of Trial and Appeal Support Approval

The Settlement's $23 million recovery is particularly favorable when considered against the substantial cost, risks, and delay of continued litigation.[6] Securities class actions are notoriously complex, often taking exceptionally long to litigate, making settlement favorable. *See In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 343 F. Supp. 3d 394, 409 (S.D.N.Y. 2018) ("securities class actions are recognized by courts as 'notably difficult and notoriously uncertain to litigate.'"). Continued litigation of this Action would have been especially costly, risky and lengthy, favoring settlement.

For example, while Lead Plaintiff believes her claims were meritorious, she recognized that, *inter alia*, (i) the Court has not ruled on Defendants' motions to dismiss the SAC, which could have resulted in a dismissal in whole or in part of the case, including on scienter grounds; (ii) the class has not yet been certified, and "even if plaintiffs could obtain class certification, there could be a risk of decertification at a later stage," *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D.

---

[6] This "factor "subsumes several *Grinnell* factors,' including the complexity, expense and likely duration of litigation, the risks of establishing liability, the risks of establishing damages, and the risks of maintaining the class through trial' (factors 1, 4, 5, and 6)." *In re 3D Sys. Sec. Litig.*, 2023 WL 5018625, at *9 (E.D.N.Y. June 5, 2023). The discussion here also addresses *Grinnell* factors 8 and 9 ("the range of reasonableness of the settlement fund in light of the best possible recovery" and in light of all "the attendant risks of litigation").

436, 460 (S.D.N.Y. 2004); (iii) discovery would be a complicated, lengthy, and costly process (including likely having to pursue several Letters Rogatory under the Hague Convention on Taking Evidence Abroad), especially since the documents, Defendants and witnesses are mostly located in India, some of the relevant events had taken place over six years ago, and there were indications of partial spoliation of evidence,[7] *see, e.g., In re Gilat Satellite Networks, Ltd.*, 2007 WL 1191048, at *10 (E.D.N.Y. Apr. 19, 2007) (finding complications of foreign discovery weighed in favor of settlement); (iv) Lead Plaintiff faced additional risks on summary judgment, particularly if discovery did not yield documents or testimony substantiating her claims—a risk heightened by the foreign discovery and indications of potential spoliation here—and at trial (where Plaintiffs would be unable to compel most witnesses to testify due to their location in India); and (v) the subject matter of the Action was complicated, including complex power contracts, alleged bribery schemes, and accounting restatement issues, and added to the risk that a jury might not understand or be persuaded about the wrongdoing alleged here.[8]

Additionally, Defendants continue to deny all of Lead Plaintiff's allegations and would likely contest falsity, materiality, scienter, and loss causation at trial. For example, Defendants have contended throughout the Action that the alleged misstatements and omissions were not material, let alone misleading. Defendants would also likely argue that Plaintiffs cannot demonstrate scienter, as they argued in their motions to dismiss.[9] Further, loss causation and damages issues often become a "'battle of the experts,'" the outcomes of which are notoriously uncertain. *Pearlstein*, 2022 WL 4554858, at *5; *In re Bear Stearns Cos., Inc. Sec., Deriv., &*

---

[7] *See* ECF No. 114-1 (Indictment), ¶¶38, 77.

[8] *See In re Tesla Inc., Sec. Litig.*, 2023 WL 4032010 (N.D. Cal. June 14, 2023) (defendants prevailed at trial despite summary judgment for *plaintiffs* on falsity and scienter, and SEC settlement based on same alleged conduct); *In re Mylan N.V. Sec. Litig.*, 2023 WL 2711552 (S.D.N.Y. Mar. 30, 2023) (defendants prevailed on summary judgment despite DOJ and state Attorney General prosecutions).

[9] Scienter is often considered "the most difficult and controversial aspect of a securities fraud claim." *Fishoff v. Coty Inc.*, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010).

*ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012). Such risks militate in favor of settlement, particularly because it is difficult to predict how juries will decide complex, contested issues. *Id.; In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at *5 (S.D.N.Y. Nov. 9, 2015). Even if Plaintiffs succeeded at trial, they would likely face post-verdict motions and appeals, further prolonging the time for recovery for the Settlement Class and risking a potential loss on appeal. *See Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict reversed on appeal and judgment entered for defendant). Moreover, even if Plaintiffs prevailed at trial and appeal, continued litigation presented risks of collectability as Defendants are all located in India,[10] and Azure's future ability to pay is not assured (*see* §III.E. *infra*). Given the complexities, uncertainties, and expense inherent in continued litigation, the proposed Settlement is in the best interests of the Class, providing a favorable, immediate cash recovery.

### 2. The Proposed Methods for Distributing Relief Are Effective and Treat Settlement Class Members Equally

Rule 23(e)(2)(C)(ii) requires that the method of distributing relief to the class be effective, and Rule 23(e)(2)(D) requires evaluation of whether the Settlement treats class members equitably relative to one another. The Settlement satisfies these standards.

First, the Settlement calls for an experienced Claims Administrator, Angeion Group, LLC ("Angeion"), to process claims and equitably distribute the Net Settlement Fund on a *pro rata* basis to Settlement Class Members who file valid claims, based on each Member's Recognized Loss, under well-established procedures. Angeion was selected by Lead Counsel after a competitive bidding process (subject to Court approval), and its qualifications are set forth in the Declaration of Brett Wilmot Regarding Angeion Group, LLC's Qualifications and Proposed

---

[10] *See, e.g.,* https://www.jdsupra.com/legalnews/out-of-the-frying-pan-the-complexity-of-79646/ ("Victory in a U.S. court against an Indian entity can quickly become bittersweet if the judgment needs to be enforced in India"; noting that difficulties in enforcing non-arbitration awards stem partly from the U.S. being a "non-reciprocating territory").

Notice Plan ("Wilmot Decl.") (Ex. 4 to Hopkins Decl.).  *See also LaFrano v. Loandepot, Inc.*, 2023 WL 12023569, at \*11 (C.D. Cal. Dec. 8, 2023) ("Angeion has significant experience administering class actions"). Angeion will process claims under Lead Counsel's guidance and provide Settlement Class Members with an opportunity to cure deficiencies in their claims. Thereafter, Angeion will audit the claims received and evaluate the proposed distribution following the Plan of Allocation. Lead Counsel will then move the Court for an order of distribution permitting funds to be sent to eligible claimants. Claims processing, like the method proposed here, is standard in securities class action settlements. It has been long found to be effective, and necessary, as neither Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund. *See Becker v. Bank of New York Mellon Trust Co., N.A.*, 2018 WL 6727820, at \*7 (E.D. Pa. Dec. 21, 2018) ("[t]he requirement that class members submit documentation to substantiate their holdings … will facilitate the filing of legitimate claims, yet is not overly demanding given the range of permissible documentation.").

Second, the Settlement easily satisfies the Rule 23(e)(2)(D) criteria that the Settlement treat class members equitably relative to one another. Under the proposed Plan of Allocation described in the Notice (Ex. A-1 to the Stipulation) and summarized *infra*, each Authorized Claimant will receive a *pro rata* share of the Net Settlement Fund, which shall be the Authorized Claimant's Recognized Loss divided by the total of Recognized Losses of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. Lead Plaintiff will receive the same *pro rata* recovery under the Plan of Allocation as all other Settlement Class Members.  Courts have repeatedly approved similar plans. *See, e.g., In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010).

### D.    The Remaining Rule 23(e)(2)(C) Factors Support Approval

Rule 23(e)(2)(C) provides that adequacy should also be assessed considering "the terms of any proposed award of attorney's fees, including timing of payment[,]" and "any agreement required to be identified under Rule 23(e)(2)[.]" Rule 23(e)(2)(C)(iii)-(iv). Both factors support preliminary approval.

First, as disclosed in the Notice, Lead Counsel will be applying for a contingent-fee award not to exceed one-third of the Settlement Amount to compensate them for the services they have rendered on behalf of the Settlement Class. The requested fee is reasonable for the work performed and the results obtained, and consistent with awards in similar complex class actions. *See, e.g.*, *In re Tenaris S.A. Sec. Litig.*, 2024 WL 1719632, at *10 (E.D.N.Y. Apr. 22, 2024) (approving "an award of attorneys' fees in the amount of one third or 33 1/3% of the" settlement amount and noting "[d]istrict courts within the Second Circuit routinely approve attorneys' fees awards of one third or 33 1/3% as reasonable"); *In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, 2022 WL 3220783, at *1 (S.D.N.Y. Aug. 5, 2022) (awarding 33-1/3% of $44 million settlement); *Burns v. FalconStor Software, Inc.*, 2014 WL 12917621, at *10 (E.D.N.Y. Apr. 11, 2014) (finding fee award of 33.3% "reasonable" based on lodestar cross-check multiplier of 4.75).  Notably, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling regarding attorneys' fees. *See* Stipulation ¶¶5.7, 12.1.

Second, the Parties have entered into a confidential agreement establishing certain conditions under which Defendants may terminate the Settlement if Settlement Class Members who collectively purchased more than a certain percentage of Azure equity shares submit valid and timely requests for exclusion ("opt out") from the Settlement.  Such an agreement "is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *See, e.g.*, *Christine Asia*, 2019 WL 5257534, at *15.

16

**E.    The Remaining *Grinnell* Factors are Neutral or Weigh in Favor of Approval**

*Grinnell* also outlined additional factors that are not co-extensive with Rule 23(e)(2)'s new factors. These factors, viewed in light of the Rule 23(e)(2) factors identified above, also support or are neutral with respect to final approval. However, "[a] court need not find that every factor militates in favor of a finding of fairness; rather, a court consider[s] the totality of these factors in light of the particular circumstances." *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 134 (S.D.N.Y. 2008) (internal quotations omitted).

**The Reaction of the Settlement Class:** The second *Grinnell* factor—the reaction of the class—overlaps with Rules 23(c)(2)(B)(v)-(vi), on the opportunity for exclusion, and 23(e)(5), on the opportunity to object. As required by Rule 23(c)(2)(B)(vi) and (e)(5), the Settlement affords Settlement Class Members the opportunity to request exclusion from, or object to, the Settlement. *See* Stipulation, A-1 (Notice). However, since Notice has not yet been sent to the Settlement Class, it is premature to assess its reaction; thus, for now this factor is neutral.

**Stage of Proceedings and Amount of Discovery:** The third *Grinnell* factor examines "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement[.]" *Bear Stearns*, 909 F. Supp. 2d at 267.  Here, Lead Plaintiff and Lead Counsel undertook extensive discovery and investigation of their allegations, and are therefore well-equipped to evaluate the Settlement and the strengths and weaknesses of their claims. They conducted an extensive investigation, including overseas, and thoroughly assessed the merits of their claims, in filing two amended complaints (and preparing a third for filing at the time settlement was reached); researched and filed multiple premotion conference letters in connection with Defendants' motions to dismiss; opposed Defendants' motions to dismiss and related submissions, filing a 73-page opposition brief;

17

consulted with damage experts; served FOIA requests; thoroughly reviewed Azure's public filings and other publicly-available information, including related governmental filings; prepared for and participated in a full-day mediation session and numerous follow-up negotiations; and evaluated class certification and collectability. Thus, Lead Plaintiff and Lead Counsel were well informed to assess the Settlement. Hopkins Decl. ¶¶16-19. *See In re IMAX Sec. Litig.*, 283 F.R.D. 178, 190 (S.D.N.Y. 2012) ("The threshold necessary to render the decisions of counsel sufficiently well informed, however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties."); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425-26 (S.D.N.Y. 2001) ("'To approve a proposed settlement ... the Court need not find that the parties have engaged in extensive discovery… Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make ... an appraisal of the Settlement.'") (citations omitted).

**Ability to Withstand a Greater Judgment:** Although Defendants may have been able to withstand a greater judgment now, this was not assured in the future, particularly with Azure's delisting, and its insurers' denials of coverage; and "[their] ability to do so, 'standing alone, does not suggest that the settlement is unfair.'" *Davenport v. Elite Model Mgmt. Corp*., 2014 WL 12756756, at *7 (S.D.N.Y. May 12, 2014) (citation omitted); *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010) ("Courts have recognized that the defendant's ability to pay is much less important than other factors, especially where 'the other *Grinnell* factors weigh heavily in favor of settlement approval.'"). If the litigation continued for several more years through trial and appeals, there is a possibility that Azure would be in a more difficult financial situation and have less of an ability to fund the Settlement. Further, enforcing a judgment after a verdict could prove difficult and expensive, considering that all Defendants, including Azure,

18

reside in India. Thus, this factor is at best "neutral and does not preclude the Court from granting final approval." *Davenport*, 2014 WL 12756756, at *7.

In sum, all of the factors to be considered under Rule 23(e)(2), as well as *Grinnell*, support a finding that the Settlement is fair, reasonable and adequate, and merits preliminary approval.

## IV.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED

Lead Plaintiff also seeks certification of a Settlement Class (as defined above).  The Second Circuit has long acknowledged that courts may properly certify a class to effectuate a class action settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 72 (2d Cir. 1982). Indeed, certification of a settlement class "'has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants.'" *IMAX*, 283 F.R.D. at 186. Because the proposed Settlement Class satisfies all the applicable requirements of Rule 23(a) and Rule 23(b)(3) for the purposes of this Settlement, "certification may be granted[.]" *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006).

### A.    The Settlement Class Satisfies the Requirements of Rule 23(a)

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

**Numerosity:**  In the Second Circuit, Rule 23(a)(1)'s numerosity requirement is presumed for classes larger than 40 members and, in securities fraud class actions, it is shown where there is a large number of shares outstanding and traded during the relevant period. *See Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co., Inc.*, 772 F.3d 111, 120 (2d Cir. 2014); *Venkataraman v. Kandi Techs. Grp., Inc.*, 2024 WL 4345571, at *2 (S.D.N.Y. Sept. 30, 2024).  Here, according to Azure's 2020 annual report on Form 20-F, as of March 31, 2020 (shortly after the beginning of

19

the Settlement Class Period), Azure had 47,650,750 equity shares issued and outstanding.[11] Thus, while Plaintiffs "do[] not know the 'exact' number of class members, [they] estimate[] that there are 'thousands' of investors residing in geographically disparate areas that would be included in the class, thus 'rendering joinder impracticable.'" *Rodriguez v. CPI Aerostructures, Inc.*, 2021 WL 9032223, at *8 (E.D.N.Y. Nov. 10, 2021). Consequently, numerosity is satisfied. *Id.*

**Commonality:** Commonality exists when "common issues of law or fact affect all class members." *In re Signet Jewelers Ltd. Sec. Litig.*, 2019 WL 3001084, at *8 (S.D.N.Y. July 10, 2019). Securities class actions easily satisfy commonality where, as here, "plaintiffs allege that class members have been injured by similar material misrepresentations and omissions." *In re Allergan PLC Sec. Litig.*, 2021 WL 4077942, at *6 (S.D.N.Y. Sept. 8, 2021); *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012) (same).

The common questions of law and fact in this case are numerous and include: (i) whether Defendants' statements concerning Azure's claimed compliance with anti-corruption and anti-bribery laws, winning of project bids, commissioning of projects, and certain related operating metrics were materially false and misleading when made; (ii) whether Defendants omitted material information regarding these statements; (iii) whether Defendants acted with scienter; (iv) whether the price of Azure equity shares was artificially inflated during the Settlement Class Period due to these alleged misrepresentations and omissions; (v) whether Defendants' misrepresentations and omissions caused Settlement Class Members to suffer economic losses when the truth was revealed; and (vi) whether Individual Defendants Gupta, Subramanian and Agrawal controlled Azure during the Settlement Class Period. These questions are susceptible to common proof at

---

[11] https://www.sec.gov/Archives/edgar/data/1633438/000156459020029857/azre-20f_20200331.htm. The largest institutional holder (CDPQ) held 50.91% of such shares; the second largest holder held 17.61%; the third and fourth largest held 7.19% and 6.89% respectively; the officers and directors held 1.37% collectively; and the rest was held by smaller shareholders. *Id.* at 110.

trial because their resolution does not differ based on the identity of the plaintiff. *Hawaii Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Entertainment Holdings, Inc.*, 338 F.R.D. 205, 214-15 (S.D.N.Y. 2021). Thus, commonality is met.

**Typicality:**  The typicality requirement of Rule 23(a)(3) is established where "'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Cent. States SE & SW Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007). The typicality requirement does not require the plaintiff's claims to be identical; rather, the plaintiff must show the claims are "'so interrelated that the interests of the class members will be fairly and adequately protected in their absence,' and that the claims of the potential class members 'share a common question of law or of fact.'" *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 176 (S.D.N.Y. 2008).

Here, Lead Plaintiff's claims and those of the proposed Settlement Class are based on the exact same alleged misrepresentations and omissions that Defendants made to the investing public during the Settlement Class Period, as well as the Individual Defendants' control of Azure. Thus, any Settlement Class Member's claim will rely on the same course of events. *See In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002) (typicality met where all class members were allegedly harmed by the same course of conduct, namely "the distribution of false and misleading information which artificially inflated the stock").

**Adequacy:**  Rule 23(a)(4) requires "the representative parties" to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy is measured by two standards: (i) whether the claims of the proposed class representative conflict with those of the class; and (ii) whether the proposed class counsel is qualified, experienced, and generally able to conduct the litigation. *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

21

Both prongs are met here. First, in order for a conflict between Lead Plaintiff and the proposed Settlement Class to defeat class certification, the conflict must be "fundamental." *Patriot*, 828 F. App'x at 764. Where all claims arise from the same alleged wrongful conduct, "[a]ny conflict that may exist is not fundamental." *Facebook*, 312 F.R.D. at 344. Here, like all Settlement Class Members, Lead Plaintiff purchased Azure equity shares during the Settlement Class Period, "'suffer[ed] the same injury as the class members'" as a result of Defendants' material misrepresentations and omissions, and—far from being conflicted—"'possess[es] the same interest'" in obtaining the best possible recovery. *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 282 (S.D.N.Y. 2003). Second, Lead Plaintiff and Lead Counsel have already more than adequately advanced class interests, and Lead Counsel are qualified, experienced, and able to conduct the litigation, as they have demonstrated by achieving an excellent proposed Settlement against formidable opposing counsel. Lead Counsel's experience and other qualifications are set forth in Hopkins Decl. Ex. 1.  Accordingly, Rule 23(a)(4) is satisfied.

**B.      The Settlement Class Satisfies the Requirements of Rule 23(b)(3)**

Rule 23(b)(3) requires that common issues predominate, and that a class action is the superior method of adjudication. "Predominance is … readily met in certain cases alleging … securities fraud[.]" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "While Rule 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of individual issues." *In re Veeco Instr., Inc. Sec. Litig.*, 235 F.R.D. 220, 240 (S.D.N.Y. 2006). "[T]he fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification." *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010). "'[I]f the liability issue is common to the class, common questions are held to predominate.'" *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *11 (S.D.N.Y. Dec. 23, 2009).

Here, "questions of fact regarding the content and implications of defendants' statements

22

and defendants' intent in making these statements are central to the claims of each member of the putative class. Any individual issues will necessarily be secondary." *Veeco*, 235 F.R.D. at 240; *see also Micholle v. Ophthotech Corp.*, 2022 WL 1158684, at *3 (S.D.N.Y. Mar. 14, 2022) (predominance met where "members of the Settlement Class were subject to the same alleged misrepresentations and omissions"). Moreover, because this is a Settlement Class, "concerns about whether individual issues [like reliance] would create 'intractable management problems' at trial drop out of the predominance analysis because 'the proposal is that there be no trial.'" *In re Am. Int'l. Grp., Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012) (*quoting Amchem*, 521 U.S. at 620).

Superiority is likewise established. Because many investors suffered losses too small to justify individual litigation, class adjudication is the only realistic basis for recourse. *Gordon v. Vanda Pharmaceuticals Inc.*, 2022 WL 4296092, at *9 (E.D.N.Y. Sept. 15, 2022). Moreover, because "[t]here are likely thousands of class members nationwide ... consolidating their claims is in the interests of efficiency and judicial economy." *Id.*; *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 702 (S.D.N.Y. 2019). There are no other parallel investor actions. Moreover, Lead Plaintiff foresees no difficulty in effecting settlement on a class basis, as is the typical course in securities fraud class actions. Additionally, since Lead Plaintiff requests certification for settlement purposes only, there will be no trial management problems. *See Amchem*, 521 U.S. at 620.

In sum, the proposed Settlement Class meets all of the requirements of Rule 23(a) and 23(b)(3) for the purpose of Settlement and should be preliminarily certified.

## V.   THE PROPOSED PLAN OF ALLOCATION SHOULD BE PRELIMINARILY APPROVED

The proposed Plan of Allocation, set forth in the Notice to be sent to the Settlement Class Members, will govern how the Settlement proceeds will be distributed among Settlement Class

Members who timely file a valid Claim Form. A plan of allocation, "'particularly if recommended by experienced and competent class counsel[,]'" should be approved so long as it is "fair and adequate" and "'ha[s] a reasonable, rational basis[.]'" *Christine Asia*, 2019 WL 5257534, at \*15. The proposed Plan of Allocation was prepared by Lead Counsel after consulting with damages experts and Angeion. The Plan rationally reflects the allegations and causes of action asserted herein.  *See* Kotz Decl. (Ex. 2 to Hopkins Decl.), ¶¶6-16. It will result in a fair and equitable distribution of the proceeds among Settlement Class Members who submit valid claims, as all Settlement Class Members are treated fairly under the Plan. Each will receive no more, or less, than his, her, or its *pro rata* share of the Net Settlement Fund based on recognized losses assessed by the formulas described in the Notice.  *Id.*

## VI.    THE COURT SHOULD APPROVE THE FORM AND METHOD OF NOTICE

The proposed forms of notice satisfy due process, the Federal Rules, and the PSLRA. Fed. R. Civ. P. 23(c)(2)(B) directs that the notice be "the best notice that is practicable under the circumstances," and Fed. R. Civ. P. 23(e)(1)(B) directs "notice in a reasonable manner." Notice must "'fairly apprise'" class members "'of the terms of the proposed settlement and of the options that are open to them[.]'" *Christine Asia*, 2019 WL 5257534, at \*16.

The proposed notice program satisfies these standards. As discussed above, Lead Plaintiff seeks authorization from the Court to retain Angeion to oversee and administer the notice and claims process. Pursuant to the Preliminary Approval Order, individual notification will be made via email (or mail) in the form of the Postcard Notice, in order to save costs, within 15 business days after entry of the Preliminary Approval Order to all Settlement Class Members who can be identified with reasonable effort. In addition, the Summary Notice will be published electronically twice over *PR Newswire* or a similar widely circulated national wire service within 10 days after the Notice Date. Additional copies of the Notice will be available to nominee holders such as

brokerage firms that held Azure equity shares during the Settlement Class Period. Those nominee holders will be requested to forward copies of the Notice to all beneficial owners of such shares, or, alternatively, provide Angeion with a list of the names and addresses of such beneficial holders so that Angeion can send the Postcard Notice to those beneficial owners directly. Further, Angeion will create and maintain a Settlement website where Settlement Class Members can locate further information regarding the Settlement, view and download the Long Notice and the Claim Form, and be advised of pertinent deadlines. *See* Wilmot Decl., ¶¶19-30.

Courts routinely approve similar notice programs. *See, e.g., In re AppHarvest Sec. Litig.*, 2024 WL 967258, at \*3 (S.D.N.Y. Mar. 6, 2024) (approving emailing postcard notice, and mailing where no email address is available, and similar proposed notice program including website); *In re N. Dynasty Minerals Ltd. Sec. Litig.*, 2023 WL 5511513, at \*14 (E.D.N.Y. Aug. 24, 2023) (same); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 182-83 n.3 (S.D.N.Y. 2014) (collecting cases and stating that "[t]he use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts.").

The Notice includes the information required by Rule 23(c)(2)(B) and the PSLRA, advising Settlement Class Members of, *inter alia*: (i) the reasons for and terms of the Settlement; (ii) the nature, history, and progress of the Action; (iii) that Settlement Class Members may appear through counsel; (iv) a statement of recovery; (v) the date of the Settlement Hearing; (vi) the time and manner for requesting an exclusion; (vii) the procedure for submitting a Claim; (viii) information about the proposed attorneys' fees and costs; and (ix) how to obtain additional information regarding the Settlement, including Lead Counsel's contact information. Thus, the proposed Notice contains all of the required information in "'clear[] and concise[] ... plain, easily understood language'" and "'fairly apprise[s] ... members of the class'" of the Settlement. *In re*

*Take Two Interactive Sec. Litig.*, 2010 WL 11613684, at \*12-13 (S.D.N.Y. June 29, 2010). Courts routinely find that comparable notice programs meet the requirements of due process, Rule 23, and the PSLRA. *See, e.g., id.*; *3D Sys.*, 2023 WL 5018625, at \*13-14.

Accordingly, Lead Plaintiff respectfully submits that the proposed notice program is adequate and should be approved by the Court.

## VII.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Lead Plaintiff respectfully proposes the schedule set forth below for Settlement-related events. The timing of certain events is determined by the date on which the Settlement Hearing is scheduled. To allow sufficient time for the Notice to be disseminated to the potential Settlement Class Members, Lead Plaintiff request that the Court schedule the Settlement Hearing for a date not earlier than 100 calendar days after entry of the Preliminary Approval Order, or at the Court's convenience.

| EVENT | PROPOSED DUE DATE |
|---|---|
| Date to mail or email Postcard and publish Notice on Settlement website ("Notice Date") (Preliminary Approval Order, ¶10(a)) | 15 business days after entry of Preliminary Approval Order |
| Publish Summary Notice over two national wire services (Preliminary Approval Order, ¶10(b)) | 10 calendar days after Notice Date |
| Deadline for filing of papers in support of the Settlement, the Plan of Allocation, and Fee and Expense Application, (Preliminary Approval Order, ¶20) | 35 calendar days before the Settlement Hearing |
| Deadline for receipts of exclusion requests or objections (Preliminary Approval Order, ¶13, ¶15) | 21 calendar days before the Settlement Hearing |
| Deadline for filing responses to any objections or in further support of the Settlement, Plan of Allocation, and Fee and Expense Application (Preliminary Approval Order, ¶20); and Deadline for postmarking or electronically submitting Claim Forms (Preliminary Approval Order, ¶12(a)) | 7 days before the Settlement Hearing |
| Settlement Hearing (Preliminary Approval Order, ¶6) | To be determined by the Court, but not earlier than 100 days after the entry of the Preliminary Approval Order |

## VIII.   CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court: (1) grant preliminary approval of the proposed Settlement, (2) certify the Settlement Class for purposes of effectuating the Settlement, (3) approve the Plan of Allocation, (4) approve the proposed form and manner of Notice, and (5) schedule a Settlement Hearing.

DATED: April 14, 2025                    Respectfully submitted,

                                         **LEVI & KORSINSKY, LLP**

                                         By: */s/ Shannon L. Hopkins*
                                         Shannon L. Hopkins (SH-1887)
                                         Gregory M. Potrepka (GP-1275)
                                         Andrew E. Lencyk (AL-4329)
                                         David C. Jaynes (admitted *pro hac vice*)
                                         Morgan M. Embleton (admitted *pro hac vice*)
                                         Amanda D. Foley (admitted *pro hac vice*)
                                         1111 Summer Street, Suite 403
                                         Stamford, CT 06905
                                         Telephone: (203) 992-4523
                                         Facsimile: (212) 363-7171
                                         shopkins@zlk.com
                                         gpotrepka@zlk.com
                                         alencyk@zlk.com
                                         djaynes@zlk.com
                                         membleton@zlk.com
                                         afoley@zlk.com

                                         *Lead Counsel for Plaintiff and the Class*

27

## COMPLIANCE WITH CIVIL LOCAL RULE 7.1(c)

The undersigned, counsel of record for Lead Plaintiff Serap Lokman, certifies that this brief contains 8,725 words, which complies with the word limit of L.R. 7.1(c) regarding Length of Memoranda of Law, effective January 2, 2025. Executed on this 14th day of April, 2025.

/s/ Shannon L. Hopkins
Shannon L. Hopkins