**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SERAP LOKMAN, Individually and On Behalf of All Others Similarly Situated, | Case No. 1:22-cv-7432 |
| Plaintiff, | |
| v. | Hon. Gregory H. Woods |
| AZURE POWER GLOBAL LIMITED, RANJIT GUPTA, MURALI SUBRAMANIAN, and PAWAN KUMAR AGRAWAL, | |
| Defendants. | |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**UNOPPOSED MOTION FOR FINAL APPROVAL OF**
**CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**

Dated: August 1, 2025

**LEVI & KORSINSKY, LLP**

Shannon L. Hopkins (SH-1887)
Gregory M. Potrepka (GP-1275)
Andrew E. Lencyk (AL-4329)
David C. Jaynes (admitted *pro hac vice*)
Morgan M. Embleton (admitted *pro hac vice*)
Amanda D. Foley (admitted *pro hac vice*)
1111 Summer Street, Suite 403
Stamford, CT 06905
Telephone: (203) 992-4523
shopkins@zlk.com
gpotrepka@zlk.com
alencyk@zlk.com
djaynes@zlk.com
membleton@zlk.com
afoley@zlk.com

*Counsel for Lead Plaintiff and*
*Lead Counsel for the Class*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND OF THE LITIGATION ............................ 3

I.    THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL ......................... 3

    A.   Rule 23(e)(2)(A): Lead Plaintiff and Lead Counsel Adequately Represented the Settlement Class ............................................................................................................ 5

    B.   Rule 23(e)(2)(B): The Settlement Was Reached After Arm's-Length Negotiations with the Assistance of an Experienced Mediator ............................................. 7

    C.   Rule 23(e)(2)(C): The Settlement Relief Is Adequate, Considering the Costs, Risks and Delays of Further Litigation and Other Relevant Factors (*Grinnell* Factors 1, 4, 5-6, 8-9) ............................................................................................................... 8

        1.   The Complexity, Expense, and Duration of Litigation ..................................... 9

        2.   The Risks of Establishing Liability and Damages .......................................... 11

        3.   The Settlement Represents a Substantial Percentage of Likely Recoverable Damages Especially in Light of the Risks of Litigation ................................... 12

    D.   The Remaining Rule 23(e)(2)(C) Factors Support Approval ........................................... 14

    E.   Rule 23(e)(2)(D): The Settlement Treats All Members of the Settlement Class Equitably Relative to Each Other .................................................................................... 16

    F.   The Remaining *Grinnell* Factors (2, 3 and 7) Are Neutral or Weigh in Favor of Final Approval ............................................................................................................... 16

II.   THE SETTLEMENT CLASS SHOULD REMAIN CERTIFIED ................................. 20

III.  THE PLAN OF ALLOCATION IS FAIR AND REASONABLE.................................. 20

IV.   THE NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS .................... 22

V.    CONCLUSION.......................................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
568 U.S. 455 (2013)........................................................................................................ 6

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000) ............................................................................................ 6

*Becker v. Bank of New York Mellon Trust Co., N.A.*,
2018 WL 6727820 (E.D. Pa. Dec. 21, 2018)............................................................... 14

*Christine Asia Co. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)................................................... 5, 16, 21

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ............................................................................................ 7

*Davenport v. Elite Model Mgmt. Corp.*,
2014 WL 12756756 (S.D.N.Y. May 12, 2014) ........................................................... 19

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006) ........................................................................................ 20

*Edwards v. N. Am. Power & Gas, LLC*,
2018 WL 3715273 (D. Conn. Aug. 3, 2018) ............................................................... 23

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974)...................................................................................................... 22

*Fishoff v. Coty Inc.*,
2010 WL 305358 (S.D.N.Y. Jan. 25, 2010) ................................................................ 11

*Flores v. CGI Inc.*,
2022 WL 13804077 (S.D.N.Y. Oct. 21, 2022)............................................................... 4

*Hacker v. Elec. Last Mile Sols. Inc.*,
2024 WL 5102696 (D.N.J. Nov. 6, 2024) ..................................................................... 8

*In re "Agent Orange" Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987)................. 9, 13

*In re Advanced Battery Techs., Inc. Secs. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) .................................................................................. 23

*In re Am. Bank Note Holographics*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001) .......................................................................... 18

*In re Appharvest Sec. Litig.*,
2024 WL 967258 (S.D.N.Y. Mar. 6, 2024) .................................................................. 23

*In re China Sunergy Sec. Litig.*,
2011 WL 1899715 (S.D.N.Y. May 13, 2011) .............................................................. 13

*In re Citigroup, Inc. Sec. Litig.*,
  965 F. Supp. 2d 369 (S.D.N.Y. 2013) ................................................................. 16

*In re Facebook Inc. Sec. & Derivative Litig.*,
  2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) ......................................................... 12

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
  312 F.R.D. 332 (S.D.N.Y. 2015) .......................................................................... 7

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  343 F. Supp. 3d 394 (S.D.N.Y. 2018) ................................................................. 12

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ........................................................ 21

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) .......................................................................... 21

*In re Gilat Satellite Networks, Ltd.*,
  2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007) ........................................................ 9

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................... 9

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019) .............................................................. 8, 11

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) ............................................................... 18, 20, 21

*In re Initial Pub. Offering Sec. Litig.*,
  671 F. Supp. 2d 467 (S.D.N.Y. 2009) ................................................................. 21

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) .......................................................................... 16

*In re Merrill Lynch Tyco Research Sec. Litig.*,
  249 F.R.D. 124 (S.D.N.Y. 2008) .......................................................................... 16

*In re Mut. Funds Inv. Litig.*,
  2010 WL 2342413 (D. Md. May 19, 2010) ......................................................... 23

*In re Mylan N.V. Sec. Litig.*,
  2023 WL 2711552 (S.D.N.Y. Mar. 30, 2023) .................................................. 10, 12

*In re PAR Pharm. Sec. Litig.*,
  2013 WL 3930091 (D.N.J. July 29, 2013) ............................................................. 9

*In re Patriot Nat'l, Inc. Sec. Litig.*,
  828 F. App'x 760 (2d Cir. 2020) ....................................................................... 5, 6

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2020 WL 4196468 (S.D.N.Y. July 21, 2020) ......................................................... 8

*In re Tenaris S.A. Sec. Litig.*,
  2024 WL 1719632 (E.D.N.Y. Apr. 22, 2024) ....................................................... 15

*In re Tesla Inc., Sec. Litig.*,
2023 WL 4032010 (N.D. Cal. June 14, 2023) ...................................................... 10, 12

*In re Veeco Instruments Inc. Sec. Litig.*,
2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ............................................................... 12

*Maley v. Del Global Tech. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) ....................................................................... 17

*McIntosh v. Katapult Holdings, Inc.*,
2024 WL 5118192 (S.D.N.Y. Dec. 13, 2024) ............................................................... 8

*Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
2021 WL 76328 (S.D.N.Y. Jan. 7, 2021) ..................................................................... 13

*Pearlstein v. Blackberry Ltd.*,
2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022).................................................... 8, 12, 13

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ............................................................................. 10, 12

*Torretto v. Donnelley Fin. Sols., Inc.*,
2023 WL 123201 (S.D.N.Y. Jan. 5, 2023)..................................................................... 8

*Villa v. Highbury Concrete Inc.*,
2022 WL 19073649 (E.D.N.Y. Nov. 25, 2022)............................................................. 21

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005) ................................................................................. 4, 5, 17

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982) ........................................................................................ 20

**Statutes**

15 U.S.C. §77z-(1)(a)(7)............................................................................................. 23

**Other Authorities**

Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904)........................................ 4, 5

Azure Power Global Limited Consolidated Financial Statements For the year ended March 31,
2024
https://investors.azurepower.com/_/media/Files/A/Azure-Power-IR/bondholder-reports/apgl-
consolidated-financials-march-2024.pdf .................................................................. 18

Edward Flores and Svetlana Starykh, Recent Trends in Securities Class Action Litigation, 2024
Full-Year Review) (NERA Jan. 22, 2025) ................................................................... 13

Out of the Frying Pan: The Complexity of Enforcing a U.S. Judgment in India - U.S.-India
Newsletter - Vol. 2016, Issue 1
https://www.jdsupra.com/legalnews/out-of-the-frying-pan-the-complexity-of-79646/ ........... 10

**Rules**

Fed. R. Civ. P. 23................................................................................................... 23

Fed. R. Civ. P. 23(a) ................................................................................................. 20

Fed. R. Civ. P. 23(b) ................................................................................................. 20

Fed. R. Civ. P. 23(c) ..................................................................................... 16, 22, 23

Fed. R. Civ. P. 23(e) .......................................................................................... passim

Pursuant to Federal Rule of Civil Procedure 23(e), Lead Plaintiff Serap Lokman ("Lead Plaintiff" or "Plaintiff") on behalf of herself and the Settlement Class,[1] respectfully submits this memorandum of law in support of her unopposed motion for final approval of (1) the proposed Settlement resolving this Action for the payment of $23.0 million in cash for the benefit of the Settlement Class, in consideration for fully resolving all claims alleged in this Action, and (2) the proposed Plan of Allocation of the proceeds of the Settlement.

## PRELIMINARY STATEMENT

After litigating this Action for almost two and a half years, Lead Plaintiff negotiated a Settlement that resolves all claims for a non-reversionary, all-cash payment of $23 million in cash (the "Settlement Amount"), which has been deposited into an escrow account and is earning interest for the benefit of the Settlement Class. This Settlement is an excellent result for the Settlement Class and is both substantively and procedurally fair.

Substantively, the Settlement represents a recovery of approximately 16.3% of *maximum* recoverable damages related to the pending claims. As set forth below, such a recovery is (i) far above the 1.2% median recovery in securities class actions settled in 2024; and (ii) much higher than the 3.0% median recovery in securities cases with similar damages that settled between January 2015 and December 2024. For this reason, and as further discussed herein and in the Hopkins Declaration, the Settlement is substantively fair.

Additionally, the process by which the Settlement was achieved evidences a lack of

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement ("Stipulation") (ECF No. 119-1). Unless otherwise indicated, references herein to "¶_" are to paragraphs of the Declaration of Shannon L. Hopkins in Support of: (I) Lead Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation, and (II) Lead Counsel's Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Award to Lead Plaintiff ("Hopkins Declaration" or "Hopkins Decl."), filed herewith, and references to "Ex. __" are to exhibits to the Hopkins Declaration.

collusion among the Parties and supports a finding of procedural fairness. By the time the Settlement was reached, Lead Plaintiff and Lead Counsel were well informed about the strengths and weaknesses of their claims and Defendants' defenses through, *inter alia*:

- Conducting an extensive investigation of the claims asserted in the Action by, *inter alia*: (a) consulting with an expert in market efficiency, loss causation and damages; (b) working with a private investigator to interview former Azure Power Global Limited ("Azure") employees; (c) conducting an in-depth investigation of Azure's business in India; and (d) reviewing and analyzing (i) Azure's filings with the U.S. Securities and Exchange Commission ("SEC"); (ii) public reports, news articles, and research reports prepared by securities and financial analysts concerning Azure; (iii) transcripts of investor calls conducted by Azure's management; and (iv) press releases issued by and about Azure;

- Drafting and filing the detailed Second Amended Class Action Complaint ("SAC" or "Complaint") (ECF 80) and drafting a third amended complaint based on new information obtained from the Department of Justice ("DOJ") Indictment and two parallel complaints filed by the U.S. Securities Exchange Commission ("SEC"), which implicated an Azure outside director and controlling shareholder, and extending the class period back an additional 18 months;

- Researching, drafting, and filing the opposition to Defendants' separate motions to dismiss the Complaint along with pre-motion conference submissions and supplemental submissions (ECF Nos. 58-61, 88-94, 96, 99, 112-13);

- Engaging in discovery, which included reviewing documents produced by Defendants and serving a Freedom of Information Act request;

- Engaging in a full-day mediation session overseen by Michelle Yoshida of Phillips ADR Enterprises, a mediator highly experienced in complex class actions, which involved the exchange of detailed submissions concerning the facts of the case, liability, and damages, and consultation with damages experts, but which did not result in a settlement agreement at that time; and

- Engaging in weeks of follow-up negotiations with Ms. Yoshida, Defendants' Counsel and counsel for the controlling shareholder, CDPQ, who was to be named as a defendant in the third amended complaint if filed, which ultimately resulted in an agreement to settle the Action for $23.0 million. *See* Stipulation (ECF No. 119-1), Section I, pp. 1-5; Hopkins Decl. ¶¶8, 15-33, 80-83.

Thus, the Settlement is the result of arm's-length negotiations, and was conducted by informed and experienced counsel, under the auspices of an experienced mediator. Moreover, the

Settlement has the full support of the Lead Plaintiff, who attended the mediation over Zoom, and—although the deadline to object to the Settlement has not yet passed—to date, no Settlement Class Member has objected to the Settlement, and none has sought exclusion.[2]

Given these considerations and other factors discussed below, Lead Plaintiff respectfully submits that the Settlement is fair, reasonable, and adequate and warrants final approval by the Court. Additionally, Lead Plaintiff requests that the Court approve the Plan of Allocation, which was set forth in the Notice available for all Settlement Class Members to review on the Settlement Website, as advised by the Postcard Notice. The Plan of Allocation was developed in conjunction with Lead Plaintiff's damages consultant and is designed to distribute the proceeds of the Net Settlement Fund fairly and equitably to Settlement Class Members. No Settlement Class Member is favored over another under the proposed Plan. Rather, all Settlement Class Members—including Lead Plaintiff—are treated in the same manner. *See* Ex. 1-B (Notice), pp. 11-15. Therefore, the Plan of Allocation is fair and reasonable, and should also be approved.

## FACTUAL AND PROCEDURAL BACKGROUND OF THE LITIGATION

Lead Plaintiff respectfully refers the Court to the accompanying Hopkins Declaration for a detailed discussion of, *inter alia*, the factual and procedural background of the Action, the nature of the claims asserted, the extensive efforts undertaken by Lead Counsel during the litigation, the risks of continued litigation, negotiations in conjunction with an independent mediator that led to the Settlement, and the terms of the Plan of Allocation of the Net Settlement Fund.

## I.    THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

Federal Rule of Civil Procedure 23(e) requires judicial approval of any compromise or settlement of class-action claims. *See* Fed. R. Civ. P. 23(e). A class-action settlement should be

---

[2] The objection deadline is August 15, 2025. Lead Plaintiff will address all requests for exclusion and any objections received in their reply papers, due August 29, 2025.

approved if the court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Second

Circuit favors the settlement of disputed claims among private litigants, particularly in class

actions. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("*Visa*")

("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class

action context.'"). In ruling on motions for final approval of a class settlement, courts examine the

negotiating process leading to the settlement and the settlement's substantive terms. *Id.*; *Flores v.*

*CGI Inc.*, 2022 WL 13804077, at *3 (S.D.N.Y. Oct. 21, 2022).

Rule 23(e)(2), as amended on December 1, 2018, provides that the Court should determine

whether a proposed settlement is "fair, reasonable, and adequate" after considering whether:

> (A) the class representatives and class counsel have adequately represented the
> class; (B) the proposal was negotiated at arm's length; (C) the relief provided for
> the class is adequate, taking into account: (i) the costs, risks, and delay of trial and
> appeal; (ii) the effectiveness of any proposed method of distributing relief to the
> class, including the method of processing class-member claims; (iii) the terms of
> any proposed award of attorney's fees, including timing of payment; and (iv) any
> agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats
> class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Factors (A) and (B) "identify matters ... described as 'procedural' concerns, looking to the

conduct of the litigation and of the negotiations leading up to the proposed settlement," while

factors (C) and (D) "focus on ... a substantive review of the terms of the proposed settlement" (*i.e.*,

"[t]he relief that the settlement is expected to provide to class members"). Advisory Committee

Notes to 2018 Amendments (324 F.R.D. 904, at 919). As discussed below, all of these factors

strongly support approval of the Settlement here.

Historically, the Second Circuit has held that district courts should consider the following

factors set forth in *City of Detroit v. Grinnell Corp.* in evaluating a class-action settlement:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of

4

the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *see also Visa*, 396 F.3d at 117.

The Advisory Committee Notes to the 2018 amendments to the Federal Rules of Civil Procedure indicate that the four factors set forth in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the Court of Appeals, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ P. 23(e)(2) (Advisory Committee Notes, 2018 Amendments).

Accordingly, Lead Plaintiff will discuss the fairness, reasonableness, and adequacy of the Settlement principally in relation to the four factors set forth in Rule 23(e)(2), and will also discuss the application of relevant, non-duplicative *Grinnell* factors. *See Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *9 (S.D.N.Y. Oct. 16, 2019) ("The Court understands the new Rule 23(e) factors to add to, rather than displace, the *Grinne[ll]* factors.").

### A. Rule 23(e)(2)(A): Lead Plaintiff and Lead Counsel Adequately Represented the Settlement Class

In determining whether to approve a class-action settlement, courts consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). In assessing adequacy, "the primary factors are whether the class representatives have any 'interests antagonistic to the interests of other class members' and whether the representatives 'have an interest in vigorously pursuing the claims of the class.'" *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 764 (2d Cir. 2020) (citing cases); *see also Baffa v. Donaldson, Lufkin &*

*Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000) ("Generally, adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.").

First, there is no antagonism or conflict between Lead Plaintiff and the proposed Settlement Class. Lead Plaintiff and other Settlement Class Members all purchased or otherwise acquired Azure equity shares during the Settlement Class Period and were injured by the same alleged false and misleading statements. The underlying proof necessary for Lead Plaintiff and each Settlement Class Member to prevail is the same. If Lead Plaintiff was to prove her claims at trial, she would also prove the Settlement Class's claims. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460 (2013) (the investor class "will prevail or fail in unison" because claims are based on common misrepresentations and omissions); *Patriot*, 828 F. App'x at 764 (finding adequacy where "lead plaintiffs were sufficiently motivated to recover as much as possible for each class member.").

Second, Lead Plaintiff retained counsel highly experienced in securities litigation, with a long and successful track record of representing investors in such cases. *See* Ex. 3-A (Levi & Korsinsky, LLP firm résumé). As noted above, Lead Counsel vigorously prosecuted the Settlement Class's claims for two and a half years, including: (i) conducting a thorough investigation of the claims alleged in the Action, encompassing events in India and interviews with former Azure employees; (ii) drafting two detailed amended complaints and preparing a third amended complaint after the DOJ indictment and SEC complaints were publicly released; (iii) effecting service on Defendants based in India, (iv) preparing detailed responsive submissions to Defendants' separate motions to dismiss and premotion letters; (v) propounding FOIA requests; (vi) reviewing and analyzing Azure's public filings, the DOJ Indictment and SEC complaints and

publicly available information concerning those investigations, reports of securities and financial analysts about Azure, and other information concerning Azure and the industry in which it operates; (vii) consulting with experts on damages and causation, and (viii) participating in extensive mediation efforts and negotiations, resulting in a favorable Settlement against skilled opposing counsel.[3] Hopkins Decl. ¶¶8, 15-34, 80-83, 91. *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 345 (S.D.N.Y. 2015) (counsel "highly qualified" where they "prosecuted this action vigorously, their efforts resulting in surviving a motion to dismiss against some of the finest firms in the nation.").

> **B.     Rule 23(e)(2)(B): The Settlement Was Reached After Arm's-Length Negotiations with the Assistance of an Experienced Mediator**

Rule 23(e)(2)(B) requires that "the proposal was negotiated at arm's length." In reviewing this aspect of procedural fairness, courts recognize that a "mediator's involvement in ... settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).

Here, the parties engaged in hard-fought, adversarial litigation since the Action's inception, including two rounds of pre-motion conference submissions concerning Defendants' motions to dismiss two amended complaints, and Defendants' hotly-contested motions to dismiss the SAC. Prior to settling, the parties engaged in extensive arm's-length settlement negotiations—including the exchange of detailed mediation submissions and a full-day mediation session under the auspices of Michelle Yoshida, a nationally-recognized mediator highly experienced in resolving securities class actions and other complex litigation. ¶¶17-31. That the Settlement was reached only after these extensive arm's-length negotiations, while not conclusive, strongly supports that it is fair and free of

---

[3] Defendants are represented by Dentons US LLP, Willkie Farr & Gallagher LLP and Covington & Burling LLP, some of the most preeminent firms in the country.

collusion. *See Torretto v. Donnelley Fin. Sols., Inc.*, 2023 WL 123201, at *2 (S.D.N.Y. Jan. 5, 2023) (noting that "the involvement of a mediator in the Parties' negotiations ... further supports the finding that the Settlement was negotiated at arm's-length"); *Pearlstein v. Blackberry Ltd.*, 2022 WL 4554858, at *7 (S.D.N.Y. Sept. 29, 2022) (approving a settlement, in part, because it was facilitated by the "extensive mediation efforts" of a "highly regarded mediator"); *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *3 (S.D.N.Y. July 21, 2020) (finding settlement negotiated at arm's length; "[i]n fact, the Settlement is the product of a mediator's recommendation"); *see also McIntosh v. Katapult Holdings, Inc.*, 2024 WL 5118192, at *3, 9 (S.D.N.Y. Dec. 13, 2024) (noting that fact settlement was negotiated "before a neutral and experienced mediator"—Ms. Yoshida—supported presumption of fairness); *Hacker v. Elec. Last Mile Sols. Inc.*, 2024 WL 5102696, at *8 (D.N.J. Nov. 6, 2024) (same). This arm's-length process supports a finding of fairness, free of fraud or collusion.

> **C.    Rule 23(e)(2)(C): The Settlement Relief Is Adequate, Considering the Costs, Risks and Delays of Further Litigation and Other Relevant Factors (*Grinnell* Factors 1, 4, 5-6, 8-9)**

Under Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account ... the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C).[4] Under *Grinnell*, the adequacy of the amount offered in a settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re*

---

[4] Rule 23(e)(2)(C)(i) encompasses at least six of the nine traditional *Grinnell* factors. *See Grinnell*, 495 F.2d at 463 ("(1) the complexity, expense, and likely duration of the litigation;… (4) the risks of establishing liability and [(5)] damages; (6) the risks of maintaining class action status through the trial;… (8) the range of reasonableness of the settlement fund in light of the best possible recovery [and in light of (9)] the attendant risks of litigation"); *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019) ("This inquiry overlaps significantly with a number of *Grinnell* factors, which help guide the Court's application of Rule 23(e)(2)(C)(i).").

*"Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).

### 1.    The Complexity, Expense, and Duration of Litigation

Securities class actions are "notably complex, lengthy, and expensive cases to litigate." *In re PAR Pharm. Sec. Litig.*, 2013 WL 3930091, at *10 (D.N.J. July 29, 2013). This Action presented particular complexities, costs and likely delays, even more than the usual securities class action.

For example, while Lead Plaintiff believes her claims were meritorious, she recognized that the Court has not ruled on Defendants' motions to dismiss the SAC, which could have resulted in a dismissal in whole or in part of the case, including on scienter grounds. Moreover, the class has not yet been certified, and "even if plaintiffs could obtain class certification, there could be a risk of decertification at a later stage," *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004). Discovery in this case would have been a particularly complicated, lengthy, and costly process because much (if not all) of the discovery was located in India and would have likely required Lead Plaintiff to pursue several Letters Rogatory under the Hague Convention on Taking Evidence Abroad—which could take more than a year to yield documents, much less schedule, compel and take depositions—and hire translators and interpreters to decipher the documents and translate deposition testimony. Further, some of the relevant events had taken place over six years ago, and there were indications of partial spoliation of evidence.[5] *See, e.g., In re Gilat Satellite Networks, Ltd.*, 2007 WL 1191048, at *10 (E.D.N.Y. Apr. 19, 2007) (finding complications of foreign discovery weighed in favor of settlement). *See* ¶¶36-45, 56-57.

Lead Plaintiff also faced additional risks on summary judgment, particularly if discovery did not yield documents or testimony substantiating her claims—a risk heightened by the foreign

---

[5] *See* ECF No. 114-1 (Indictment), ¶¶38, 77.

discovery and indications of potential spoliation here—and at trial where Plaintiffs would be unable to compel most witnesses to testify due to their location in India. The subject matter of the Action was complicated, including complex power contracts, alleged bribery schemes, and accounting restatement issues, and added to the risk that a jury might not understand or be persuaded about the wrongdoing alleged here.[6] ¶¶45-46, 56-57.

Additionally, Defendants continue to deny all of Lead Plaintiff's allegations and would likely contest falsity, materiality, scienter, and loss causation at trial. Even if Plaintiffs succeeded at trial, they would likely face post-verdict motions and appeals, further prolonging the time for recovery for the Settlement Class and risking a potential loss on appeal, all of which would have also added to the costs of litigation. *See Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict reversed on appeal and judgment entered for defendant). Continued litigation also presented risks of collectability as Defendants are all located in India,[7] which would have added an additional layer of complexity, expense, and duration, and Azure's future ability to pay is not assured (*see* §I.F. *infra*). Given the complexities, uncertainties, and expense inherent in continued litigation, the proposed Settlement is in the best interests of the Class, providing a favorable, immediate cash recovery.

---

[6] *See In re Tesla Inc., Sec. Litig.*, 2023 WL 4032010 (N.D. Cal. June 14, 2023) (defendants prevailed at trial despite summary judgment for *plaintiffs* on falsity and scienter, and SEC settlement based on same alleged conduct); *In re Mylan N.V. Sec. Litig.*, 2023 WL 2711552 (S.D.N.Y. Mar. 30, 2023) (defendants prevailed on summary judgment despite DOJ and state Attorney General prosecutions).

[7] *See, e.g.,* Out of the Frying Pan: The Complexity of Enforcing a U.S. Judgment in India - U.S.-India Newsletter - Vol. 2016, Issue 1, https://www.jdsupra.com/legalnews/out-of-the-frying-pan-the-complexity-of-79646/ ("Victory in a U.S. court against an Indian entity can quickly become bittersweet if the judgment needs to be enforced in India"; noting that difficulties in enforcing non-arbitration awards stem partly from the U.S. being a "non-reciprocating territory").

### 2.    The Risks of Establishing Liability and Damages

"[A] court should balance the benefits afforded the Class, including immediacy and certainty of recovery, against the continuing risks of litigation." *GSE*, 414 F. Supp. 3d at 694. As discussed in the Hopkins Declaration (¶¶35-55) and above (§I.C.1.), while Lead Plaintiff believes her claims had merit, she also recognized that continued litigation of the Action presented serious risks that Lead Plaintiff would be unable to prove liability, loss causation and damages, thereby reducing or eliminating damages altogether.

Defendants have vigorously argued, *inter alia*, that they disclosed all material facts and risks, made no material misstatements, did not act with scienter, that any losses upon Azure's alleged corrective disclosures were not due to Defendants' misrepresentations, and contended that Lead Plaintiff would be unable to certify a class. For example, Defendants argued that:

- The alleged misstatements concerning compliance with laws, regulations and internal controls were too general and constituted immaterial puffery that no reasonable investor would rely upon;

- Defendants became aware of the potential underlying wrongdoing alleged herein *after* the alleged misstatements were made;

- Azure's statements were true because the Company's internal investigation purportedly found no improper payments and the whistleblower complaints were unsubstantiated;

- Many alleged misstatements were nonactionable, forward-looking statements supported by adequate cautionary language;

- Lead Plaintiff failed to establish scienter with particular facts, including from reliable confidential witnesses, and alleged no motive to support a strong inference of scienter;[8] and

- Everything that Lead Plaintiff alleged was omitted from the alleged misstatements was disclosed no later than August 2022, so the Class Period could extend not beyond that period.

---

[8] Scienter is often considered "the most difficult and controversial aspect of a securities fraud claim." *Fishoff v. Coty Inc.*, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010).

11

Further, Lead Plaintiff's claims would be subject to complex expert testimony, offered by Defendants' experts, that would likely conflict with Lead Plaintiff's experts' analyses. The opinions of each side's experts can vary substantially, and continued litigation poses the risks that Defendants would prevail in a "battle of experts." *See Pearlstein*, 2022 WL 4554858, at \*5 ("These disputes would involve at trial a battle of the experts, and a jury could be swayed by experts for the Defendants, who [c]ould minimize the amount of Plaintiffs' losses."); *In re Facebook Inc. Sec. & Derivative Litig.*, 2015 WL 6971424, at \*4-5 (S.D.N.Y. Nov. 9, 2015) (similar); *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at \*9 (S.D.N.Y. Nov. 7, 2007) (similar).

In short, these risks posed a real possibility that Lead Plaintiff and the Settlement Class would not be able to recover at all or would have recovered a lesser amount if the Action proceeded through class certification, summary judgment, trial, and appeals. Particularly in view of these risks, Lead Plaintiff and Lead Counsel respectfully submit that the Settlement, which confers an immediate and substantial benefit, is in the best interests of the Settlement Class.[9]

### 3. The Settlement Represents a Substantial Percentage of Likely Recoverable Damages Especially in Light of the Risks of Litigation

The Settlement provides an excellent and immediate recovery for the Class, and is fair, reasonable, and adequate considering "the costs, risks, and delay of trial and appeal" and other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). The Settlement must be judged "not in comparison

---

[9] *See, e.g., In re Mylan N.V. Sec. Litig.*, 2023 WL 2711552 (S.D.N.Y. Mar. 30, 2023) (defendants prevailed on summary judgment despite DOJ and state Attorney General prosecutions); *In re Tesla Inc., Sec. Litig.*, 2023 WL 4032010 (N.D. Cal. June 14, 2023) (defendants prevailed at trial despite summary judgment for plaintiffs on falsity and scienter, and SEC settlement based on same alleged conduct); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict reversed on appeal and judgment entered for defendant). *See also In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 414 (S.D.N.Y. 2018) (in securities fraud cases, "the risk of a zero- or minimal– recovery scenario are real.").

with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re Agent Orange*, 597 F. Supp. at 762.

Here, the Settlement provides a non-reversionary cash payment of $23.0 million for the benefit of the Settlement Class. This is an excellent result given the significant risks of continued litigation. Moreover, after consultation with experts on damages and considering Defendants' negative causation defenses, Lead Plaintiff believes that the maximum damages the Settlement Class could recover for the Section 10(b) claims are $141.2 million. ¶54. *See* Declaration of Kenneth N. Kotz ("Kotz Decl.") (ECF No. 121-2), ¶¶17-18. The $23 million Settlement thus represents a recovery of approximately 16.3% of the maximum likely recoverable damages if Lead Plaintiff prevailed at trial, well above the range of average recovery in shareholder litigation. *See, e.g., Pearlstein*, 2022 WL 4554858, at *6 (approving recovery of 13.75% of maximum damages as "considerably above the high end of historical averages"); *Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 2021 WL 76328, at *3 (S.D.N.Y. Jan. 7, 2021) (approving recovery of 10% of estimated damages and citing recoveries in this District of between 3% to 11% of estimated damages); *In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) (noting "average settlement amounts" over past decade ranged from "'3% to 7% of the class members' estimated losses.'"). The percentage recovery here also exceeds the 1.2% median settlement value in 2024 for all securities class actions, and the 3.0% median recovery for securities class action settlements with estimated alleged damages in the $100-199 million range between January 2015-December 2024. *See* Ex. 2 (Edward Flores and Svetlana Starykh, Recent Trends in Securities Class Action Litigation, 2024 Full-Year Review (NERA Jan. 22, 2025)), at 26-27 (Fig. 23-24).

### D. The Remaining Rule 23(e)(2)(C) Factors Support Approval

Rule 23(e)(2)(C) provides that adequacy should also be assessed considering "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims," "the terms of any proposed award of attorneys' fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors supports approval

**Rule 23(e)(C)(ii):** The method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims and efficiently distributing the Net Settlement Fund. Here, Angeion Group, LLC ("Angeion"), the Court-approved Claims Administrator (*see* ECF No. 123, ¶8), will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any claim deficiencies or request the Court to review their claim denial, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation) after Court approval. Claims processing, like the method proposed here, is standard in securities class action settlements. It has been long found to be effective, as well as necessary, insofar as neither Lead Plaintiff nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund. *See Becker v. Bank of New York Mellon Trust Co., N.A.*, 2018 WL 6727820, at *7 (E.D. Pa. Dec. 21, 2018) ("[t]he requirement that class members submit documentation to substantiate their holdings of the bonds as of the record date will facilitate the filing of legitimate claims, yet is not overly demanding given the range of permissible documentation.").[10]

**Rule 23(e)(C)(iii):** As disclosed in the Notice, Lead Counsel will be applying for a fee

---

[10] This is not a claims-made settlement. If the Settlement is approved, Defendants have no right to recoup a portion of the Settlement Fund based on the number or value of the claims submitted.

14

award not to exceed one-third of the Settlement Amount, plus interest on that amount which accrued while in the Escrow Account, to compensate them for the services they have rendered on behalf of the Settlement Class. As discussed in the accompanying memorandum in support of Lead Counsel's fee application, the requested fee is reasonable for the work performed and the results obtained, and consistent with awards in similar complex class action cases. *See, e.g.*, *In re Grab Holdings Ltd. Sec. Litig.*, 2025 WL 1413515, at *5 (S.D.N.Y. May 15, 2025) (awarding one-third of $80 million settlement); *In re Tenaris S.A. Sec. Litig.*, 2024 WL 1719632, at *10 (E.D.N.Y. Apr. 22, 2024) (finding "[d]istrict courts within the Second Circuit routinely approve attorneys' fees awards of one third or 33 1/3% as reasonable" and awarding one-third of $9.5 million settlement, representing 4.02-5.01% of "best-case" recovery); *Xu v. Gridsum Holding Inc.*, 2024 WL 5301450, at *1 (S.D.N.Y. Apr. 3, 2024) (Woods, J.) (awarding one-third of $4.5 million settlement); *In re JPMorgan Precious Metals Spoofing Litig.*, No. 1:18-cv-10356-GHW, ECF No. 114, at 2 (S.D.N.Y. July 7, 2022) (awarding one-third of $60 million settlement); *Skiadas v. Acer Therapeutics Inc.*, No. 1:19-cv-06137-GHW, ECF No. 136, at 1 (S.D.N.Y. Jan. 7, 2022) (awarding one-third of $8.35 million settlement); *In re Facebook*, 2015 WL 6971424, at *9 (awarding 33% of $26.5 million settlement); *In re DDAVP Direct Purchaser Antitrust Litig.*, 2011 WL 12627961, at *5 (S.D.N.Y. Nov. 28, 2011) (awarding one-third of $20 settlement). Notably, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *See* Stipulation ¶5.7.

**Rule 23(e)(C)(iii):** The Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members who collectively purchased more than a certain percentage of Azure public securities submit valid and timely requests for exclusion ("opt out") from the Settlement. Such an agreement

"is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *See, e.g.*, *Christine Asia*, 2019 WL 5257534, at *15.

E. **Rule 23(e)(2)(D): The Settlement Treats All Members of the Settlement Class Equitably Relative to Each Other**

The Settlement easily satisfies the Rule 23(e)(2)(D) criteria that the Settlement treat class members equitably relative to one another. Under the proposed Plan of Allocation, set forth in the Notice (Ex. 1-B) and summarized further below, each Authorized Claimant will receive a *pro rata* share of the Net Settlement Fund, which shall be the Authorized Claimant's Recognized Loss divided by the total of the Recognized Losses of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. Lead Plaintiff will receive the same *pro rata* recovery under the Plan of Allocation as all other Settlement Class Members. Courts have repeatedly approved similar plans. *See, e.g., In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010).

F. **The Remaining *Grinnell* Factors (2, 3 and 7) Are Neutral or Weigh in Favor of Final Approval**

*Grinnell* also outlined additional factors that do not overlap with Rule 23(e)(2). These factors, viewed in light of the Rule 23(e)(2) factors identified above, also support or are neutral with respect to final approval. However, "a court need not find that every factor militates in favor of a finding of fairness; rather, a court consider[s] the totality of these factors in light of the particular circumstances." *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 134 (S.D.N.Y. 2008) (internal quotations omitted).

**The Reaction of the Settlement Class:** The second *Grinnell* factor—the reaction of the class—overlaps with Rules 23(c)(2)(B)(vi), on the opportunity for exclusion, and 23(e)(5), on the opportunity to object. As required by Rule 23(c)(2)(B)(vi) and I(5), the Settlement affords Settlement Class Members the opportunity to request exclusion from, or object to, the Settlement.

16

Ex. 1-B (Notice). In total, as of July 30, 2025, 22,467 potential Settlement Class Members were notified of the Settlement by emailed or mailed Postcard Notice. Ex. 1 (Declaration of Dawn M. Cody Regarding: (A) Mailing and Emailing of Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received to Date ("Angeion Decl.")), ¶11. To date, no requests for exclusion have been received, and no objections have been filed with the Court. *Id.* ¶¶16-18.[11] The Settlement Class's overwhelmingly positive reaction strongly supports final approval of the Settlement. *See, e.g., Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) ("It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy."); *see also Visa*, 396 F.3d at 118 ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.").

**Stage of Proceedings and Amount of Discovery:** The third *Grinnell* factor examines "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *In re Bear Stearns Cos.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012). Here, Lead Plaintiff and Lead Counsel conducted an extensive investigation, including overseas, and thoroughly assessed the merits of their claims, in filing two amended complaints (and preparing a third for filing at the time settlement was reached); researched and filed multiple premotion conference letters in connection with Defendants' motions to dismiss; opposed Defendants' motions to dismiss and related submissions, filing a 73-page opposition brief; consulted with damage experts; served FOIA requests; thoroughly reviewed Azure's public filings and other publicly-available information,

---

[11] As noted above, if any objections or opt-outs are received after the date of this filing up to the August 15, 2025 deadline therefor, they will be addressed on reply.

including related governmental filings; prepared for and participated in a full-day mediation session with detailed mediation briefs and participated in numerous follow-up negotiations; reviewed documents produced by Defendants and cited in the DOJ and SEC complaints; and evaluated class certification and collectability. Lead Counsel also consulted extensively with experts on damages.

Thus, Lead Plaintiff and Lead Counsel were well informed to assess the Settlement. *See In re IMAX Sec. Litig.*, 283 F.R.D. 178, 190 (S.D.N.Y. 2012) ("The threshold necessary to render the decisions of counsel sufficiently well informed, however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties."); *see also In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 425-26 (S.D.N.Y. 2001) ("To approve a proposed settlement ... the Court need not find that the parties have engaged in extensive discovery… 'Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make ... an appraisal of the Settlement.'") (citations omitted).

**Ability to Withstand a Greater Judgment:** At the time of the Settlement, Azure's ability to withstand a greater judgment was in serious question, particularly given Azure was delisted from the New York Stock Exchange on November 13, 2023 and its insurers have continued to deny coverage. Moreover, Azure's Consolidated Financial Statements for the fiscal year ended March 31, 2024[12] reported, *inter alia*, that Azure's long-term debt exceeded $900 million USD and its total liabilities exceeded $1.7 billion USD; Azure was not in compliance with financial covenants relating to loans due after March 31, 2025 aggregating to $767 million INR or $8.8

---

[12] Azure Power Global Limited Consolidated Financial Statements for the year ended March 31, 2024, available at https://investors.azurepower.com/_/media/Files/A/Azure-Power-IR/bondholder-reports/apgl-consolidated-financials-march-2024.pdf (*see* pp. 7, 17, F-8, F-33).

million USD; Azure had an extremely low current ratio of 0.49 (compared to the average renewable energy utility company current ratio of 1.4), indicating that Azure had current liabilities that were more than double Azure's current assets; Azure had a very high debt-to-equity ratio of 4.58 (compared to the average ratio for renewable energy projects of around 4.0, and an average ration of 1.1 for companies in the broader energy sector), indicating Azure is more reliant on debt financing, increasing financial risk; Azure had an accumulated deficit of $(251) million USD, indicating that the Company had been operating at a net loss; as of March 31, 2024, Azure was operating 3,041 MW of power production and its pipeline for new projects included an additional 4,270 MW, however, 3,033 MW of the pipeline was cancelled; Azure's auditors had identified a "material weakness" in its internal; controls; and its auditors found that ongoing investigations and legal proceedings raise "a doubt about [Azure's] ability to continue as a going concern." Regardless, Azure's "ability to do [withstand a greater judgment], 'standing alone, does not suggest that the settlement is unfair.'" *Davenport v. Elite Model Mgmt. Corp.*, 2014 WL 12756756, at \*7 (S.D.N.Y. May 12, 2014) (citation omitted); *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010) ("Courts have recognized that the defendant's ability to pay is much less important than other factors, especially where 'the other *Grinnell* factors weigh heavily in favor of settlement approval.'"). If the litigation continued for several more years through trial and appeals, there is a possibility that Azure would be in a more difficult financial situation and have less of an ability to fund the Settlement

Further, enforcing a judgment after a verdict could prove difficult and expensive, considering that all Defendants, including Azure, reside in India. Thus, this factor is at best "neutral and does not preclude the Court from granting final approval." *Davenport*, 2014 WL 12756756, at \*7.

19

In sum, all factors under Rule 23(e)(2) and *Grinnell* support a finding that the Settlement is fair, reasonable and adequate, and merits final approval.

## II.    THE SETTLEMENT CLASS SHOULD REMAIN CERTIFIED

Lead Plaintiff also seeks certification of a Settlement Class (as defined above). The Second Circuit has long acknowledged that courts may properly certify a class to effectuate a class action settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 72 (2d Cir. 1982). Indeed, certification of a settlement class "'has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants.'" *IMAX*, 283 F.R.D. at 186.

Lead Plaintiff's Preliminary Approval Memorandum set forth the bases for the certification of the Settlement Class for settlement purposes (ECF No. 120, at Section IV.A.-B., pp. 19-23). As shown therein, the proposed Settlement Class satisfies all the applicable requirements of Rule 23(a) and Rule 23(b)(3). The Court's April 30, 2025 Preliminary Approval Order certified the Settlement Class for settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(3). ECF No. 123, ¶¶2-5. There have been no changes to alter the propriety of class certification for settlement purposes. Accordingly, Lead Plaintiff respectfully requests that the Court affirm its determinations in the Preliminary Approval Order certifying the Settlement Class under Rules 23(a) and (b)(3). *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006) ("if the requirements of Rule 23(a) and Rule 23(b)(3) are met, certification may be granted" of settlement class"); *Stein v. Eagle Bancorp, Inc.*, 2022 WL 424855, at *2 (S.D.N.Y. Feb. 10, 2022) (affirming determinations in preliminary approval order certifying class for settlement purposes).

## III.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

A plan for allocating settlement proceeds should be approved if it is fair, reasonable, and adequate. *See IMAX*, 283 F.R.D. at 192; *Bear Stearns*, 909 F. Supp. 2d at 270. A plan of allocation

is fair and reasonable as long as it has a "rational basis." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at \*21 (S.D.N.Y. Nov. 8, 2010); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 497 (S.D.N.Y. 2009). "As numerous courts have held, a plan of allocation need not be perfect." *Christine Asia*, 2019 WL 5257534, at \*15. Generally, a plan of allocation that reimburses class members based on the relative strength and value of their claims is reasonable. *See IMAX*, 283 F.R.D. at 192. Courts give great weight to the opinion of experienced counsel. *See In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011); *see also Villa v. Highbury Concrete Inc.*, 2022 WL 19073649, at \*4 (E.D.N.Y. Nov. 25, 2022) (plan more likely to be reasonable "if recommended by experienced and competent class counsel").

Here, the proposed Plan of Allocation, which was developed by Lead Counsel in consultation with Lead Plaintiff's damages expert, provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who submit valid Claim Forms. In developing the Plan of Allocation, Lead Plaintiff's expert calculated the amount of estimated artificial inflation in the price of Azure equity shares related to Defendants' alleged false and misleading statements in this Action by considering the price changes in such shares in reaction to the alleged corrective disclosures, adjusting for price changes attributable to market and industry factors and litigation risk. ¶¶70-75; Ex. 1-B at 12-14.

Under the Plan, claimants who have an overall market gain are not eligible for a recovery. *Id*. A claimant's total Recognized Loss will be allocated from the Net Settlement Fund to Authorized Claimants on a *pro rata* basis, in proportion to the size of their total Recognized Loss, subject to a $10 minimum distribution amount. *Id.*; Ex. 1-B at 11; *see In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462-63 (S.D.N.Y. 2004) ("*Pro-rata* distribution of settlement funds

21

based on investment loss is clearly a reasonable approach"; $10 minimum distribution threshold "reasonably" applied).

Lead Counsel believe that the Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund among Settlement Class Members who suffered losses as a result of the conduct alleged in the Action. ¶¶70-76. Moreover, to date, no objections to the proposed Plan of Allocation have been received. ¶76.

## IV.   THE NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS

Rule 23(c)(2) directs that the notice be "the best notice that is practicable under the circumstances" (Fed. R. Civ. P. 23(c)(2)(B), *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974)), and Rule 23(e) directs "notice in a reasonable manner" (Fed. R. Civ. P. 23(e)(1)(B)).

The Court approved the proposed notice program in the Preliminary Approval Order, and Lead Plaintiffs executed the notice program in accordance with the provisions therein. ¶¶58-68; Ex. 1 (Angeion Decl.). Pursuant to the Preliminary Approval Order, the Claims Administrator, Angeion, timely: (i) emailed or mailed (by first-class mail) the Postcard Notice, with links to the Notice and Claim Form on the Settlement website (www.azuresecuritiessettlement.com), to all Settlement Class Members who could be identified with reasonable effort, (ii) caused the Summary Notice to be published over *PR Newswire* and *Business Wire*, which provided clear and concise information concerning the Settlement and how to obtain a copy of the Long Notice, (iii) posted the Long Notice and Claim Form on the Settlement website from which copies could be downloaded, and (iv) notified brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of securities to provide the Claims Administrator the mailing and email addresses of such beneficial owners, request additional copies of the Postcard Notice to send to all beneficial owners, or request the link to the Notice and Claim Form from Angeion and email the link to all beneficial owners. Angeion Decl. ¶¶5-12, 14. The Postcard Notice directed potential

22

Settlement Class Members to downloadable versions of the Long Notice and Claim Form posted on the Settlement website. ¶60, Ex. 1-A-C. Angeion also posted copies of the Stipulation, Preliminary Approval Order, and Complaint, along with the Long Notice and Claim Form, on the Settlement website, and provided a toll-free telephone number for Settlement Class Members to call with any questions concerning the Settlement. *Id.* at ¶¶13-14.

Further, the notice program conveyed to Settlement Class Members all of the information required by Federal Rule of Civil Procedure 23(c)(2) and the PSLRA, 15 U.S.C. §77z-(1)(a)(7). ¶60; Ex. 1-A; Ex. 1-B. Courts routinely find that comparable notice programs meet the requirements of due process and Rule 23. *See In re Advanced Battery Techs., Inc. Secs. Litig.*, 298 F.R.D. 171, 182-83 n.3 (S.D.N.Y. 2014) (collecting cases and stating that "[t]he use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts."); *In re Mut. Funds Inv. Litig.*, 2010 WL 2342413, at *6-7 (D. Md. May 19, 2010) (approving combination of postcard notice, summary notice, and detailed notice available online as "the best notice practical"); *see also In re Appharvest Sec. Litig.*, 2024 WL 967258, at *3 (S.D.N.Y. Mar. 6, 2024) (approving emailing postcard notice, and mailing where no email address is available, and similar proposed notice program including website); *In re N. Dynasty Minerals*, 2023 WL 5511513, at *14 (same); *Edwards v. N. Am. Power & Gas, LLC*, 2018 WL 3715273, at *5 (D. Conn. Aug. 3, 2018) (approving mailed notice directing class members to website).

## V.    CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court approve the Settlement and Plan of Allocation as fair, reasonable and adequate, and certify the Settlement Class for purposes of settlement.[13]

DATED: August 1, 2025                    Respectfully submitted,

                                         **LEVI & KORSINSKY, LLP**

                                         By: */s/ Shannon L. Hopkins*
                                         Shannon L. Hopkins (SH-1887)
                                         Gregory M. Potrepka (GP-1275)
                                         Andrew E. Lencyk (AL-4329)
                                         David C. Jaynes (admitted *pro hac vice*)
                                         Morgan M. Embleton (admitted *pro hac vice*)
                                         Amanda D. Foley (admitted *pro hac vice*)
                                         1111 Summer Street, Suite 403
                                         Stamford, CT 06905
                                         Telephone: (203) 992-4523
                                         Facsimile: (212) 363-7171
                                         shopkins@zlk.com
                                         gpotrepka@zlk.com
                                         alencyk@zlk.com
                                         djaynes@zlk.com
                                         membleton@zlk.com
                                         afoley@zlk.com

                                         *Lead Counsel for Lead Plaintiff and the Settlement Class*

---

[13] A proposed Final Order and Judgment approving the Settlement and Plan of Allocation and dismissing this Action with prejudice will be submitted with Lead Plaintiff's reply papers on August 29, 2025, after the deadline for objecting to the motion and requesting exclusion from the Settlement Class has passed.

24

**COMPLIANCE WITH CIVIL LOCAL RULE 7.1(c) AND INDIVIDUAL RULE 3.A.**

The undersigned, counsel of record for Lead Plaintiff Serap Lokman, certifies that this brief contains 7,706 words, which complies with the word limit of L.R. 7.1(c) regarding Length of Memoranda of Law, effective January 2, 2025, and this Court's Individual Rule 3.A. Executed on this 1st day of August, 2025.

/s/ Shannon L. Hopkins
Shannon L. Hopkins