**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SERAP LOKMAN, Individually and On Behalf of All Others Similarly Situated, | Case No. 1:22-cv-7432 |
| Plaintiff, | |
| v. | Hon. Gregory H. Woods |
| AZURE POWER GLOBAL LIMITED, RANJIT GUPTA, MURALI SUBRAMANIAN, and PAWAN KUMAR AGRAWAL, | |
| Defendants. | |

**LEAD COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT
OF LITIGATION EXPENSES, AND AWARD TO LEAD PLAINTIFF**

**TABLE OF CONTENTS**

**PAGE(S)**

I.    INTRODUCTION ............................................................................................................1

II.   THE PERCENTAGE-OF-FUND APPROACH IS APPROPRIATE FOR AWARDING
      ATTORNEYS' FEES........................................................................................................3

      A.    Counsel is Entitled to an Award of Attorneys' Fees from the Common Fund...................3

      B.    The Court Should Award Counsel a Reasonable Percentage of the Fund.........................4

III.  THE GOLDBERGER FACTORS SUPPORT THE REQUESTED FEE...............................5

      A.    Lead Counsel's Expended Time and Labor Support the Requested Fee...........................6

      B.    The Risks of Litigation Support the Requested Fee ........................................................7

      C.    The Magnitude and Complexities of the Litigation Support the Requested Fee.............11

      D.    The Quality of Counsel's Representation Supports the Requested Fee ..........................11

      E.    The Requested Fee is a Reasonable Percentage of the Settlement .................................14

      F.    Public Policy Considerations Support the Requested Fee ..............................................15

      G.    A Lodestar Cross-Check Confirms the Reasonableness of the Fee Request....................16

      H.    The Reaction of the Settlement Class Supports the Fee Request ...................................18

IV.   LEAD COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARY AND
      SHOULD BE REIMBURSED.........................................................................................19

V.    THE AWARD TO LEAD PLAINTIFF SHOULD BE APPROVED ...................................21

VI.   CONCLUSION .............................................................................................................23

**TABLE OF AUTHORITIES**

**CASES**                                                        **PAGE(S)**

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
2018 WL 6250657 (S.D.N.Y. Nov. 29, 2018) ........................................................... 22

*Anwar v. Fairfield Greenwich Ltd.*,
2012 WL 1981505 (S.D.N.Y. June 1, 2012) ......................................................... 20, 21

*Ark. Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*,
77 F.4th 74 (2d Cir. 2023) ........................................................................................ 10

*Blum v. Stenson*,
465 U.S. 886 (1984) .................................................................................................... 4

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .................................................................................................... 4

*Bozak v. FedEx Ground Package Sys., Inc.*,
2014 WL 3778211 (D. Conn. July 31, 2014) ............................................................ 15

*Capsolas v. Pasta Res. Inc.*,
2012 WL 4760910 (S.D.N.Y. Oct. 5, 2012) .............................................................. 15

*Christine Asia Co., Ltd. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ............................................................ 20

*City of Providence v. Aéropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) ................................................... 11, 13, 16

*Cornwell v. Credit Suisse Grp.*,
2011 WL 13263367 (S.D.N.Y. July 20, 2011) .......................................................... 17

*Gilliam v. Addicts Rehab. Ctr. Fund*,
2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ............................................................. 15

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000) ................................................................................. 4, , 7, 16

*Gross v. GFI Grp., Inc.*,
784 Fed. App'x 27 (2d Cir. Sept. 13, 2019)*Guevoura Fund Ltd. v. Sillerman*,
2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ........................................................... 11

*Hayes v. Harmony Gold Min. Co.*,
509 F. App'x 21 (2d Cir. 2013) ................................................................................... 5

*Hicks v. Morgan Stanley*,
2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ......................................................... 4, 16

*In re "Agent Orange" Prod. Liab. Litig.*,
818 F.2d 226 (2d Cir. 1987) ........................................................................................ 7

*In re 3D Sys. Sec. Litig.*,
2024 WL 50909 (E.D.N.Y. Jan. 4, 2024) .................................................................. 12

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006, *aff'd*, 272 F. App'x 9 (2d Cir. 2008) ................ 14

*In re Am. Bank Note Holographics, Inc.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001) ....................................................................... 11

*In re Ashanti Goldfields Sec. Litig.*,
  2005 WL 3050284 (E.D.N.Y. Nov. 15, 2005) ........................................................................ 20
*In re Bank of Am. Corp. Sec., Deriv., & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
  772 F.3d 125 (2d Cir. 2014) ................................................................................................ 21
*In re Barclays PLC Sec. Litig.*,
  2025 WL 842939 (S.D.N.Y. Mar. 18, 2025) ........................................................................ 18
*In re BioScrip, Inc. Sec. Litig.*,
  273 F. Supp. 3d 474 (S.D.N.Y. 2017) ................................................................................... 5
*In re BRF S.A. Sec. Litig.*,
  2020 WL 10618214 (S.D.N.Y. Oct. 23, 2020) ..................................................................... 18
*In re Celera Corp. Sec. Litig.*,
  2015 WL 1482303 (N.D. Cal. Mar. 31, 2015) ....................................................................... 8
*In re China Sunergy Sec. Litig.*,
  2011 WL 1899715 (S.D.N.Y. May 13, 2011) ....................................................................... 16
*In reComverse Tech., Inc. Sec. Litig.*,
  2010 WL 2653354 (E.D.N.Y. June 24, 2010) .......................................................... 8, 14, 17
*In re DDAVP Direct Purchaser Antitrust Litig.*,
  2011 WL 12627961 (S.D.N.Y. Nov. 28, 2011) .................................................................... 15
*In re Deutsche Telekom AG Sec. Litig.*,
  2005 WL 7984326 (S.D.N.Y. June 14, 2005) ...................................................................... 17
*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
  2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) .................................................................. 7, 15
*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ................................................................ passim
*In re Frontier Commc'ns Corp.*,
  2022 WL 4080324 (D. Conn. May 20, 2022) ....................................................................... 12
*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) ............................................................................. 8, 13, 21
*In re Gilat Satellite Networks, Ltd.*,
  2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007) ...................................................................... 11
*In re Gilat Satellite Networks, Ltd.*,
  2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ..................................................................... 21
*In reGlob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................................... 12, 20
*In re Grab Holdings Ltd. Sec. Litig.*,
  2025 WL 1413515 (S.D.N.Y. May 15, 2025) ........................................................... 14, 18, 22
*In re Heritage Bond Litig.*,
  2005 WL 1594389 (C.D. Cal. June 10, 2005) ...................................................................... 19
*In re Hi-Crush Partners L.P. Sec. Litig.*,
  2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ...................................................................... 13
*In re JPMorgan Precious Metals Spoofing Litig.*,
  No. 1:18-cv-10356-GHW (S.D.N.Y. July 7, 2022)*In re Kirkland Lake Gold Ltd. Sec. Litig.*,
  2024 WL 5107289 (S.D.N.Y. Dec. 13, 2024) ........................................................................ 9

iii

*In re Luckin Coffee Inc. Sec. Litig.*,
   2022 WL 22853339 (S.D.N.Y. Jul. 22, 2022) ........................................................................ 18
*In re MetLife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010).................................................................................... 21
*In re N. Dynasty Minerals Ltd. Sec. Litig.*,
   2023 WL 5511513 (E.D.N.Y. Aug. 24, 2023)........................................................................ 12
*In re Northern Dynasty Mins. Ltd. Sec. Litig.*,
   2024 WL 308242 (E.D.N.Y. Jan. 26, 2024)........................................................................... 22
*In re Qudian Sec. Litig.*,
   2021 WL 2328437 (S.D.N.Y. June 8, 2021)........................................................................... 22
*In re Reconnaissance Energy Afr. Ltd. Sec. Litig.*,
   2024 WL 5265298 (E.D.N.Y. Dec. 30, 2024) ........................................................................ 22
*In re Signet Jewelers Ltd. Sec. Litig.*,
   2020 WL 4196468 (S.D.N.Y. July 21, 2020) ......................................................................... 17
*In re Tenaris S.A. Sec. Litig.*,
   2024 WL 1719632 (S.D.N.Y. Apr. 22, 2024)......................................................................... 14
*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
   724 F. Supp. 160 (S.D.N.Y. 1989)......................................................................................... 17
*In re Veeco Instruments Inc. Sec. Litig.*,
   2007 WL 4115808 (S.D.N.Y Nov. 7, 2007) ..............4, 12, *In re Wells Fargo & Co. Sec. Litig.*,
   2023 WL 11885184 (S.D.N.Y. Sep. 8, 2023) ......................................................................... 18
*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005)*In re XL Fleet Corp. Sec. Litig.*,
   2024 WL 1884483 (S.D.N.Y April 30, 2024).................................................................... 12, 22
*Johnson v. Brennan*,
   2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ......................................................................... 5
*Lopez v. Fashion Nova*,
   2021 WL 4896288 (S.D.N.Y. Oct. 19, 2021) ......................................................................... 17
*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)............................................................................... 15, 17
*McDaniel v. Cnty. of Schenectady*,
   595 F.3d 411 (2d Cir. 2010)..................................................................................................... 4
*Missouri v. Jenkins*,
   491 U.S. 274 (1989) ............................................................................................................... 17
*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
   2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ....................................................................... 15
*Moses v. N.Y. Times Co.*,
   79 F.4th 235 (2d Cir. 2023)................................................................................................... 21
*Pearlstein v. BlackBerry Ltd.*,
   2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022)....................................................................... 22
*Ramirez v. Lovin' Oven Catering Suffolk, Inc.*,
   2012 WL 651640 (S.D.N.Y. Feb. 24, 2012) .......................................................................... 17

*Sewell v. Bovis Lend Lease, Inc.*,
  2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) ........................................................................ 17
*Shapiro v. JPMorgan Chase & Co.*,
  2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014)*Shupe v. Rocket Cos., Inc.*,
  752 F. Supp. 3d. 735 (E.D. Mich. 2024) .................................................................................. 9
*Silverstein v. Alliance Bernstein, L.P.*,
  2013 WL 7122612 (S.D.N.Y. Dec. 20, 2013) ......................................................................... 19
*Skiadas v. Acer Therapeutics Inc.*,
  No. 1:19-cv-06137-GHW (S.D.N.Y. Jan. 7, 2022) ................................................................ 15
*TBK Partners, Ltd. v. Warshow*,
  1977 WL 1047 (S.D.N.Y. Oct. 5, 1977) ................................................................................. 20
*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ............................................................................................................... 16
*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) ...................................................................................................... 4
*Xu v. Gridsum Holding Inc.*,
  2024 WL 5301450 (S.D.N.Y. Apr. 3, 2024) ........................................................................... 14

**Statutes**

Supreme Court and the Private Securities Litigation Reform Act ............................................. 4, 21

**Rules**

Fed. R. Civ. P. 23(c)(1)(C) ......................................................................................................... 9

Lead Counsel, Levi & Korsinsky, LLP ("Levi & Korsinsky"), respectfully submit this memorandum of law in support of their motion for: (1) an award of attorneys' fees of one third of the Settlement Amount, plus interest accrued thereon while said amount was in escrow; (2) reimbursement of $107,069.18 in litigation expenses plus interest; and (3) an award to Lead Plaintiff Serap Lokman in the amount of $10,000.

## I.   INTRODUCTION

Lead Counsel[1] have vigorously litigated this case without compensation for nearly three years. Having achieved a highly favorable $23,000,000.00 cash settlement for the benefit of the Settlement Class, Lead Counsel now request that the Court award attorneys' fees in the amount of one-third of the Settlement Amount plus interest, award reimbursement of their litigation expenses, and provide a compensatory award to Lead Plaintiff for her time and effort of $10,000. Each of these requests is consistent with Second Circuit precedent and warranted under the circumstances of this Action.

The Settlement provides an excellent result for the Settlement Class. The Settlement avoids the considerable risks and expense of the pending motions to dismiss, class certification, summary judgment, trial, and any appeals. After consultation with experts on damages and taking into account Defendants' defenses, Lead Counsel believe that the maximum damages that the Settlement Class could recover for the Section 10(b) and 20(a) claims is $141.2 million. ¶54. The $23 million Settlement thus represents a recovery of 16.3% of maximum recoverable damages if

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Stipulation of Settlement, dated April 11, 2025 (the "Stipulation" (ECF No. 119-1)). Except where otherwise indicated, paragraph references in the form "¶__" are to the numbered paragraphs of the Declaration of Shannon L. Hopkins submitted herewith ("Hopkins Declaration"), which provides additional factual support for this Motion, including a more detailed description of the efforts undertaken by Lead Plaintiff and Lead Counsel.

1

Lead Plaintiff prevailed at trial, well above the range of the average recovery in shareholder litigation. *Id.*

Lead Counsel achieved the Settlement through diligence and skill. Among other things, they conducted an extensive international factual investigation, centered on events in India; drafted three detailed amended complaints based on their continuing investigation; researched, analyzed, and addressed multiple submissions related to motions to dismiss and defenses by multiple defendants; consulted extensively with experts on market efficiency, loss causation, and damages; reviewed documents produced by Defendants and conducted a collectability analysis; and engaged in hard-fought settlement negotiations over several weeks before an experienced and respected mediator. *See also, e.g.*, ¶¶8, 15-33, 80-89. Lead Counsel's negotiation of a $23 million Settlement in a case where the Company's stock is delisted and currently trades in the $0.50 per share range, and the Company's insurers have disclaimed coverage, is likewise a testament to their skilled and successful representation of the Settlement Class.

The reaction of the Settlement Class shows overwhelming support not only for the Settlement, but also for the requested fees and expenses. Pursuant to the Preliminary Approval Order (ECF No. 123), the Claims Administrator, Angeion Group, LLC ("Angeion"), mailed or emailed 22,467 notice forms to Settlement Class Members. *See* Declaration of Dawn M. Cody Regarding: (A) Mailing and Emailing of Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received to Date, ¶11 ("Angeion Decl.", attached as Ex. 1 to the Hopkins Declaration). The Notice informed Settlement Class Members that Lead Counsel intended to seek attorneys' fees of up to one-third of the Settlement Amount plus interest, reimbursement of up to $150,000 for out-of-pocket expenses plus interest, and an award to Lead Plaintiff of up to $10,000. Neither Lead Counsel nor the Claims Administrator have received any

objection to the proposed award of fees and expenses or to the proposed award to Lead Plaintiff.[2] *See* Angeion Decl. ¶18. Moreover, to date, no putative member of the Settlement Class has requested exclusion from the Settlement. *See* Angeion Decl. ¶17.

A lodestar cross-check further confirms the fairness and reasonableness of Lead Counsel's fee request. Lead Counsel spent a total of over 4,843 hours of professional time having a market value of $3,118,646.25 in prosecuting the claims in this litigation. ¶83. The requested one-third award will result in a lodestar multiplier of approximately 2.45 which is well within the range of reasonable multipliers that courts in the Second Circuit routinely award. *See infra* at III.G.

In addition, the litigation expenses for which Lead Counsel request reimbursement are modest given the size and scope of this litigation and are common litigation expenses necessary for the prosecution of the Action. Similarly, the requested award to Lead Plaintiff is reasonable given the considerable time spent and service that she provided to the Settlement Class.

For these reasons, and as further set forth below, Lead Counsel and Lead Plaintiff respectfully submit that the requested award of attorneys' fees amounting to one-third of the Settlement Amount (or $7,666,666,67) plus interest; reimbursement of litigation expenses in the amount of $107,069.18 plus interest; and award of $10,000 to the Lead Plaintiff are eminently reasonable and should be granted.

## II.    THE PERCENTAGE-OF-FUND APPROACH IS APPROPRIATE FOR AWARDING ATTORNEYS' FEES

### A.    Counsel is Entitled to an Award of Attorneys' Fees from the Common Fund

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's

---

[2] The deadline to file objections and to request exclusion from the Settlement is August 15, 2025. Lead Counsel will file a reply brief on August 29, 2025 updating the Court, after this deadline has passed.

fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Second Circuit has also held that attorneys who create a "common fund" are entitled to "a reasonable fee—set by the court—to be taken from the fund." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). Courts recognize that awards of reasonable "attorneys' fees from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature." *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *2 (S.D.N.Y Nov. 7, 2007); *see also Hicks v. Morgan Stanley*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

**B.    The Court Should Award Counsel a Reasonable Percentage of the Fund**

In the Second Circuit, courts "may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method." *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (superseded on other grounds)). The Supreme Court and the Private Securities Litigation Reform Act ("PSLRA") suggest that a reasonable fee in a common-fund case "is based on a percentage of the fund bestowed on the class," *see Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), and courts in the Second Circuit "often and emphatically ... note[] [that] the percentage of recovery methodology is considered the most efficient and logical means for calculating attorneys' fees," *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *23 (S.D.N.Y. Nov. 8, 2010) (citation omitted); *see also Wal-Mart*, 396 F.3d at 121 (noting the "trend in this Circuit is toward the percentage method," rather than the lodestar method); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005) (citing 15 U.S.C. §78u-4(a)(6) and noting "the PSLRA's express contemplation that the percentage method will be used to calculate attorneys' fees in securities class actions").

4

"There are several reasons that courts prefer the percentage method," including, among others, that it: (i) "directly aligns the interests of the class and its counsel because it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made"; (ii) is "closely aligned with market practices because it mimics the compensation system actually used by individual clients to compensate their attorneys"; (iii) "provides a powerful incentive for the efficient prosecution and early resolution of litigation"; (iv) "discourages plaintiffs' lawyers from running up their billable hours, one of the most significant downsides of the lodestar method"; and (v) "preserves judicial resources because it relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Johnson v. Brennan*, 2011 WL 4357376, at \*14-15 (S.D.N.Y. Sept. 16, 2011) (citations and quotation marks omitted); *see also Hayes v. Harmony Gold Min. Co.*, 509 F. App'x 21, 24 (2d Cir. 2013); *In re BioScrip, Inc. Sec. Litig.*, 273 F. Supp. 3d 474, 495-96 (S.D.N.Y. 2017).

In sum, examining the fee as a percentage of the Settlement Class's recovery is the most logical and appropriate method to determine the fee's reasonableness, and should be used here.

## III.    THE GOLDBERGER FACTORS SUPPORT THE REQUESTED FEE

The Second Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation…; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50 (internal quotes and citation omitted). Consideration of these factors supports the reasonableness of the requested fee.

**A.**     **Lead Counsel's Expended Time and Labor Support the Requested Fee**

The time and effort expended by Lead Counsel in prosecuting the Action and achieving the Settlement support the requested fee. As set forth in greater detail in ¶¶8, 15-34, 80-89 of the Hopkins Declaration, Lead Counsel:

- Conducted an extensive review of all relevant public filings and other publicly available information concerning the Company, and/or Defendants;

- Worked with a private investigator to interview Azure's former employees and investigate its business affairs in India, which continued throughout the litigation;

- Thoroughly researched the applicable law governing the claims and potential defenses involved, as well as U.S. and Indian law and regulations relating to Defendants' alleged underlying wrongdoing, along with Azure's own ethics policies;

- Consulted with experts on damages and causation, among other issues;

- Filed an amended complaint, second amended complaint, and prepared a third amended complaint for filing at the time Settlement was reached;

- Responded to Defendants' separate motions to dismiss, and pre-motion conference submissions concerning Defendants' motions to dismiss, appeared at pre-motion conferences discussing the parties' respective positions, and submitted supplemental authority on the motions to dismiss;

- Continued their investigation into the regulatory aspects of this case, including reviewing (and submitting to the Court) two SEC complaints and a U.S. government indictment relevant to the allegations in this Action;

- Reviewed hundreds of pages of documents produced by Defendants;

- Submitted a Freedom of Information Act to the U.S. Department of Justice ("DOJ"), and reviewed documents produced by Defendants;

- Prepared detailed mediation submissions, and engaged in a full-day mediation session with an experienced mediator, Michelle Yoshida, and several weeks of negotiations after, ultimately leading to a Settlement that is highly favorable to the Settlement Class;

- Performed an extensive analysis of Azure's ability to satisfy a judgment;

- Negotiated the terms of the Settlement;

- Worked with a consulting damages expert to draft a plan of allocation that treats Lead Plaintiff and all other members of the proposed Settlement Class fairly;

- Drafted the preliminary approval motion and supporting papers;

- Worked with the Court-appointed Claims Administrator to provide notice to the Settlement Class; and

- Drafted the final approval motion and supporting papers.

Moreover, Lead Counsel's work on this case will not end with the Court's approval of the proposed Settlement. Additional hours and resources will necessarily be expended to assist Settlement Class Members with their Proof of Claim forms, responding to Settlement Class Members' inquiries, shepherding the claims process to conclusion, and filing a motion for distribution. No additional compensation will be sought for this work. *See In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *27 (S.D.N.Y. Nov. 9, 2015) ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist Class Members in submitting their Proof of Claims, the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable.").

The substantial time and effort devoted to this case by Lead Counsel to obtain the $23,000,000 Settlement confirms that the fee request is reasonable.

**B.    The Risks of Litigation Support the Requested Fee**

"[T]he risk of success [i]s 'perhaps the foremost' factor to be considered" in determining a reasonable award of attorneys' fees. *Goldberger*, 209 F.3d at 54 (quoting *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 226, 236 (2d Cir. 1987)); *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *21 (S.D.N.Y. Mar. 24, 2014) ("The Second Circuit long ago recognized that courts should consider the risks associated with lawyers undertaking a case on a contingent

fee basis."). Numerous courts have recognized that "class actions confront even more substantial risks than other forms of litigation[,]" *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010), and that "[s]ecurities class actions such as this are notably difficult and notoriously uncertain." *Flag Telecom*, 2010 WL 4537550, at *27 (internal quotation marks omitted). "As with any securities litigation case, it would be difficult for Lead Plaintiff to prove loss causation and damages at trial…. Lead Plaintiff would risk recovering nothing without a settlement." *In re Celera Corp. Sec. Litig.*, 2015 WL 1482303, at *5 (N.D. Cal. Mar. 31, 2015).

The many risks that Lead Counsel faced in prosecuting this suit more than justify the requested one-third fee. *See, e.g.*, ¶¶35-55, 86-89. From the outset of this Action, Lead Counsel understood that they were embarking on a complex, expensive, and potentially lengthy litigation, involving facts, events and discovery primarily based in India, with no guarantee of ever being compensated for the substantial investment of time and money the case would require. In undertaking that responsibility, "plaintiffs' counsel were obligated to assure that sufficient attorney and para-professional resources were dedicated to the prosecution of the [A]ction; counsel also faced the responsibility of advancing litigation and overhead expenses on this case for [more than three] years." *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. 2011). Indeed, "[u]nlike counsel for Defendants, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, Lead Counsel have not been compensated for any time or expenses since this case began more than [three] years ago." *Flag Telecom,* 2010 WL 4537550, at *27. Lead Counsel's commitment was substantial: $3,188,646.25 in lodestar and $107,069.18 in out-of-pocket litigation-related costs. Had they not obtained a recovery, these sums and more could have all been lost. *See Gross v. GFI Grp., Inc.*, 784 Fed. App'x 27, 28 (2d Cir. Sept. 13, 2019)

8

(affirming grant of summary judgment against plaintiffs in securities fraud class action); *see also* ¶¶82-84 (lodestar), 94-102 (expenses) & Hopkins Declaration Ex. 3.

Defendants, represented by world-class counsel at Dentons US LLP, Willkie Farr & Gallagher LLP and Covington & Burling LLP, have hotly contested this litigation at every step, and inevitably would have continued to do so if the litigation had continued. At the time of Settlement, Defendants' motions to dismiss were pending. Assuming Lead Plaintiff survived those motions in whole or in part, Lead Plaintiff would have faced significant hurdles in connection with summary judgment and class certification. This is in addition to the substantial burdens of prevailing at trial and likely appeals—a process that could possibly extend for years and might lead to a smaller recovery, or no recovery at all. Indeed, in recent years, securities class actions that survive pleading-stage motions to dismiss have faced increasing risk of failure at class certification and on *Daubert* motions, summary judgment, at trial, and on appeal. *See, e.g.*, *In re Kirkland Lake Gold Ltd. Sec. Litig.*, 2024 WL 5107289, at *1 (S.D.N.Y. Dec. 13, 2024) (granting summary judgment); *Shupe v. Rocket Cos., Inc.*, 752 F. Supp. 3d. 735 (E.D. Mich. 2024) (denying certification) Moreover, if Defendants prevailed on any of their defenses, damages would be substantially reduced or eliminated.

If this case continued past the motions to dismiss, Lead Plaintiff would need to convince the Court to certify a class for litigation purposes, which Defendants could contest at a later stage of the proceedings. Even if the Court granted class certification, risks to maintaining certification would persist: Defendants could petition to appeal the certification order under Rule 23(f) or move for modification or decertification at any point prior to final judgment. ¶¶38-39, 57. *See* Fed. R. Civ. P. 23(c)(1)(C); *Ark. Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74, 81 (2d Cir.

9

2023) (reversing class certification order under Fed. R. Civ. P. 23(f) more than ten years after the case was filed).

At trial, Lead Plaintiff would face significant risks as to both liability and damages. For instance, Defendants would continue to argue that (i) reasonable investors would not be misled by Defendants' statements regarding compliance and safety because no reasonable investors would understand such statements as guarantees (especially in Azure's industry) that no violations at all may have been occurring, even if unbeknownst to Defendants; (ii) reasonable investors would not be misled by Defendants' statements given Defendants' risk disclosures; (iii) Defendants authorized full investigations of alleged whistleblower complaints with the support of independent expert third parties and were entitled to rely on their findings that the complaints were "not substantiated"; (iv) the whistleblower complaints by themselves did not establish wrongdoing, at least wrongdoing that was pertinent to Lead Plaintiff's claims; and (v) allegations about MW or kWh generated were not shown to be incorrect. Defendants also sharply disputed whether Defendants' scienter could be established, arguing there was no motive and no insider selling; and whether the declines in Azure's share price following the alleged corrective disclosures were proximately caused by the alleged misrepresentations or omissions. While Lead Counsel believe they could support their claims at trial, they acknowledge the risks that Defendants could prevail on any of these disputed issues. ¶¶40-44, 46. Further, the fact that the key evidence was in India, where Azure operated, rendered discovery difficult, protracted and expensive, and indications of partial spoliation of evidence[3] only increased the risk that Lead Plaintiff may not have been able to obtain sufficient documents and/or testimony necessary to prove her case. Moreover, Lead Plaintiff's claims would also be subject to complex expert testimony, leading to a "battle of the

---

[3] *See* ECF No. 114-1 (Indictment), ¶¶38, 77.

experts" in which Defendants might prevail. *See* ¶¶45-46, 51-52, 56; *see also In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001).

Even if Lead Plaintiff prevailed at trial, a jury could award damages far lower than Lead Plaintiff's estimation. Finally, Lead Plaintiff faced considerable risks related to enforcement and collectability of any judgment, given that all Defendants resided in India, Azure's shares were delisted, and its insurers had disclaimed coverage. ¶¶20, 55.

Given these substantial litigation risks, the achievement of a $23 million Settlement confers a strong benefit upon the Settlement Class and supports the requested fee.

### C.   The Magnitude and Complexities of the Litigation Support the Requested Fee

In addition to the specific challenges discussed above, courts recognize that "virtually all securities actions[] [are] inherently complex." *See, e.g.*, *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *19 (S.D.N.Y. Dec. 18, 2019); *In re Gilat Satellite Networks, Ltd.*, 2007 WL 1191048, at *10 (E.D.N.Y. Apr. 19, 2007) ("Securities class actions are generally complex and expensive to prosecute."). Moreover, the wide reach of this Action—implicating a top producer of renewable energy in India with numerous government contracts, many of which were at issue in this case; the complexity of the alleged underlying wrongdoing; the complex new technology involved; and the accounting issues at issue—rendered it particularly challenging. Accordingly, the magnitude and complexity of the Action supports the conclusion that the requested fee is fair and reasonable. *See City of Providence v. Aéropostale, Inc.*, 2014 WL 1883494, *16 (S.D.N.Y. May 9, 2014) ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request."); ¶¶46, 56, 86.

### D.   The Quality of Counsel's Representation Supports the Requested Fee

The quality of the representation by Lead Counsel is another important factor that supports

the reasonableness of the requested fee. Here, "the quality of the representation of [Lead] Counsel is best evidenced by the quality of the result." *Veeco,* 2007 WL 4115808, at \*7; *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004). The Settlement provides an outstanding result for the Settlement Class in light of the serious risks of continued litigation. Lead Counsel, after consulting with experts, estimate that the maximum recoverable damages were $141.2 million, assuming Lead Plaintiff prevailed on every claim, from the motions to dismiss through trial, and for the entire Settlement Class Period. Thus, the $23 million Settlement represents approximately 16.3% of the maximum potential recoverable damages. This result is far above the range of the average recovery in shareholder litigation. *See, e.g.*, *In re XL Fleet Corp. Sec. Litig.*, 2024 WL 1884483 (S.D.N.Y April 30, 2024) (approving settlement in securities class action recovering between 3.9% to 7.8% of estimated damages); *In re 3D Sys. Sec. Litig.*, 2024 WL 50909, at \*12 & n.11 (E.D.N.Y. Jan. 4, 2024) (approving settlement amount of $4 million, representing approximately 1% of maximum recoverable damages); *In re N. Dynasty Minerals Ltd. Sec. Litig.*, 2023 WL 5511513, at \*10-11 & n.11 (E.D.N.Y. Aug. 24, 2023) (finding a recovery of 2.3% of maximum potential damages to be adequate relief); *In re Frontier Commc'ns Corp.*, 2022 WL 4080324, at \*14 (D. Conn. May 20, 2022) (approving 7% of estimated maximum recoverable damages).

The percentage recovery also exceeds the 1.2% median settlement value in 2024 for all securities class actions. *See* Joint Declaration Ex. 2 (NERA, Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review at pp. 26-27 (Jan. 22, 2025)).[4] Such a result would not have been achieved but for Lead Counsel's zealous representation and diligent and resourceful international investigation, which resulted in a comprehensive First Amended and Second

---

[4] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement Fund based on the number or value of the claims submitted.

12

Amended Complaint, whose skillful briefing presented compelling arguments opposing Defendants' motions to dismiss, and who aggressively continued to press forward with their factual investigation and prosecution of the Action, and negotiated an outstanding result for the Settlement Class in a litigation fraught with risks and obstacles.

The requested fee is further justified because Lead Counsel independently investigated and developed the claims alleged in the SAC without the benefit of a known regulatory investigation or settlement. *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at \*15 (S.D.N.Y. Dec. 19, 2014) ("Lead Counsel did not have the benefit of a 'road map' established by a government investigation off which they could 'piggy back', but instead independently developed factual allegations and legal theories"); *City of Providence*, 2014 WL 1883494, at \*16 (noting "there was no road-map for Lead Counsel to follow in this Action as no governmental agency investigated or brought action against Defendants"); *In re Giant Interactive*, 279 F.R.D. at 164-65 (fee supported "in light of the fact that this case (unlike many other securities class actions) was independently developed by plaintiffs' counsel, as opposed to following, or piggybacking on, a regulatory investigation or settlement").[5] In fact, Defendants publicly denied all whistleblower claims and downplayed regulatory investigations.

The quality of representation is also reflected in the experience of Lead Counsel. Lead Counsel's attorneys on this case all specialize in securities class action litigation and collectively have over eighty years of experience that contributed to the strong result here. *See* Hopkins Declaration Ex. 3-A. The quality of opposing counsel also matters. *See, e.g.*, *Veeco*, 2007 WL 4115808, at \*7 (among factors supporting fee award was that defendants were represented by "one

---

[5] The Indictment and SEC complaints were not announced until settlement negotiations were well underway, and Defendants continued to maintain they were not related to the specific allegations in this Action and that they were unaware of the undisclosed adverse facts or their potential impropriety at the time their statements were made.

13

of the country's largest law firms"); *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels work") (internal citations omitted), *aff'd*, 272 F. App'x 9 (2d Cir. 2008). Here, Defendants were represented by Dentons US LLP, Willkie Farr & Gallagher LLP and Covington & Burling LLP, all well-recognized global defense firms that vigorously represented Defendants throughout this Action. ¶91. Notwithstanding this formidable opposition, Lead Counsel's thorough investigation, ability to present a strong case, and demonstrated willingness to vigorously prosecute the Action enabled Lead Counsel to achieve a highly favorable Settlement. ¶¶15-33, 54, 80-89. Thus, this factor supports the requested fee.

### E.      The Requested Fee is a Reasonable Percentage of the Settlement

"When determining whether a fee request is reasonable in relation to a settlement amount, 'the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value.'" *Comverse Tech.*, 2010 WL 2653354, at *3. The one-third fee requested by Lead Counsel is well within the range of percentage fees that have been awarded in the Second Circuit in comparable securities class actions. *See, e.g.*, *In re Grab Holdings Ltd. Sec. Litig.*, 2025 WL 1413515, at *5 (S.D.N.Y. May 15, 2025) (awarding one-third of $80 million settlement); *In re Tenaris S.A. Sec. Litig.*, 2024 WL 1719632, at *8, 10 (S.D.N.Y. Apr. 22, 2024) (noting "[d]istrict courts within the Second Circuit routinely approve attorneys' fees awards of one third or 33 1/3% as reasonable" and awarding one-third of $9.5 million settlement, representing 4.02-5.01% of "best-case" recovery); *Xu v. Gridsum Holding Inc.*, 2024 WL 5301450, at *1 (S.D.N.Y. Apr. 3, 2024) (Woods, J.) (awarding one-third of $4.5 million settlement); *In re JPMorgan Precious Metals Spoofing Litig.*, No. 1:18-cv-10356-GHW, ECF No. 114, at 2 (S.D.N.Y. July 7, 2022) (awarding one-third of $60 million settlement); *Skiadas v. Acer*

*Therapeutics Inc.*, No. 1:19-cv-06137-GHW, ECF No. 136, at 1 (S.D.N.Y. Jan. 7, 2022) (awarding one-third of $8.35 million settlement); *In re Facebook*, 2015 WL 6971424, at *9 (awarding 33% of $26.5 million settlement); *In re DDAVP Direct Purchaser Antitrust Litig.*, 2011 WL 12627961, at *5 (S.D.N.Y. Nov. 28, 2011) (awarding one-third of $20 settlement).

Indeed, a one-third fee is so frequently awarded in class actions in this District that many courts recognize it to be the "norm" or "typical." *See, e.g., Capsolas v. Pasta Res. Inc.*, 2012 WL 4760910, at *8 (S.D.N.Y. Oct. 5, 2012) ("Class counsel's request for one third of the Fund is reasonable and 'consistent with the norms of class litigation in this circuit[]'"); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) ("Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit."); *Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (fee equal to one-third of the settlement fund is "consistent with the norms of class litigation in this circuit"); *Bozak v. FedEx Ground Package Sys., Inc.*, 2014 WL 3778211, at * 7 (D. Conn. July 31, 2014) ("The one-third amount that plaintiffs request is typical of fee awards in this Circuit.").

Thus, Lead Counsel's requested fee is typical and consistent with other fees awarded in the Second Circuit for comparable securities class actions.

**F.      Public Policy Considerations Support the Requested Fee**

"In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002). In particular, securities class actions like this complement governmental enforcement and protect investors. "[The Supreme] Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and

15

the Securities and Exchange Commission." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). If the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook." *Flag Telecom*, 2010 WL 4537550, at *29. As a practical matter, "[l]awsuits such as this one can only be maintained if competent counsel can be retained to prosecute them. This will occur if courts award reasonable and adequate compensation for such services where successful results are achieved." *City of Providence*, 2014 WL 1883494, at *18; *see also Hicks*, 2005 WL 2757792, at *9. Consequently, public policy considerations favor Lead Counsel's attorneys' fee request. *See In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *17 (S.D.N.Y. May 13, 2011) ("The Court finds that public policy supports granting attorneys' fees that are sufficient to encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the SEC." (internal quotation marks omitted)).

## G.     A Lodestar Cross-Check Confirms the Reasonableness of the Fee Request

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, the Second Circuit permits courts to "cross-check" the proposed award against counsel's lodestar. *See Goldberger*, 209 F.3d at 50. In cases like this, fees representing multiples of lodestar are regularly awarded to reflect the quality of the result, the contingency-fee risk, and other relevant factors. *See, e.g., Flag Telecom*, 2010 WL 4537550, at *26 ("'Under the lodestar method, a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and

16

other factors.'"); *Comverse*, 2010 WL 2653354, at \*5 ("Where ... counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar.").[6]

"In complex litigation, lodestar multipliers between 2 and 5 are commonly awarded, and fee awards resulting in multipliers as high as 6 have also been approved." *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at \*16 (S.D.N.Y. July 21, 2020) (collecting cases); *see also Lopez v. Fashion Nova*, 2021 WL 4896288, at \*3 (S.D.N.Y. Oct. 19, 2021) ("In this Circuit, courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers." (cleaned up)); *Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, at \*13 (S.D.N.Y. Apr. 16, 2012) (in complex contingent litigation, "[c]ourts commonly award lodestar multipliers between two and six"). Even higher multipliers have been awarded, particularly where, as here, "Class Counsel were able to use their considerable expertise in the type of claims asserted in th[e] action to achieve an excellent result for the Class in a highly efficient manner at an early stage of litigation." *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, 2012 WL 651640, at \*4 (S.D.N.Y. Feb. 24, 2012); *see also Maley*, 186 F. Supp. 2d at 369 (finding that a multiplier of 4.65 is "well within the range awarded by courts in this Circuit and courts throughout the country" in securities cases); *Cornwell v. Credit Suisse Grp.*, 2011 WL 13263367, at \*2 (S.D.N.Y. July 20, 2011) (4.7 multiplier); *In re Deutsche Telekom AG Sec. Litig.*, 2005 WL 7984326, at \*4 (S.D.N.Y. June 14, 2005) (3.97 multiplier).

Here, a lodestar cross-check further supports the requested fee. Lead Counsel collectively devoted a total of 4,843.15 hours to the prosecution of this Action, resulting in a lodestar of $3,118,646.25 and a multiplier of 2.45. ¶¶83-84. This multiplier is well within the range of

---

[6]The Supreme Court and courts in this Circuit have long approved the use of current rates in the lodestar calculation to "compensate for the delay in receiving compensation, inflationary losses, and the loss of interest." *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989); *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989).

17

multipliers commonly awarded in securities class actions and other complex litigation. *See, e.g.*, *Grab Holdings*, 2025 WL 1413515, at *5 (awarding fees representing multiplier of 2.71); *In re Wells Fargo & Co. Sec. Litig.*, 2023 WL 11885184, at *1 (S.D.N.Y. Sep. 8, 2023) (awarding fees representing multiplier of 3.8 as referenced in the fee brief at ECF No. 189 at 21); *In re Barclays PLC Sec. Litig.*, 2025 WL 842939, at *1 (S.D.N.Y. Mar. 18, 2025) (awarding fees with lodestar multiplier of 3.18); *In re Luckin Coffee Inc. Sec. Litig.*, 2022 WL 22853339, at *2 (S.D.N.Y. Jul. 22, 2022) (awarding fees with lodestar multiplier of 4.6); *In re BRF S.A. Sec. Litig.*, 2020 WL 10618214, at *1 (S.D.N.Y. Oct. 23, 2020) (awarding $10 million in fees with lodestar multiplier of 5.57 as calculated from the lodestar of $1,794,898.00, from the fee brief at ECF No. 166 at 9).

Thus, the lodestar cross-check confirms that the requested fee is reasonable.

### H.    The Reaction of the Settlement Class Supports the Fee Request

The overwhelmingly positive reaction by Settlement Class Members also supports the requested fee. "[N]umerous courts have noted that the lack of objection from members of the class is one of the most important factors in determining the reasonableness of a requested fee." *Flag Telecom*, 2010 WL 4537550, at *29. The Claims Administrator mailed or emailed 22,467 copies of the Court-approved Notice to Settlement Class Members. Angeion Decl. at ¶11. The Notice was also made available to the public on the Claims Administrator's website, and a Summary Notice was published on two national news wires. *Id*. at ¶¶12, 14.

The Notice informed Settlement Class Members that Lead Counsel would apply for attorneys' fees of up to one-third of the Settlement plus interest, litigation expenses of up to $150,000 plus interest, and awards to the Lead Plaintiff of up to $10,000. The Notice also advised Settlement Class Members of their right to object to any or all of these requests; however, not a single objection was raised.

That, to date, not even one Settlement Class Member has objected and none have requested exclusion, "is an exceptionally strong indication of the fairness of the Settlement," and supports the fee request. *Flag Telecom*, 2010 WL 4537550, at *16; Angeion Decl. at ¶¶16-18; *see also Silverstein v. Alliance Bernstein, L.P.*, 2013 WL 7122612, at *5 (S.D.N.Y. Dec. 20, 2013) (finding lack of objections and low exclusion rate supported fee request); *In re Heritage Bond Litig.*, 2005 WL 1594389, at *16 (C.D. Cal. June 10, 2005) (concluding "that the lack of significant objections to the requested fees justifies an award of one-third of the Settlement Fund[,]" particularly where the number of objections to the fee was "remarkably small given the wide dissemination of notice"). Lastly, the Lead Plaintiff supports the award of the requested fee. *See* Hopkins Declaration Ex. 4.

## IV.    LEAD COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARY AND SHOULD BE REIMBURSED

Lead Counsel's expenses are reasonable, consistent with the out-of-pocket expenses that clients typically pay in complex litigation of this type, and were necessarily incurred to achieve the $23 million gross recovery for the Settlement Class. Lead Counsel have incurred litigation expenses of $107,069.18, for which they have not been reimbursed to date. ¶¶77, 94. The amount requested is significantly less than that identified in the Notice, which apprised Settlement Class Members that Lead Counsel could seek expenses in an amount up to $150,000, plus interest accrued.

No Settlement Class Member has objected to the expense reimbursement request. Angeion Decl. ¶18. Moreover, the Lead Plaintiff supports it. *See* Hopkins Declaration Ex. 4. These expenses should be reimbursed. Consistent with other jurisdictions, courts in the Second Circuit find that expenses for "investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review[] are the type for which 'the paying, arms' length

19

market' reimburses attorneys" and thus "are properly chargeable to the Settlement fund." *Glob. Crossing*, 225 F.R.D. at 468 (quoting *TBK Partners, Ltd. v. Warshow*, 1977 WL 1047, at *3 (S.D.N.Y. Oct. 5, 1977)). Lead Counsel incurred only those expenses necessary to advance the interests of the Settlement Class.

Here, Lead Counsel seek reimbursement for expenses primarily from expert witness fees, investigative fees, mediation fees, process serving fees, legal research database charges, and reasonable travel expenses (*see* ¶¶97-102 & Hopkins Declaration Ex. 3), each of which is the type "the paying, arms' length market" reimburses to attorneys. *Anwar v. Fairfield Greenwich Ltd.*, 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012); *see also In re Ashanti Goldfields Sec. Litig.*, 2005 WL 3050284, at *5 (E.D.N.Y. Nov. 15, 2005) (granting reimbursement of $1,377,825.93 in litigation expenses and noting "the largest expense, totaling over $500,000, was for the services of expert witnesses … This is not unusual in securities litigation actions"). Similarly, courts routinely reimburse expenses for "travel, including air and ground transportation, hotels, and meals ... electronic discovery fees" and "other incidental expenses" such as "copying, service of process, [and] filing fees[.]" *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *20 (S.D.N.Y. Oct. 16, 2019).

The expenses for which Lead Counsel seek reimbursement were all necessary for the successful prosecution and resolution of the Action on behalf of the Settlement Class and are of the type routinely charged to paying clients. *See* ¶¶97-102 & Hopkins Declaration Ex. 3. The reasonableness of these expenses is further confirmed by the fact that, in the aggregate, they only amount to a tiny 0.46% of the Settlement Fund. Accordingly, these expenses should be reimbursed out of the Settlement Fund.

## V.    THE AWARD TO LEAD PLAINTIFF SHOULD BE APPROVED

Lead Plaintiff also requests that the Court award her $10,000 as reimbursement for the significant time she expended in representing the Settlement Class in the prosecution of claims against Defendants. *See* 15 U.S.C. §78u-4(a)(4). This amount was disclosed in the Notice and, no Settlement Class Member has objected to the award amount. "[C]ourts evaluating the substantive fairness of a settlement must ensure that proposed incentive awards are reasonable and promote equity between class representatives and absent class members." *Moses v. N.Y. Times Co.*, 79 F.4th 235, 245 (2d Cir. 2023). Courts in the Second Circuit "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *19 (E.D.N.Y. Sept. 18, 2007); *In re Bank of Am. Corp. Sec., Deriv., & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 132–33 (2d Cir. 2014) (affirming the award of PSLRA expense and costs to lead plaintiffs totaling $453,000). "PSLRA awards are not limited to 'lost wages or other documented expenses[]'…. [and] may be awarded in recognition of, for example, 'the time and effort expended by that plaintiff in assisting in the prosecution of the litigation.'" *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 370 (E.D.N.Y. 2010); *see also Anwar*, 2012 WL 1981505, at *3 ("Courts consistently approve awards in class action lawsuits to compensate named plaintiffs for the services they provide and burdens they endure during litigation."); *In re Giant Interactive*, 279 F.R.D. at 165-66.

Here, Lead Plaintiff took an active role in the litigation by, *inter alia*, reviewing all pleadings and briefing in the Action, communicating regularly with Lead Counsel regarding developments in the Action, searching for and preserving relevant documents for anticipated

production to Defendants, monitoring and consulting with counsel concerning the progress of settlement negotiations, attending the Mediation, approving the Settlement, and otherwise being involved in the litigation. *See* Hopkins Declaration Exs. 4A-4AC. Lead Plaintiff estimates that she each spent approximately 47.25 hours on these efforts for the benefit of the Settlement Class. *See* Hopkins Declaration Ex. 4 at ¶14; *see also* ¶¶103-05.

The proposed $10,000 award is a modest award in this Circuit. *See In re Qudian Sec. Litig.*, 2021 WL 2328437, at *2 (S.D.N.Y. June 8, 2021) (awarding lead plaintiff $25,000 and another class representative $12,500 from $8.5 million settlement fund); *In re Northern Dynasty Mins. Ltd. Sec. Litig.*, 2024 WL 308242, at *17 (E.D.N.Y. Jan. 26, 2024) (awarding $20,000 to lead plaintiff as "in line with or ... more modest than others that have been awarded"); *Flag Telecom*, 2010 WL 4537550, at *31 (approving award of $100,000 to lead plaintiff); *XL Fleet*, 2024 WL 1884483, at *2  (granting lead plaintiff $25,000 and four additional named plaintiffs $15,000 each); *Grab Holdings*, 2025 WL 1413515, at *5 (awarding three lead plaintiffs $15,000 each).

In addition, Lead Plaintiff notes that, in total, her requested award is less than 0.0435% of the common fund, which is a low percentage that further supports granting the service awards. *See Pearlstein v. BlackBerry Ltd.*, 2022 WL 4554858, at *11 (S.D.N.Y. Sept. 29, 2022) (approving service award and noting that "the awards only represent approximately 0.3% of the total settlement amount"). As a percentage of the common fund, the proposed Lead Plaintiff award is very modest.[7]

---

[7] *See, e.g.*, *In re Reconnaissance Energy Afr. Ltd. Sec. Litig.*, 2024 WL 5265298, at *2 (E.D.N.Y. Dec. 30, 2024) (awarding $12,000 to lead plaintiff in a case with an approximately $7 million settlement) (0.17% of the fund); *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 2018 WL 6250657, at *4 (S.D.N.Y. Nov. 29, 2018) (awarding $50,000 each to six plaintiffs and $100,000 each to two others, finding "the considerable effort expended by the named Plaintiffs to assist in the litigation renders the incentive awards requested [ ] appropriate" and "in aggregate they amount to a miniscule portion of the settlement fund") (0.09% of the fund).

22

Thus, an award of $10,000 to the Lead Plaintiff is appropriate under these circumstances.

## VI.    CONCLUSION

Lead Counsel respectfully request that the Court approve the fee and expense application and enter an Order awarding Lead Counsel one-third of the Settlement Amount plus interest, reimbursement of $107,069.18 in litigation expenses plus interest, and awarding $10,000 to Lead Plaintiff Serap Lokman.

DATED: August 1, 2025                    Respectfully submitted,

**LEVI & KORSINSKY, LLP**

By: */s/ Shannon L. Hopkins*
Shannon L. Hopkins (SH-1887)
Gregory M. Potrepka (GP-1275)
Andrew E. Lencyk (AL-4329)
David C. Jaynes (admitted *pro hac vice*)
Morgan M. Embleton (admitted *pro hac vice*)
Amanda D. Foley (admitted *pro hac vice*)
1111 Summer Street, Suite 403
Stamford, CT 06905
Telephone: (203) 992-4523
Facsimile: (212) 363-7171
shopkins@zlk.com
gpotrepka@zlk.com
alencyk@zlk.com
djaynes@zlk.com
membleton@zlk.com
afoley@zlk.com

*Lead Counsel for Plaintiff and the Class*

## COMPLIANCE WITH CIVIL LOCAL RULE 7.1(c) and INDIVIDUAL RULE 3.A

The undersigned, counsel of record for Lead Plaintiff Serap Lokman, certifies that this brief contains 6,786 words, which complies with the word limit of L.R. 7.1(c) regarding Length of Memoranda of Law, effective January 2, 2025, and this Court's Individual Rule 3.A.

Executed on this 1st day of August, 2025.


*/s/ Shannon L. Hopkins*
Shannon L. Hopkins