**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SERAP LOKMAN, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>AZURE POWER GLOBAL LIMITED, RANJIT GUPTA, MURALI SUBRAMANIAN, and PAWAN KUMAR AGRAWAL,<br><br>    Defendants. | Case No. 1:22-cv-7432-GHW<br><br>Hon. Gregory H. Woods |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION**
**FOR DISTRIBUTION OF CLASS ACTION SETTLEMENT FUNDS**

Court-appointed Lead Plaintiff, Serap Lokman ("Plaintiff"), respectfully submits this memorandum of law in support of her unopposed motion ("Motion") for entry of the [Proposed] Class Distribution Order (the "Distribution Order") in the above-captioned action (the "Action").[1]

If entered by the Court, the Distribution Order will, *inter alia*: (i) approve the Claims Administrator's recommendations accepting and rejecting Claims submitted in the Action; (ii) direct the distribution of the Net Settlement Fund to Authorized Claimants whose Claim Forms have been accepted as valid and approved by the Court (*i.e.,* the Distribution Plan), as set forth in the accompanying Cody Declaration; and (iii) approve the Claims Administrator's fees and expenses incurred in connection with the Action.

## I.      PROCEDURAL BACKGROUND

On April 11, 2025, the Settling Parties entered into the Stipulation, the terms of which established a $23,000,000 Settlement Fund for the benefit of the Settlement Class, consisting of all Persons and entities that purchased or otherwise acquired Azure equity shares between January 1, 2020 and November 20, 2024, inclusive, and who were damaged thereby. Stipulation ¶1.39. Excluded from the Settlement Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, any entity in which Defendants have or had a controlling interest, and Azure shareholders Caisse de dépôt et placement du Québec ("CDPQ") and Ontario Municipal Employees Retirement System ("OMERS") and all current and former affiliates, employees, officers, directors, and representatives of CDPQ and OMERS, respectively. Also excluded from

---

[1] All capitalized terms used herein have the same meaning ascribed to them in the Stipulation and Agreement of Settlement dated April 11, 2025 ("Stipulation"; ECF No. 119-1), or the concurrently filed Declaration of Dawn M. Cody in Support of Lead Plaintiff's Motion to Distribute the Net Settlement Fund ("Cody Declaration" or "Cody Decl.") submitted on behalf of the Court-appointed Claims Administrator, Angeion Group, LLC. Exhibits to the Cody Decl. are referred to herein as "Ex."

the Settlement Class is any Person who would otherwise be a Member of the Settlement Class, but who validly and timely has submitted a Request for Exclusion in accordance with the requirements set by the Court. *Id.*

The Court granted preliminary approval of the Settlement on April 30, 2025. ECF No. 123 (the "Preliminary Approval Order"). Pursuant to the Preliminary Approval Order, a total of 23,234 Postcard Notices were mailed to potential Settlement Class Members, brokers, and other nominees. Cody Decl. ¶4. Further, the Claims Administrator published the Summary Notice over *PR Newswire* and *Business Wire*, established the Settlement Website specific to this Action (www.AzureSecuritiesSettlement.com), and instituted a toll-free telephone helpline. *Id*. ¶¶2, 6. Both the Notice and the Settlement Website provided potential Settlement Class Members with information about the Settlement, including the deadlines for requesting exclusion from, objecting to, or filing Claim Forms in, the Settlement. The Settlement Website also provided downloadable documents relevant to the Settlement, such as the Stipulation, Notice, and Claim Form. *Id.* ¶2.

On September 8, 2025, the Court granted final approval of the Settlement as fair, reasonable, and adequate, and approved the Plan of Allocation in the Notice as a fair and reasonable method to allocate the Net Settlement Fund. ECF No. 123 ("Final Approval Order").

Lead Counsel now requests that the Court authorize distribution of the Net Settlement Fund to Authorized Claimants, after payment of claims administration expenses as discussed below, and after payment of Taxes, Tax Expenses, and escrow fees.

## II.    SUMMARY OF CLAIMS ADMINISTRATION

Pursuant to the Court-approved Notice, all Settlement Class Members wishing to participate in the Settlement were required to submit Claim Forms online or by mail, postmarked via U.S. mail or received by private carrier no later than August 29, 2025. Final Approval Order at 7; ECF No. 129-1 ("Notice") at 6. The Claims Administrator received and reviewed all

submitted Claim Forms and, to the extent that a Claim was deficient or ineligible in any regard, notified the Claimant of the deficiency or ineligibility and advised as to ways to cure the deficiency. Cody Decl. ¶¶13–16, 18.

Of the 23,659 Claims submitted to and fully processed by the Claims Administrator, 91 were paper submissions, 243 were submitted online via the Settlement Website, and 23,325 were submitted electronically by electronic Claim filers who are typically banks, brokers, nominees, and other third parties that file Claim Forms on behalf of numerous beneficial owner Claimants. *Id*. ¶¶9(C)(a), 10, 15. Due to the high volume of Claim Forms that such electronic Claims filers submit on behalf of numerous Claimants, the Claims Administrator provides electronic Claims filers with the opportunity to submit a master Claim Form and either mail a computer disc or submit an electronic file through the Settlement Website containing such Claimants' transactions, in lieu of requiring submissions of large volumes of paper documentation. *Id*. ¶9(C)(a). This process is designed to expedite the claims process.

If a paper or online Claim was deficient or ineligible, the Claims Administrator sent an Ineligible Notice to the Claimant, advising the Claimant that she, he, or it had twenty (20) days from the date of the Ineligible Notice to submit additional information and/or documentary evidence to cure the Claim, otherwise the Claims Administrator would recommend the Claim be rejected. *Id*. ¶14; *see also* Ex. A (sample Ineligible Notice). Similarly, if an electronic Claim was deficient or ineligible, the Claims Administrator sent an information email to the electronic Claim filer, attaching a Transaction Report containing detailed information associated with the accounts and indicating which accounts within the Claim filing were deficient and/or ineligible, and providing twenty (20) days from the date of such email to submit additional information and/or evidence to cure the Claims, lest the Claims Administrator recommend the Claim for rejection.

Cody Decl. ¶¶15–16; *see also* Ex. B (sample email and Transaction Report). The Claims Administrator worked diligently with Claimants to resolve deficiencies where possible and, as a result of this process, a number of initially deficient Claims are now eligible to participate in the Settlement.

Ultimately, as described in the Cody Declaration, the Claims Administrator determined after the foregoing Deficiency Process that 4,487 Claims are valid and should receive a distribution, consisting of 4,442 Timely Valid Claims and 45 Untimely Valid Claims (discussed at Section III, *infra*). Cody Decl. ¶¶23–24. Moreover, the Claims Administrator determined that 19,172 Claims are not eligible and should be rejected, consisting of: (a) 7,899 Claims that did not result in a Recognized Loss under the Court-approved Plan of Allocation; (b) 473 Claims that did not involve an eligible purchase of Azure equity shares during the Settlement Class Period; and (c) 10,800 Claims that were duplicates or replaced. *Id.* ¶27.

## III.    UNTIMELY VALID CLAIMS SHOULD PARTICIPATE IN DISTRIBUTION

Untimely Valid Claims, which were postmarked or received after the Court-approved August 29, 2025 submission deadline for Claim Forms but are otherwise valid, should be permitted to take part in the Settlement distribution. The Claims Administrator continued to receive Claims after the submission deadline. *Id*. ¶¶24–25. Of the 23,659 Claims received through February 18, 2026, 162 were postmarked or received after the August 29, 2025 deadline, of which the Claims Administrator determined 45 to be otherwise valid. *Id.*

Lead Counsel and the Claims Administrator believe that when the equities are balanced, it would be unfair to prevent otherwise valid Claims from participating in the distribution of the Net Settlement Fund solely on the basis they were submitted after the submission deadline, but while Claims were still being processed. District Courts have "inherent power to accept late claims," *In*

4

*re Authentidate Holding Corp. Sec. Litig.*, 2013 WL 324153, at *1 (S.D.N.Y. Jan. 25, 2013),[2] and frequently do so. *See, e.g.*, *In re Eletrobras Sec. Litig.*, 467 F. Supp. 3d 149, 150 (S.D.N.Y. 2020) (accepting "late but otherwise valid Proofs of Claim"); *In re Stable Rd. Acquisition Corp. Sec. Litig.*, 2025 WL 924928, at *3 (C.D. Cal. Mar. 24, 2025) (accepting "Late but Otherwise Eligible Claims; *In re Toyota Motor Corp. Sec. Litig.*, 2014 WL 12586787, at *1 (C.D. Cal. Aug. 4, 2014) (same). Courts permit late claims because "[t]he cost to fund of admitting late claimants and readmitting the opt-out claimants to the class action should be relatively small. No significant administrative costs need be incurred to allow the late claims and opt-out claims." *In re Agent Orange Prod. Liab. Litig.*, 689 F. Supp. 1250, 1263 (E.D.N.Y. 1988).

While the Claims Administrator continued receiving Claims after the Court-approved submission deadline, "[t]here must, however, be a final cut-off date after which no more claims may be accepted so that a proportional distribution of the Net Settlement Fund may take place." *Stable Rd.*, 2025 WL 924928 at *3 (citing *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977) ("There is no question that in the distribution of a large class settlement fund, a cutoff date is essential and at some point the matter must be terminated.")). Acceptance of additional Claims received during the finalization of the administration process and this Motion would necessarily require delay in distribution. Accordingly, the Claims Administrator imposed a cut-off date of February 18, 2026—approximately six months after the submission deadline.

Consequently, Plaintiff respectfully requests that the Court approve Lead Counsel's recommendation and permit the Claims Administrator to include Untimely Valid Claims in the Distribution Plan. *See* Cody Decl. ¶25; Ex. C, Part Two (Untimely Valid Claims). Additionally, it is respectfully requested that the Court enter a Distribution Order directing that no new Claim

---

[2] Internal citations, quotation marks, and emphasis are omitted.

Forms or responses relating thereto received after February 18, 2026 be included in the distribution. Indeed, "drawing a line is essential to achieve certainty and finality in such large class actions." *Hartman v. Powell*, 2001 WL 410461, at *1 (D.C. Cir. Mar. 15, 2001) (quoting *In re Gypsum*, 565 F.2d at 1127); *see also In re Citigroup Inc. Sec. Litig.*, 2014 WL 7399039, at *4 (S.D.N.Y. Dec. 29, 2014) (same).

## IV.    THE COURT SHOULD APPROVE DISTRIBUTION OF THE NET SETTLEMENT FUND

Consistent with the terms of the Plan of Allocation and with the Court's approval, the Claims Administrator will execute the Distribution Plan, starting with an Initial Distribution of the Net Settlement Fund to Authorized Claimants on a *pro rata* basis whose award amounts calculate to $10.00 or more. Cody Decl. ¶¶29–32. Based on Lead Counsel's substantial experience in similar settlements, it is anticipated that a certain portion of Settlement Class Members will not cash their Distribution Amount checks promptly. To encourage promptness, Lead Counsel proposes that all distribution checks bear the notation "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT CASHED WITHIN 120 DAYS OF ISSUE DATE." *Id.* ¶33.

The Claims administrator will make reasonable and diligent efforts to encourage Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund to cash their checks. *Id.* ¶35. However, if after six months any funds remain in the Net Settlement Fund by reason of uncashed checks or otherwise, the Claims Administrator will conduct a redistribution if Lead Counsel, in consultation with the Claims Administrator, determines that it is cost-effective to do so. *Id*. During such redistribution, any amounts remaining in the Net Settlement Fund after the Initial Distribution, after payment of unpaid fees and expenses (including the estimated costs of redistribution), Taxes, Tax Expenses, and escrow fees, will be distributed to all Authorized Claimants who: (i) cashed their Initial Distribution Payment; and (ii) are entitled to at

6

least $10.00 from the redistribution based on their *pro rata* share of the remaining funds. *Id.* Following such first redistribution, additional redistributions will occur under the same process and considerations as the first redistribution until no funds remain in the Net Settlement Fund, or until Lead Counsel, in consultation with the Claims Administrator, determines that further redistribution is no longer economically feasible. *Id.* ¶36.

Finally, pursuant to paragraph 7.5 of the Stipulation:

Any balance that thereafter still remains in the Net Settlement Fund after such reallocation(s) and payments, which is not feasible or economical to reallocate, and after payment of outstanding Notice and Administration Expenses, Taxes, Tax Expenses, attorneys' fees and expenses and other awards approved by the Court, shall be donated to the City Bar Fund, a 501(c)(3) non-profit charitable corporation benefiting the New York City Bar Justice Center, or another 501(c)(3) organization serving the public interest designated by Lead Counsel that has no affiliation or financial relationship with Lead Counsel, Lead Plaintiff, Defendants, their affiliates, or Defendants' Counsel, and is approved by the Court.

Plaintiff respectfully requests that the Court approve the Distribution Plan as described both herein and in the Cody Declaration. *See* Cody Decl. ¶¶29–37.

## V.    RELEASE OF CLAIMS IS APPROPRIATE

In order to permit the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against it beyond the amounts allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the submitted Claims, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement.

Accordingly, the Plaintiff respectfully requests that the Court: (i) release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted in connection with the Settlement, or who are otherwise

involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, from any and all claims arising out of such involvement; and (ii) bar all Settlement Class Members and other Claimants, whether or not they are to receive payment from the Net Settlement Fund, from making any further claim against the Net Settlement Fund, Plaintiff, Lead Counsel, the Claims Administrator, the Escrow Agent, or any other agent retained by Plaintiff or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement (including the Defendants) beyond the amounts allocated to them pursuant to the terms of the Distribution Order, provided that such released persons acted in accordance with the Stipulation, the Judgment, and the Distribution Order.

Courts have regularly approved similar provisions in connection with the distribution of settlement proceeds. *See, e.g.*, *XL Fleet Corp. Sec. Litig.*, Case No. 1:21-cv-02002-JLR (S.D.N.Y. Sept. 4, 2025), ECF No. 209, ¶9 (containing similar language providing releases and barring claims); *Stein v. Eagle Bancorp, Inc.*, 2022 WL 4245185, at *2 (S.D.N.Y. Sept. 15, 2022) (same); *In re Qudian Inc. Sec. Litig.*, 2022 WL 633863, at *2 (S.D.N.Y. Mar. 4, 2022) (same); *In re Patriot Nat'l, Inc. Sec. Litig.*, 2021 WL 1040462, at *2 (S.D.N.Y. Mar. 18, 2021) (same); *Wilson v. LSB Indus., Inc.*, 2020 WL 5628039, at *2 (S.D.N.Y. Sept. 21, 2020) (same); *Eletrobras*, 467 F. Supp. 3d at 151 (same); *In re Merrill Lynch & Co., Inc. Sec., Derivative & ERISA Litig.*, 2010 WL 11595033, at *2 (S.D.N.Y. Oct. 25, 2010) (same).

## VI.    THE COURT SHOULD APPROVE PAYMENT OF ADMINISTRATION-RELATED FEES AND EXPENSES

The cost of the administration for the Settlement through March 31, 2026 is $67,712.45. Cody Decl. ¶38. To date, the Claims Administrator has received payment of $53,173.74, and the Claims Administrator estimates that the cost in administrative fees and expenses to conduct the Initial Distribution is $32,043.89. *Id.* Therefore, Lead Counsel respectfully requests that the Court

8

authorize payment from the Settlement Fund to the Claims Administrator in the amount of $46,582.60, in anticipation of the work to be performed in executing the Initial Distribution. *Id.* Such prepayment will not result in overpayment—if the estimated fees and expenses to conduct the Initial Distribution are greater than the actual cost, the excess will be returned to the Net Settlement Fund and will be available for subsequent redistribution to Authorized Claimants.

## VII.    RECORDS RETENTION AND DESTRUCTION IS APPROPRIATE

Finally, Plaintiff respectfully requests that the Court enter an order authorizing the Claims Administrator to destroy: (i) paper or hard copies of the Claim Forms and all supporting documentation one year after the final distribution of the Net Settlement Fund; and (ii) electronic copies of the Claim Forms and all supporting documentation two years after the final distribution of the Net Settlement Fund.

## VIII.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Motion be granted, and that the Distribution Order, substantially in the form filed herewith, be entered.

DATED: April 9th, 2026                Respectfully submitted,

**LEVI & KORSINSKY, LLP**

By: */s/ Shannon L. Hopkins*
Shannon L. Hopkins (SH-1887)
Gregory M. Potrepka (GP-1275)
Andrew E. Lencyk (AL-4329)
David C. Jaynes (admitted *pro hac vice*)
Morgan M. Embleton (admitted *pro hac vice*)
Amanda D. Foley (admitted *pro hac vice*)
P. Cole von Richthofen (444159)
1111 Summer Street, Suite 403
Stamford, CT 06905
Telephone: (203) 992-4523
Facsimile: (212) 363-7171
shopkins@zlk.com

9

gpotrepka@zlk.com
alencyk@zlk.com
djaynes@zlk.com
membleton@zlk.com
afoley@zlk.com
cvrichthofen@zlk.com

***Lead Counsel for Class Representative
Serap Lokman and the Settlement Class***

## COMPLIANCE WITH CIVIL LOCAL RULE 7.1(c) AND INDIVIDUAL RULE 3.A.

The undersigned, counsel of record for Lead Plaintiff Serap Lokman, certifies that this brief contains 2,764 words, which complies with the word count limitation of 8,750 words specified in Local Civil Rule 7.1(c).

Executed on this 9th day of April, 2026.

/s/ Shannon L. Hopkins
Shannon L. Hopkins

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed with the Clerk of Court via the CM/ECF system, which will send notice of such filing to all counsel of record.

Dated: April 9, 2026

/s/ P. Cole von Richthofen
P. Cole von Richthofen

11